No. 18-11693-EE

In the
United States Court of Appeals
for the Eleventh Circuit

JONATHAN TYLER PRIVE,
*Movant-Appellant*,

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NOS. 6:14-CR-33-ORL-28KRS & 6:17-CV-1498-ORL-28KRS

**APPENDIX**

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

ROBERTA JOSEPHINA BODNAR
Assistant United States Attorney
Appellate Division
Florida Bar No. 986909
35 S.E. 1st Ave., Ste. 3200
Ocala, FL 34471
(352) 547-3600
roberta.bodnar@usdoj.gov

November 28, 2018

# Index of Appendix

**Criminal District Court Docket Sheet**................................**Crim. Docket**

    Plea Agreement ..............................................................Crim. Doc. 27

    Judgment.......................................................................Crim. Doc. 98

    Memorandum Order Regarding Sentencing Factors ...... Crim. Doc. 100

    Sentencing Transcript (04/22/15)...................................Crim. Doc. 114

    Motion to Disqualify the Judge .....................................Crim. Doc. 127

    Order Denying Motion to Disqualify the Judge ............. Crim. Doc. 130

    Motion to Vacate Order Denying
    Motion to Disqualify the Judge .....................................Crim. Doc. 132

    Order Denying Motion to Vacate ...................................Crim. Doc. 133

    Motion for Reconsideration ...........................................Crim. Doc. 134

    Order Denying Motion for Reconsideration....................Crim. Doc. 136

**Civil District Court Docket Sheet**......................................**Civ. Docket**

    Petitioner's Brief in Support of 28 U.S.C. § 2255 Motion ...... Civ. Doc. 2

    Order Denying Motion for Hearing, Granting *in forma pauperis*,
    and Striking 28 U.S.C. § 2255 Motion .................................. Civ. Doc. 5

    Motion for Extension of Time to File Amended
    28 U.S.C. § 2255 Motion...................................................... Civ. Doc. 6

    Order Granting Motion for Extension of Time ..................... Civ. Doc. 7

    Motion to Vacate Order ...................................................... Civ. Doc. 8

    Order Denying Motion to Vacate Order .............................. Civ. Doc. 9

Motion for Reconsideration ................................................Civ. Doc. 10

Order Denying Motion for Reconsideration........................Civ. Doc. 14

Order Dismissing Case.......................................................Civ. Doc. 15

Judgment...........................................................................Civ. Doc. 16

Notice of Appeal................................................................Civ. Doc. 17

Motion for *in forma pauperis* ................................................Civ. Doc. 19

Order Denying *in forma pauperis*...........................................Civ. Doc. 20

**Appellate Court Docket Sheet** ..........................................**App. Docket**

April 17, 2018, order ........................................................App. Order

Certificate of Service

# Crim. Docket

# US District Court Criminal Docket

U.S. District - Florida Middle

(Orlando)

## 6:14cr33

## USA v. Prive

This case was retrieved from the court on Monday, November 19, 2018

Date Filed: **02/19/2014**     Class Code: **CLOSED**

Other Docket: **None**     Closed: **yes**

## Defendants

| Name | Attorneys |
|------|-----------|
| Jonathan Tyler Prive(1)<br>[Term: 04/22/2015]<br>Appeals court case numbers: 15-12032 USCA, 18-11693<br>11th Circuit # 60386-018 | Jonathan Tyler Prive<br>PRO SE<br>Brevard County Jail Complex<br>#337795 860 Camp Rd.<br>Cocoa, FL 32927<br>USA<br><br>Daniel Newton Brodersen<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>Brodersen Law Firm<br>1238 East Concord Street<br>Orlando, FL 32803<br>USA<br>407/649-0007<br>Fax: 407/649-0017<br>Designation: CJA Appointment<br>Email: brodersend@gmail.com<br><br>Jose Rodriguez<br>[Term: 11/03/2014]<br>Jose Rodriguez, PA<br>1434 E Michigan St<br>Orlando, FL 32806<br>USA<br>407/898-8686<br>Fax: 407/898-8626<br>Designation: CJA Appointment<br>Email: jr@joserodriguezlaw.com<br><br>Patrick Michael Megaro<br>[Term: 02/18/2015]<br>Halscott Megaro, PA<br>Ste 195 1300 S. Semoran Blvd.<br>Orlando, FL 32807<br>USA<br>407-255-2165<br>Fax: 855-224-1671<br>Designation: CJA Appointment<br>Email: pmegaro@halscottmegaro.com |

| Charges | Disposition |
|---------|-------------|
| **Complaints:** none | |
| **Pending:** 18:2422.F COERCION OR ENTICEMENT OF MINOR (using a facility and means of interstate | Dismissed |

commerce, did persuade, induce, entice and
coerce a minor to engage in sexual activity)(1)

| | |
|---|---|
| 18:2422.F COERCION OR ENTICEMENT OF MINOR (using a facility and means of interstate commerce, did persuade, induce, entice and coerce a minor to engage in sexual activity)(2)<br>Offense Level (Opening): Felony | Imprisonment: 365 months; Deft. is remanded to the custody of the U.S. Marshal. Supervised release: Life; Mandatory drug testing requirements are waived. Special conditions of supervised release: Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit, etc. and provide probation officer access to any requested financial information. Sex offender conditions: Participate in a sexual offender mental health treatment program; No contact with minor children; Media and computer restrictions imposed; Register with all sex offender registries as required by law; Submit to a search of your person, residence, place of business, etc.; Cooperate in the collection of DNA. Fine: Waived; Special assessment: $100.00. |

Terminated:  none

Case Assigned to: Judge John Antoon II
Case Referred to: Magistrate Judge Karla R. Spaulding

## U. S. Attorneys

Ilianys Rivera Miranda
LEAD ATTORNEY: ATTORNEY TO BE NOTICED
US Attorney's Office - FLM*
Suite 3100 400 W Washington St
Orlando, FL 32801
USA
407/648-7591
Fax: 407/648-7643
Designation: Retained
Email: ilianys.rivera@usdoj.gov

Andrew C. Searle
[Term: 12/05/2017]
A. Brian Phillips, PA
912 Highland Ave
Orlando, FL 32803
USA
407/872-0777
Designation: Retained
Email: andrew.searle@phillips-law-firm.com

| Date | # | Proceeding Text |
|---|---|---|
| 02/19/2014 | 1 | INDICTMENT returned in open court as to Jonathan Tyler Prive (1) Counts 1-2. (GJS) (Entered: 02/20/2014) |
| 02/20/2014 | 3 | NOTICE of estimated length of trial by USA. Estimated trial length: Three days days. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 4 | CERTIFICATE of interested persons and corporate disclosure statement by USA (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 5 | NOTICE OF ATTORNEY APPEARANCE Andrew C. Searle appearing for USA. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 6 | NOTICE of possible conflict of interest by USA as to Jonathan Tyler Prive A possible conflict of interest does exist. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/21/2014 | 7 | NOTICE of pendency of related cases re order of compliance to Local Rule as to Jonathan Tyler Prive by USA. Related case(s): yes (Searle, Andrew) (Entered: 02/20/2014) |
| 02/21/2014 | 8 | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jonathan Tyler Prive. (Attachments: # 1 Text of Proposed Order)(Searle, Andrew) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 02/21/2014) |
| 02/21/2014 | 9 | ORDER granting 8 Motion for Writ of Habeas Corpus ad prosequendum. WRIT ISSUED as to Jonathan Tyler Prive (1). Initial Appearance set for 3/14/2014 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. Signed by Magistrate Judge Karla R. Spaulding on 2/21/2014. (copies provided) (ECJ) (Entered: 02/21/2014) |
| 02/27/2014 | 10 | NOTICE of Similar Case by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 02/27/2014) |

| | | |
|---|---|---|
| 02/27/2014 | 11 | MOTION to transfer case to Judge Antoon (related to 6:13-cr-280-Orl-28DAB) by USA as to Jonathan Tyler Prive. (Searle, Andrew) Modified on 2/28/2014 (MAA). (Entered: 02/27/2014) |
| 03/05/2014 | 12 | ORDER granting 11 Motion to Transfer case as to Jonathan Tyler Prive (1). Pursuant to Local Rule 1.04(b), this case is hereby TRANSFERRED to United States District Judge John Antoon II, Orlando Division, for all further proceedings. The Clerk is hereby directed to transfer this case to District Judge John Antoon II, Orlando Division. Signed by Judge Charlene Edwards Honeywell on 3/5/2014. (BGS) (Entered: 03/05/2014) |
| 03/06/2014 | 13 | Case as to Jonathan Tyler Prive Reassigned to Judge John Antoon II. New case number: 6:14-cr-33-Orl-28KRS. Judge Charlene Edwards Honeywell no longer assigned to the case. (MAA) (Entered: 03/06/2014) |
| 03/10/2014 | 14 | ARREST Warrant Returned Executed on 3/7/14 as to Jonathan Tyler Prive. (RDO) (Entered: 03/10/2014) |
| 03/14/2014 | | Arrest of Jonathan Tyler Prive on 3/14/2014. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 15 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Initial Appearance as to Jonathan Tyler Prive held on 3/14/2014, ARRAIGNMENT as to Jonathan Tyler Prive (1) Count 1-2 held on 3/14/2014 Defendant, pled not guilty. (DIGITAL) (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 16 | ***CJA 23 Financial Affidavit by Jonathan Tyler Prive. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 17 | NOTICE OF ATTORNEY APPEARANCE: Jose Rodriguez appearing for Jonathan Tyler Prive. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 18 | SCHEDULING ORDER as to Jonathan Tyler Prive. Status Conference set for 4/17/2014 at 09:15 AM in Orlando Courtroom 6 B before Judge John Antoon II, Jury Trial set for 5/5/2014 at 09:00 AM in Orlando Courtroom 6 B before Judge John Antoon II. Signed by Magistrate Judge Karla R. Spaulding on 3/14/2014. (copies provided)(ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 19 | ORDER OF DETENTION PENDING TRIAL as to Jonathan Tyler Prive. Defendant is not eligible due to outstanding warrants or detainers in another jurisdiction. Signed by Magistrate Judge Karla R. Spaulding on 3/14/2014. (copies provided)(ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 20 | ARREST Warrant Returned Executed on 3/7/14 as to Jonathan Tyler Prive. (LAK) (Entered: 03/14/2014) |
| 04/16/2014 | 21 | First MOTION to continue trial until July 1, 2014 and to enlarge the period for the filing of pretrial motions up to and including June 1, 2014 by Jonathan Tyler Prive. (Rodriguez, Jose) Modified on 4/17/2014 (MAL). (Entered: 04/16/2014) |
| 04/17/2014 | 22 | Minute Entry for proceedings held before Judge John Antoon II: CRIMINAL STATUS Conference as to Jonathan Tyler Prive held on 4/17/2014. Court grants Defendant's motion to continue trial - Separate order to be entered. Counsel for Govt: Andrew Searle; Counsel for Deft: Jose Rodriguez. Start time: 9:47 a.m; End time: 9:52 a.m. Court Reporter: Diane Peede (DJD) (Entered: 04/18/2014) |
| 04/23/2014 | 23 | WAIVER of speedy trial by Jonathan Tyler Prive (Attachments: # 1 Main Document Certificate of Service)(Rodriguez, Jose) (Entered: 04/23/2014) |
| 05/01/2014 | 24 | ORDER granting 21 Motion to continue trial as to Jonathan Tyler Prive. Jury Trial reset for the trial term commencing 9/2/2014 in Orlando Courtroom 6 B before Judge John Antoon II. Status Conference set for 8/15/2014 at 09:15 AM in Orlando Courtroom 6 B before Judge John Antoon II. Signed by Judge John Antoon II on 5/1/2014. CTP (DJD) (Entered: 05/01/2014) |
| 08/15/2014 | 25 | Minute Entry for status conference proceedings held before Judge John Antoon II as to Jonathan Tyler Prive on 8/15/2014. Andrew Searle appears for the government, Jose Rodriguez appears for the defendant. Counsel for Defendant informs the Court this case should resolve by a guilty plea. The Court informs the parties that if the case does go to trial, it will be heard the week of 9/2/2014. Court Reporter: Amie First. Time in Court: 9:32 a.m. - 9:35 a.m. (LAM) (Entered: 08/15/2014) |
| 08/15/2014 | 26 | NOTICE OF HEARING as to Jonathan Tyler Prive: Change of Plea Hearing set for 8/27/2014 at 09:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided) (ECJ) (Entered: 08/15/2014) |
| 08/26/2014 | 27 | PLEA AGREEMENT re: count(s) Two of the Indictment as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 08/26/2014) |
| 08/27/2014 | 28 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Change of Plea Hearing as to Jonathan Tyler Prive held on 8/27/2014. (DIGITAL) (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 29 | NOTICE regarding plea of guilty by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 30 | CONSENT TO INSPECTION of Presentence Investigation Report by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 31 | REPORT AND RECOMMENDATIONS concerning Plea of Guilty re: Count Two of the Indictment as to Jonathan Tyler Prive. Signed by Magistrate Judge Karla R. Spaulding on 8/27/2014. (copies provided)(ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 32 | NOTICE of no objection re 31 Report and Recommendations concerning plea of guilty by USA as to |

| | | Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
|---|---|---|
| 08/27/2014 | 33 | NOTICE of no objection re 31 Report and Recommendations concerning plea of guilty by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |

| | | |
|---|---|---|
| 08/28/2014 | 34 | NOTICE OF HEARING as to Jonathan Tyler Prive: Sentencing set for 1/9/2015 at 09:30AM in Orlando Courtroom 6 B before Judge John Antoon II. Note to Counsel: 1) Counsel should call the Courtroom Deputy Clerk at (407) 835-4304 if they anticipate this hearing will take longer than 15 minutes. 2) The Pre-sentence report shall be provided to the Court by December 5, 2014 by the Probation Office. 3) Any sentencing memoranda, expert reports or other documentation the parties wish the Court to consider shall be filed by December 12, 2014. CTP(DJD) (Entered: 08/28/2014) |
| 08/28/2014 | 35 | NOTICE to Court Regarding Forfeiture by USA as to Jonathan Tyler Prive (Andrejko, Nicole) (Entered: 08/28/2014) |
| 08/29/2014 | 36 | ACCEPTANCE OF PLEA of guilty and adjudication of guilt re: Count Two of the Indictment as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 8/29/2014. CTP (DJD) (Entered: 08/29/2014) |
| 09/22/2014 | 37 | TRANSCRIPT of change of plea as to Jonathan Tyler Prive held on 8-27-14 before Judge Karla R. Spaulding. Court Reporter/Transcriber Sandy Tremel, Telephone number 407-245-3110. Tape Number: digital. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/14/2014, Redacted Transcript Deadline set for 10/23/2014, Release of Transcript Restriction set for 12/22/2014. (SKT) (Entered: 09/22/2014) |
| 09/22/2014 | 38 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 09/22/2014) |
| 10/21/2014 | 39 | ***STRICKEN*** MOTION to Appoint Counsel by Jonathan Tyler Prive. FILED PRO SE. (IGC) Motions referred to Magistrate Judge Karla R. Spaulding. Modified on 10/22/2014 (JET). ***STRICKEN PER ORDER #40. (Entered: 10/21/2014) |
| 10/21/2014 | 40 | ENDORSED ORDER striking 39 Motion to appoint counsel as to Jonathan Tyler Prive (1). Mr. Prive is represented by counsel and may not file motions on his own behalf. The Court requests that Mr. Prive's counsel contact him expeditiously to discuss the issues raised by the filing and notify the Court through a motion if a hearing on this matter is requested. Counsel for Mr. Prive should also provide him with a copy of this text-entry order. Signed by Magistrate Judge Karla R. Spaulding on 10/21/2014. (Spaulding, Karla) (Entered: 10/21/2014) |
| 10/29/2014 | 41 | First MOTION to Withdraw as Attorney by Jose Rodriguez. by Jonathan Tyler Prive. (Rodriguez, Jose) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 10/29/2014) |
| 10/29/2014 | 42 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 41 First MOTION to Withdraw as Attorney by Jose Rodriguez. Motion Hearing set for 11/3/2014 at 01:30 PM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 10/29/2014) |
| 11/03/2014 | 43 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 11/3/2014 re 41 First MOTION to Withdraw as Attorney by Jose Rodriguez filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 11/03/2014) |
| 11/03/2014 | 44 | ORDER granting 41 Motion to Withdraw as Attorney. Jose Rodriguez, Esq., is relieved of his appointment to represent the Defendant and Daniel Brodersen, Esq., is appointed to represent the Defendant. Signed by Magistrate Judge Karla R. Spaulding on 11/3/2014. (ECJ) (Entered: 11/03/2014) |
| 12/09/2014 | 48 | Verified MOTION to Withdraw Plea of Guilty by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 12/09/2014) |
| 12/09/2014 | 49 | NOTICE of Clarification by Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty . (Brodersen, Daniel) (Entered: 12/09/2014) |
| 12/10/2014 | 50 | MOTION to extend time until 12/19/14 to Submit Sentencing Memorandum by Jonathan Tyler Prive. (Brodersen, Daniel) Modified on 12/11/2014 (IGC). (Entered: 12/10/2014) |
| 12/12/2014 | 51 | SENTENCING MEMORANDUM by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 12/12/2014) |
| 12/15/2014 | 52 | ENDORSED ORDER requiring the United States to file a response to Defendant's Verified Motion to Withdraw Guilty Plea 48 on or before December 19, 2014. Signed by Magistrate Judge Karla R. Spaulding on 12/15/2014. (Spaulding, Karla) (Entered: 12/15/2014) |
| 12/19/2014 | 53 | ENDORSED ORDER granting 50 Motion to extend time to submit sentencing memorandum as to Jonathan Tyler Prive. Defendant has up to and including January 6, 2015 to file their sentencing |

| | | |
|---|---|---|
| | | memorandum. Signed by Judge John Antoon II on 12/19/2014. CTP(DJD) (Entered: 12/19/2014) |
| 12/19/2014 | 54 | RESPONSE in Opposition by USA as to Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty (Attachments: # 1 Exhibit A)(Searle, Andrew) (Entered: 12/19/2014) |
| 12/23/2014 | 55 | REPORT AND RECOMMENDATIONS as to Jonathan Tyler Prive that 48 Verified MOTION to withdraw plea of guilty be granted. Signed by Magistrate Judge Karla R. Spaulding on 12/23/2014. (LAK) (Entered: 12/23/2014) |
| 01/06/2015 | 56 | OBJECTION to 55 Report and Recommendations by USA as to Jonathan Tyler Prive (Searle, Andrew) Modified on 1/6/2015 (JET). (Exhibit A is filed at 58 .) (Entered: 01/06/2015) |
| 01/06/2015 | 57 | Unopposed MOTION to Continue Sentencing by USA as to Jonathan Tyler Prive. (Searle, Andrew) (Entered: 01/06/2015) |
| 01/06/2015 | 58 | NOTICE of Filing Exhibit A to Objections 56 by USA as to Jonathan Tyler Prive (Attachments: # 1 Exhibit A)(Searle, Andrew) Modified on 1/6/2015 (JET). (Entered: 01/06/2015) |
| 01/06/2015 | 59 | ENDORSED ORDER granting 57 Motion to Continue sentencing as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 1/6/2015. CTP(DJD) (Entered: 01/06/2015) |
| 01/06/2015 | 60 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for January 9, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 2/6/2015 at 10:00AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 01/06/2015) |
| 01/07/2015 | 61 | NOTICE OF HEARING as to Jonathan Tyler Prive: evidentiary hearing on 48 motion to withdraw guilty plea set for January 22, 2015 at 9:30 a.m. Signed by Judge John Antoon II on 1/7/2015. (HV) (Entered: 01/07/2015) |
| 01/16/2015 | 62 | AMENDED re 61 NOTICE OF HEARING as to Jonathan Tyler Prive: evidentiary hearing on 48 motion to withdraw guilty plea set for January 22, 2015 at 9:30 a.m. Current counsel shall be prepared to discuss the Court's standard of review with regard to 55 Report and Recommendation. Signed by Judge John Antoon II on 1/16/2015. (HV) Modified on 1/16/2015 (MAL). (Entered: 01/16/2015) |
| 01/16/2015 | | Set hearings as to Jonathan Tyler Prive: Evidentiary Hearing set for 1/22/2015 at 09:30 AM in Orlando Courtroom 6 B before Judge John Antoon II. (MAL) (Entered: 01/16/2015) |
| 01/20/2015 | 63 | RESPONSE 56 Objection to Report and Recommendations by Jonathan Tyler Prive (Brodersen, Daniel) (Entered: 01/20/2015) |
| 01/21/2015 | 64 | NOTICE to the Court regarding the standard of review of the Magistrate Judge's Report and Recommendation by USA as to Jonathan Tyler Prive re 55 REPORT AND RECOMMENDATIONS as to Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty .. (Searle, Andrew) (Entered: 01/21/2015) |
| 01/22/2015 | 65 | Minute Entry for proceedings held before Judge John Antoon II: Motion Hearing as to Jonathan Tyler Prive held on 1/22/2015 re 48 Verified MOTION to Withdraw Plea of Guilty filed by Jonathan Tyler Prive. Witnesses: Jonathan Prive and Jose Rodriguez. Court takes motion under advisement and will issue written order. Court Reporter: Koretta Stanford (DJD) (Entered: 01/23/2015) |
| 02/05/2015 | 66 | MOTION to Withdraw as Attorney by Daniel N. Brodersen. by Jonathan Tyler Prive. (Brodersen, Daniel) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 02/05/2015) |
| 02/05/2015 | 67 | ORDER denying 48 Motion to Withdraw Plea of Guilty as to Jonathan Tyler Prive; sustaining 56 Objections to 55 Report and Recommendation; declining to adopt 55 Report and Recommendation. Signed by Judge John Antoon II on 2/5/2015. (HV) (Entered: 02/05/2015) |
| 02/05/2015 | 68 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for February 6, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 2/27/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 02/05/2015) |
| 02/05/2015 | 69 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. Motion Hearing set for 2/10/2015 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 02/05/2015) |
| 02/10/2015 | 70 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 2/10/2015 re 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 02/10/2015) |
| 02/10/2015 | 71 | ORDER appointing counsel as to Jonathan Tyler Prive. It is ORDERED that Patrick Megaro, Esq., is appointed to represent Defendant Jonathan Tyler Prive pursuant to 18 U.S.C. § 3006(A). Signed by Magistrate Judge Karla R. Spaulding on 2/10/2015. (copies provided)(ECJ) (Entered: 02/10/2015) |
| 02/10/2015 | 72 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. Continuation of Motion Hearing set for 2/18/2015 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. The Defendant is required to be present. (copies provided)(ECJ) (Entered: 02/10/2015) |
| 02/11/2015 | 74 | Unopposed MOTION to Continue Sentencing Proceedings by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 02/11/2015) |

| 02/11/2015 | 75 | ORDER denying without prejudice 74 Motion to Continue as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 2/11/2015. (HV) (Entered: 02/11/2015) |
| 02/18/2015 | 76 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 2/18/2015 re 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 02/18/2015) |
| 02/18/2015 | 77 | ORDER withdrawing 66 Motion to Withdraw as Counsel of Record as to Jonathan Tyler Prive (1). Signed by Magistrate Judge Karla R. Spaulding on 2/18/2015. (ECJ) (Entered: 02/18/2015) |
| 02/23/2015 | 78 | Second MOTION to Continue Sentencing Proceedings (Unopposed) by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 02/23/2015) |
| 02/23/2015 | 79 | ENDORSED ORDER granting 78 Motion to Continue sentencing as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 2/23/2015. CTP(DJD) (Entered: 02/23/2015) |
| 02/23/2015 | 80 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for February 27, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time: Sentencing set for 3/27/2015 at 10:00AM in Orlando Courtroom 6 B before Judge John Antoon II. All Objections to the Pre-Sentence Report or Motions pertaining thereto shall be in writing and filed no later than three (3) days prior to the sentencing hearing. Counsel is to notify the Courtroom Deputy Clerk as soon as possible if they believe the sentencing will be longer than 30 minutes. CTP(DJD) (Entered: 02/23/2015) |
| 02/26/2015 | 81 | ORDER as to Jonathan Tyler Prive. No later than March 20, 2015, the Government and Defendant shall submit to the Court additional arguments and supporting authority for any issue pertaining to sentencing that have not previously been addressed. Signed by Judge John Antoon II on 2/25/2015. CTP(DJD) (Entered: 02/26/2015) |
| 03/26/2015 | 84 | Renewed MOTION for Daniel N. Brodersen to Withdraw as Attorney by Jonathan Tyler Prive. (Brodersen, Daniel) Motions referred to Magistrate Judge Karla R. Spaulding. Modified on 3/27/2015 (JET). (Entered: 03/26/2015) |
| 03/26/2015 | 85 | NOTICE canceling Sentencing hearing scheduled for March 27, 2015 as to Jonathan Tyler Prive. The Court will reschedule the sentencing by separate notice following ruling on the Defendant's second motion to withdraw as attorney. CTP (DJD) (Entered: 03/26/2015) |
| 03/27/2015 | 86 | ORDER denying 84 Renewed Motion to Withdraw as Counsel as to Jonathan Tyler Prive (1). Signed by Magistrate Judge Karla R. Spaulding on 3/27/2015. (ECJ) (Entered: 03/27/2015) |
| 03/27/2015 | 87 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for March 27, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time: Sentencing set for 4/15/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 03/27/2015) |
| 04/15/2015 | 89 | Minute Entry for proceedings held before Judge John Antoon II: Sentencing proceedings held on April 15, 2015. Defense counsel advises the Court that defendant requests he be allowed to file a motion pro se for the Court's consideration. The Court waives the rule and allows defendant's pro se motion to be filed. The Court Denies defendant's pro se motion to terminate proceedings and vacate sentence. Court hears argument on objections to the PSR and continues the sentencing to allow defendant to file a written response to the enhancement requested by the Government. Sentencing will be reset by separate notice. Counsel for Govt: Andrew Searle; Counsel for Deft: Daniel Brodersen. Times: 10:30-11:20 a.m; 11:35-11:55 p.m. Court Reporter: Sandy Tremel (DJD) (Entered: 04/15/2015) |
| 04/15/2015 | 90 | Pro Se MOTION to terminate proceedings and Vacate Sentence by Jonathan Tyler Prive filed in open court. (DJD) (Entered: 04/15/2015) |
| 04/15/2015 | 91 | ORAL ORDER denying 90 Motion to terminate proceedings and Vacate sentence as to Jonathan Tyler Prive. Entered by Judge John Antoon II on 4/15/2015. (DJD) (Entered: 04/15/2015) |
| 04/15/2015 | 92 | NOTICE OF HEARING as to Jonathan Tyler Prive: Continuation of Sentencing set for 4/22/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 04/15/2015) |
| 04/17/2015 | 93 | MEMORANDUM in support re 82 Presentence Investigation Report (Parties) Probation - SEALED by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 04/17/2015) |
| 04/21/2015 | 94 | NOTICE Regarding the Applicability of USSG 4B1.5 by Jonathan Tyler Prive re 89 Sentencing. (Brodersen, Daniel) (Entered: 04/21/2015) |
| 04/22/2015 | 95 | Minute Entry for proceedings held before Judge John Antoon II: SENTENCING held on 4/22/2015 for Jonathan Tyler Prive on Count 2 - Imprisonment: 365 months; Deft. is remanded to the custody of the U.S. Marshal. Supervised release: Life; Mandatory drug testing requirements are waived. Special conditions of supervised release: Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit, etc. and provide probation officer access to any requested financial information. Sex offender conditions: Participate in a sexual offender mental health treatment program; No contact with minor children; Media and computer restrictions imposed; Register with all sex offender registries as required by law; Submit to a search of your person, residence, place of business, etc.; Cooperate in the collection of DNA. Fine: Waived; Special assessment: $100.00. Count 1 of the Indictment is Dismissed. Court Reporter: Diane Peede (DJD) (Entered: 04/23/2015) |

| | | |
|---|---|---|
| 04/26/2015 | 96 | MOTION for miscellaneous relief, specifically For an Order Directing the U.S. Marshal's Service to Transfer Custody of Defendant to State Authorities by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 04/26/2015) |

| | | |
|---|---|---|
| 04/27/2015 | 97 | MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 04/27/2015) |
| 04/27/2015 | 98 | JUDGMENT as to Jonathan Tyler Prive - Count 1 is Dismissed; Count 2 - Imprisonment: 365 months; Deft. is remanded to the custody of the U.S. Marshal. Supervised release: Life; Mandatory drug testing requirements are waived. Special conditions of supervised release: Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit, etc. and provide probation officer access to any requested financial information. Sex offender conditions: Participate in a sexual offender mental health treatment program; No contact with minor children; Media and computer restrictions imposed; Register with all sex offender registries as required by law; Submit to a search of your person, residence, place of business, etc.; Cooperate in the collection of DNA. Fine: Waived; Special assessment: $100.00. Signed by Judge John Antoon II on 4/27/2015. (DJD) CTP (Entered: 04/27/2015) |
| 04/27/2015 | 100 | MEMORANDUM ORDER regarding sentencing factors as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 4/27/2015. (DJD) (Entered: 04/27/2015) |
| 05/05/2015 | 101 | NOTICE OF APPEAL by Jonathan Tyler Prive re 100 Order, 98 Judgment Filing fee not paid. (Brodersen, Daniel) (Entered: 05/05/2015) |
| 05/05/2015 | 102 | TRANSMITTAL of initial appeal package as to Jonathan Tyler Prive to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 101 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (IGC) (Entered: 05/05/2015) |
| 05/12/2015 | | USCA Case Number 15-12032 for 101 Notice of Appeal filed by Jonathan Tyler Prive. (LAK) (Entered: 05/12/2015) |
| 05/19/2015 | 103 | TRANSCRIPT information form filed by Jonathan Tyler Prive for proceedings held on August 27, 2014, January 22, 2015, April 15, 2015, and April 22, 2015 before Judge Spalding and Antoon re 101 Notice of Appeal. USCA number: 15-12032 (Attachments: # 1 Supplement CJA 24)(Brodersen, Daniel) (Entered: 05/19/2015) |
| 05/26/2015 | 104 | COURT REPORTER ACKNOWLEDGEMENT by Sandy Tremel re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 6-25-15. USCA number: 15-12032. (SKT) (Entered: 05/26/2015) |
| 05/26/2015 | 105 | ENDORSED ORDER directing USA to respond to 97 MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence as to Jonathan Tyler Prive. Responses due by 6/4/2015. Signed by Judge John Antoon II on 5/26/2015. CTP(DJD) (Entered: 05/26/2015) |
| 06/02/2015 | 106 | COURT REPORTER ACKNOWLEDGEMENT by Koretta Stanford re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 7/2/15. USCA number: 15-12032. (KS) (Entered: 06/02/2015) |
| 06/04/2015 | 107 | RESPONSE to Motion re 97 MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 06/04/2015) |
| 06/09/2015 | 108 | COURT REPORTER ACKNOWLEDGEMENT by Diane Peede re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 7/2/15. USCA number: 15-12032. (DP) (Entered: 06/09/2015) |
| 06/09/2015 | 109 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 06/09/2015) |
| 06/09/2015 | 110 | NOTICE FILED IN ERROR. Modified on 6/9/2015 (GJS). (Entered: 06/09/2015) |
| 06/09/2015 | 111 | NOTIFICATION that transcript has been filed by Sandy Tremel re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032-CA (SKT) (Entered: 06/09/2015) |
| 06/18/2015 | 112 | ORDER granting 97 Motion for an Order Directing the Government to Preserve Evidence as to Jonathan Tyler Prive (1); ordering the Government to preserve all evidence in this case until the conclusion of Defendant's state case and any appellate proceedings. Signed by Judge John Antoon II on 6/17/2015. (HV) (Entered: 06/18/2015) |
| 06/19/2015 | 113 | ENDORSED ORDER denying as moot 96 Motion for order directing the U.S. Marshal's service to transfer custody of defendant to State authorities as to Jonathan Tyler Prive. The Court has been informed by the U.S. Marshal that the defendant was released to state custody at the Brevard County Jail on May 11, 2015. Signed by Judge John Antoon II on 6/19/2015. (DJD) (Entered: 06/19/2015) |

| | | |
|---|---|---|
| 06/25/2015 | 114 | TRANSCRIPT of the continuation of the sentencing (Vol. II) for the date of 4/22/15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Diane Peede, Telephone number 407-835-4405. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/16/2015, Redacted Transcript Deadline set for 7/27/2015, Release of Transcript Restriction set for 9/23/2015. (DP) (Entered: 06/25/2015) |
| 06/25/2015 | 115 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT (Doc. No. 114). The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Diane Peede (DP) (Entered: 06/25/2015) |
| 06/25/2015 | 116 | NOTIFICATION that transcript has been filed by Diane Peede re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032 (DP) (Entered: 06/25/2015) |
| 06/30/2015 | 117 | TRANSCRIPT of Motion/Evidentiary Hearing for date of 01/22/15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Koretta Stanford, Telephone number 407-872-1715. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/21/2015, Redacted Transcript Deadline set for 7/31/2015, Release of Transcript Restriction set for 9/28/2015. (KS) (Entered: 06/30/2015) |
| 06/30/2015 | 118 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT, Doc. 117. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Koretta Stanford (KS) (Entered: 06/30/2015) |
| 06/30/2015 | 119 | NOTIFICATION that transcript has been filed by Koretta Stanford re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032 (KS) (Entered: 06/30/2015) |
| 07/02/2015 | 120 | TRANSCRIPT of sentencing volume 1 for dates of 4-15-15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Sandy Tremel, Telephone number 407-288-6343, sandy.tremel@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/23/2015, Redacted Transcript Deadline set for 8/3/2015, Release of Transcript Restriction set for 9/30/2015. (SKT) (Entered: 07/02/2015) |
| 07/02/2015 | 121 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 07/02/2015) |
| 07/06/2015 | | Mail returned as Undeliverable re: 112 Order on Motion for Miscellaneous Relief. Mail resent to Jonathan Tyler Prive at Brevard County Jail Complex. See Order #113. (JET) (Entered: 07/07/2015) |
| 02/03/2016 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for purposes of this appeal re: 101 Notice of Appeal as to Jonathan Tyler Prive. All documents are imaged and available for the USCA to retrieve electronically. USCA number: 15-12032. (JET) (Entered: 02/03/2016) |
| 05/24/2016 | 122 | USCA Opinion as to Jonathan Tyler Prive re 101 Notice of Appeal USCA number: 15-12032. (AFFIRMED) Mandate to issue at a later date. USCA number: 15-12032. (JET) (Entered: 05/24/2016) |
| 06/30/2016 | 123 | (RECALLED PER 124 USCA LETTER) MANDATE of USCA as to Jonathan Tyler Prive re 101 Notice of Appeal. Mandate Issued: 6/22/2016. USCA Number: 15-12032-DD; re 122 USCA Opinion. AFFIRMED. (JEV) Modified on 7/8/2016 (JEV). (Entered: 06/30/2016) |
| 07/08/2016 | 124 | USCA Letter stating 123 Mandate has been RECALLED because a petition for rehearing en banc was timely served as to Jonathan Tyler Prive re 101 Notice of Appeal. EOD: 6/24/2016. USCA number: 15-12032-DD. (JEV) (Entered: 07/08/2016) |
| 08/16/2016 | 125 | MANDATE of USCA as to Jonathan Tyler Prive re 101 Notice of Appeal. Mandate Issued: 8/10/2016. USCA Number: 15-12032-DD re 122 Opinion. AFFIRMED. (JEV) (Entered: 08/16/2016) |
| 07/11/2017 | 126 | **STRICKEN, REMOVED, AND RETURNED PER 130 ORDER** MOTION for miscellaneous relief, |

| | | |
|---|---|---|
| | | specifically for official recognition of impediment to filing by Jonathan Tyler Prive. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(JET) Modified on 8/25/2017 (LMM). (Entered: 07/11/2017) |
| 08/01/2017 | 127 | MOTION to Disqualify the Judge by Jonathan Tyler Prive. FILED PRO SE. (JET) (Entered: 08/01/2017) |
| 08/15/2017 | 128 | CERTIFICATE of interested persons and corporate disclosure statement filed by Jonathan Prive. (JP) Modified on 8/16/2017 (JET). FILED PRO SE. (Entered: 08/15/2017) |
| 08/16/2017 | 129 | MOTION to Vacate under 28 U.S.C. 2255 ( Civil Action 6:17-cv-1498-ORL-28KRS.) by Jonathan Tyler Prive. (JP) (Entered: 08/17/2017) |
| 08/24/2017 | 130 | ORDER striking 126 Defendant's Motion for Official Recognition of Impediment to Filing; directing the Clerk to terminate the motion, remove it from the record, and return it to Defendant; denying 127 Defendant's Motion for Disqualification of Judge. Signed by Judge John Antoon II on 8/24/2017. (BRS) (Entered: 08/24/2017) |
| 08/29/2017 | 131 | NOTICE of Inquiry by Jonathan Tyler Prive. (Docket sheet mailed out.) (JP) (Entered: 08/29/2017) |
| 09/05/2017 | 132 | MOTION to Vacate (appeal from order denying defendant's motion for disqualification of judge for plain error) re 130 Order by Jonathan Tyler Prive. FILED PRO SE. (Attachments: # 1 Exhibit A)(JEV) (Entered: 09/05/2017) |
| 09/26/2017 | 133 | ORDER denying 132 Motion to Vacate as to Jonathan Tyler Prive (1). Signed by Judge John Antoon II on 9/26/2017. (AJM) (Entered: 09/26/2017) |
| 10/20/2017 | 134 | MOTION for Reconsideration/Rehearing re 133 Order on Motion to Vacate by Jonathan Tyler Prive. FILED PRO SE. (JET) (Entered: 10/20/2017) |
| 11/28/2017 | 135 | NOTICE of Inquiry by Jonathan Tyler Prive (JET) (Entered: 11/28/2017) |
| 12/04/2017 | 136 | ORDER denying 134 Motion for Rehearing. Signed by Judge John Antoon II on 12/4/2017. (BRS) (Entered: 12/04/2017) |
| 12/05/2017 | 137 | ENTERED IN ERROR. Modified on 12/6/2017 (GJS). (Entered: 12/05/2017) |
| 12/05/2017 | 138 | Notice of substitution of AUSA. Ilianys Rivera Miranda substituting for Andrew C. Searle. (Miranda, Ilianys) (Entered: 12/05/2017) |
| 01/03/2018 | 139 | ORDER denying 129 Motion to Vacate (2255) as to Jonathan Tyler Prive (1). Signed by Judge John Antoon II on 1/3/2018. (Originally filed in associated civil case.) (SPM) (Entered: 01/04/2018) |
| 01/04/2018 | 140 | Judgment entered in associated civil case, 6:17-cv-1498-Orl-28KRS. (SPM) (Entered: 01/04/2018) |
| 02/01/2018 | 141 | NOTICE OF APPEAL by Jonathan Tyler Prive re 130 Order striking 126 Defendant's Motion for Official Recognition of Impediment to Filing and 139 Order denying 129 Motion to Vacate (2255), originally filed in associated civil case, to be construed as a Notice of Appeal. Filing fee not paid. (ALL) Modified on 5/17/2018 (ALL). (Entered: 04/20/2018) |
| 04/24/2018 | 142 | TRANSMITTAL of initial appeal package as to Jonathan Tyler Prive to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 141 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (ALL) (Entered: 04/24/2018) |
| 04/27/2018 | | USCA Case Number as to Jonathan Tyler Prive. USCA Number: 18-11693 for 141 Notice of Appeal filed by Jonathan Tyler Prive. (ALL) (Entered: 04/27/2018) |

Order documents from our nationwide document retrieval service.
- OR - Call 1.866.540.8818.

Copyright © 2018 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

# Crim. Doc. 27

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                     CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A.

Lee Bentley, III, United States Attorney for the Middle District of Florida, and the

defendant, JONATHAN TYLER PRIVE, and the attorney for the defendant, Jose

Rodriguez, mutually agree as follows:

A.      **Particularized Terms**

        1.      Count Pleading To

                The defendant shall enter a plea of guilty to Count Two of the

Indictment.  Count Two charges the defendant with attempted enticement of a

minor, in violation of 18 U.S.C. § 2422(b).

        2.      Minimum and Maximum Penalties

                Count Two is punishable by a mandatory minimum term of

imprisonment of 10 years up to life, a fine of up to $250,000, a term of supervised

release of at least 5 years up to life, and a special assessment of $100 per felony

count.  With respect to certain offenses, the Court shall order the defendant to

make restitution to any victim of the offenses, and with respect to other offenses,

Defendant's Initials _𝓙𝓥𝓟_

the Court may order the defendant to make restitution to any victim of the

offenses, or to the community, as set forth below.

3.   Elements of the Offense

The defendant acknowledges understanding the nature and

elements of the offense with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Count Two are:

First:        the Defendant knowingly attempted to persuade, induce,
              entice or coerce an individual to engage in sexual activity;

Second:       the Defendant used the Internet or cellphone to do so;

Third:        when the Defendant did these acts, the victim was less than
              18 years old; and,

Fourth:       one or more of the individuals engaging in the sexual activity
              could have been charged with a criminal offense under the
              law of Florida.

4.   Count Dismissed

At the time of sentencing, the remaining count against the

defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P.

11(c)(1)(A).

5.   No Further Charges

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge defendant

with committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

Defendant's Initials                     2



6.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 2248 and 2259, defendant agrees to make full restitution to the minor victim.

7.    <u>Mandatory Restitution to Victims of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court. Further, pursuant to 18 U.S.C. § 3364(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

8.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials           3

the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following: an Acer Aspire



laptop computer, serial number LUS050B13384523F592535, which was used to facilitate the criminal activity charged in the indictment.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is

Defendant's Initials                     5

omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed

Defendant's Initials _____        6

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

4.    Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Brevard County Sheriff's Office and Homeland Security Investigations or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§

Defendant's Initials                 7

2253 or 2254, and/or that the computer equipment and peripherals constitute

evidence, contraband, or fruits of the crime for which he has pled guilty. As such,

defendant hereby relinquishes all claim, title and interest he has in the computer

equipment and peripherals to the United States of America with the

understanding and consent that the Court, upon approval of this agreement,

hereby directs the Federal Bureau of Investigation, or other appropriate agency,

to cause the computer equipment described above to be destroyed forthwith

without further obligation or duty whatsoever owing to defendant or any other

person.

As part of the plea agreement in this case, defendant hereby states

under penalty of perjury that he/she is the sole and rightful owner of the property,

and that defendant hereby voluntarily abandons all right and claim to and

consents to the destruction of: an Acer Aspire laptop computer, serial number

LUS050B13384523F592535.

5.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the

Sex Offender Registration and Notification Act, a federal law, the defendant must

register and keep the registration current in each of the following jurisdictions: the

location of the defendant's residence, the location of the defendant's

employment; and, if the defendant is a student, the location of the defendant's

school. Registration will require that the defendant provide information that

includes name, residence address, and the names and addresses of any places

Defendant's Initials                     8

at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

6.    <u>Removal - Notification</u>

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status.  The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.

Defendant's Initials                     9

**B.**     **Standard Terms and Conditions**

1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon

Defendant's Initials                      10

release from imprisonment, and that, if the defendant should violate the
conditions of release, the defendant would be subject to a further term of
imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

    The defendant has been advised and understands that, upon
conviction, a defendant who is not a United States citizen may be removed from
the United States, denied citizenship, and denied admission to the United States
in the future.

    4.    <u>Sentencing Information</u>

    The United States reserves its right and obligation to report to the
Court and the United States Probation Office all information concerning the
background, character, and conduct of the defendant, to provide relevant factual
information, including the totality of the defendant's criminal activities, if any, not
limited to the counts to which defendant pleads, to respond to comments made
by the defendant or defendant's counsel, and to correct any misstatements or
inaccuracies.  The United States further reserves its right to make any
recommendations it deems appropriate regarding the disposition of this case,
subject to any limitations set forth herein, if any.

    5.    <u>Financial Disclosures</u>

    Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.
32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States
Attorney's Office within 30 days of execution of this agreement an affidavit

Defendant's Initials           11

reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report

Defendant's Initials                     12

prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

       7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

           The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence

Defendant's Initials _____                13



violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is

Defendant's Initials                     14

pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth

Defendant's Initials         15

in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _26_ day of ~~July~~, 2014.

A. LEE BENTLEY, III
United States Attorney

JONATHAN TYLER PRIVE
Defendant

Andrew C. Searle
Assistant United States Attorney

Jose Rodriguez
Attorney for Defendant

Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____   16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

FACTUAL BASIS[1]

Beginning on or about November 4, 2013, and continuing through and

including on or about November 5, 2013, in Brevard County, Florida, in the

Middle District of Florida, and elsewhere, the defendant, JONATHAN TYLER

PRIVE ("PRIVE"), used the internet, a facility and means of interstate commerce,

in an attempt to persuade, induce, entice, and coerce a three year old female

child ("the minor victim")  to engage in sexual activity for which any person could

be charged with a criminal offense under the laws of the State of Florida, that is,

Lewd or Lascivious Battery, a violation of Florida State Stat. § 800.04.   The

minor victim is the daughter of another individual ("the other individual").  On a

prior occasion in September of 2013, PRIVE and the other individual participated

in the sexual abuse of the minor victim at the other individual's home in Brevard

County.[2]   The actions of PRIVE and the other individual came to light as a result

of a joint investigation conducted by the Brevard County Sheriff's Office ("BCSO")

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant
to the defendant's involvement in the crime to which the defendant is pleading guilty and other
illegal activities in which the defendant may have been involved.

[2] The other individual is currently charged with federal offenses under Middle District of Florida
Case No. 6:14-cr-34-ORL-28DAB.

Defendant's Initials                     17

and the Cocoa Beach office of the Department of Homeland Security ("DHS"),
Homeland Security Investigations ("HSI"), which is set forth, in part and
substance, below.

In September and October of 2013, an HSI Task Force Agent acting in an
undercover capacity ("the UC agent") conducted an investigation into the other
individual which revealed that the other individual was sexually abusing the minor
victim, producing child pornography images of the minor victim, and distributing
some of these child pornography images to others, via the internet. Agents
eventually identified the other individual's residence in Brevard County where
they ultimately arrested the other individual and executed a search warrant.
Agents also forensically examined the electronic devices seized from the other
individual's residence and gained access to his email accounts with his
permission.   A review of the other individual's electronic devices and email
accounts revealed communication between the other individual and PRIVE,
using their respective email accounts, regarding their prior sexual abuse of the
minor victim as well as their plans to continue sexually abusing the minor victim
at a date in the future.  Some of these emails are described, in substance and
part, below[3]:

On September 9, 2013, PRIVE asked the other individual: "can I see a pic
of your little one?" The other individual responded by sending PRIVE a
photograph of the minor victim with clothing on a child's bike and stated: "Ya a G

---

[3] The portions of the factual basis that are in quotation marks are direct quotes from these emails.
Any spelling or grammatical errors in quotation marks were contained in the emails themselves.

Defendant's Initials _____      18

rated on lol! Tell me what u would do in your fantasy. Thereafter, PRIVE sent the

other individual the following email:

PRIVE:    "In my fantasy I'd sit on the couch with a girl on my lap and slide my fingers into her little panties and finger her clit while we watched cartoons. Then I'd undress her once she was wet and wiggling her hips and sit with my cock between her thighs and rub it up and down her little cunt while she held the tip. Then when the cartoon was done I'd take her to the bedroom to play. I'd have her lick and suck on the tip while she laid on my chest and I played with her tight little butt. I'd use a whole bunch of lube and play with her ass until she was loose enough to slip my pinky inside. Then I'd finger her while she held my cock and played with it. Want to hear more? Tell me what new stuff you've with her in your fantasies and I'll go on."

On September 10, 2013, the email exchange continued as follows:

The other individual:    "Would luv to watch that. Tried using my pinky to finger her and tried a vibrating toothbrush."

PRIVE:    "How did it work? How far did you get with it?

After fingering her for long enough to get her nice and loose. I'd add another finger and keep going while she laid on my stomach, panting, and squirming. Then when she couldn't take it anymore, I'd lay her on her back and slide the head of my cock up and down her little cunt, getting it all wet and slippery with pre cum. I'd push the head tight against her little cunt and shoot it inside her, filling her up."

The other individual:    "I am so hard after that! Wow!"

PRIVE:    "Glad you liked it. lol"

PRIVE:    "you thinking of taking another shot at a getting together?"

Defendant's Initials _____    19

| | |
|---|---|
| The other individual: | "Yes I am. I would really like to chat live about our fantasies. Wife at work and kids r at grandmas so they will not be here to bother us or keep us from our fantasies. If u do cum over you wont be sorry!" |
| PRIVE: | "I wont be sorry? What did you have in mind?" |
| The other individual: | "Was thinking we could fantasize and maybe jo while we talk about what we like? Maybe trade good porn you know. You would not be sorry if u cum over!" |
| The other individual: | "U would have fun 4 sure!" |
| PRIVE: | "how long are your wife and the kids gone?" |
| The other individual: | "Must be soon though cuz she wont be working very late tonight. We r waiting 4 your response." |
| PRIVE: | "you just said "we" are waiting. Who is "we"?" |
| The other individual: | "Till about 8ish so if u came now + drive time we could have about a solid hour to play at least." |
| The other individual: | "Royal we. Remember neither of us want to do anything in our fantasies for real right? So we will fantasize another being here but no real contact. But if u cum over u wont be sorry!" |

After this PRIVE sent the other individual numerous emails requesting the

other individual's address and the other individual eventually sent PRIVE his

address which was in Brevard County. PRIVE and the other individual then

exchanged emails agreeing to meet and provided each other with names.

PRIVE referred to himself as "John," and the other individual referred to himself

Defendant's Initials _____      20

as "Mitch."

On September 10, 2013, at 6:24 p.m., PRIVE sent the other individual an email stating: "Okay mitch. I'm on my way."      There were no further emails between them until 8:04 p.m., when the following email exchange took place

| The other individual: | "Hey John email me when u get home!" |
|---|---|
| PRIVE: | "home now." |
| The other individual: | "Man! That was so fucking hot watching u with my daughter!  Did u enjoy?" |
| PRIVE: | "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things." |
| The other individual: | "I wish we had more time too. Fri night maybe? So what do u wanna do to her with lube?" |
| The other individual: | "Dude my dick is gonna be hard for a month after seeing that!  Especially when you came all over my baby daughter fuck yeah! Use her!" |
| PRIVE: | "I'd want to try doing what I told you about in my story And I think we'd need to put down a towel or something for the grand finale. You saw how much I cum. lol" |
| The other individual: | "I love how much u cum! She may resist and cry so u may have to be ok with that but I would luv to help u fuck her!" |
| PRIVE: | "We'd be gentle of course, but yeah, it would be okay. And you may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions or talk about how you're being mean and sending him to his room all the time. lol" |

From September 11, 2013 through October 11, 2013 (the date agents

arrested the other individual), PRIVE continued to discuss with the other
individual the following topics in emails: (1) PRIVE's sexual abuse of the minor
victim from the date described above; (2) plans to meet at the other individual's
home when the other individual's wife was away; and (3) in graphic and
disturbing detail their plans to engage in sexual activity with the minor victim in
the their future meetings, including plans to penetrate the minor victim's vagina
and anus.

On October 11, 2013, before the agents arrested the other individual, the
other individual asked PRIVE to come over but PRIVE was unable to during the
time-frame when the other individual's wife was away from the home.  The last
emails between PRIVE and the other individual before the other individual was
arrested are as follows:

| PRIVE: | "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me?" |
| --- | --- |
| The other individual: | "Wife came home and spoiled my fun :( After that    close call situation I don't send pics of her anymore." |

After agents arrested the other individual and discovered the above-
mentioned emails between PRIVE and the other individual, the UC agent, posing
as the other individual, used the other individual's email account to initiate online
communication with PRIVE.  On November 4, 2013, the following email
exchange took place:

Defendant's Initials _____                    22

| UC[4]: | "hey it's playtime, you interested again?" |
|---|---|
| PRIVE: | "Hey. Just got your message. What did you have in mind?" |
| PRIVE: | "Have you done anything new since last time?" |
| UC: | "not since you came over, that was hot. wife is in school tomorrow." |
| PRIVE: | "oh yeah? What time does she leave and what do you want to do this time?" |
| UC: | "Cool she leaves at about 9, up to you that was so hot i couldn't stop thinking about last time. the baby girl will be here too." |
| PRIVE: | "Is that 9 in the morning or at night?" |
| UC: | "in the morning." |
| PRIVE: | "I'd love to pop her cherry and put fingers in both her holes before filling her little cunt with cum :)" |
| UC: | "that be so hot see that happen to my 3yo baby girl. wife won't be home till like five, mmmmm." |
| PRIVE: | "Lots of time to play ;) What's your address again? I cant find the message that had it in there." |
| UC: | "you have to let me know when your coming wife will kill me if she is here." |
| PRIVE: | "I'd like to come at about 10:30 or 11, that way we have plenty of time to play with your daughter and fill her holes up with fingers and cum ;)" |
| UC: | "so hot im in [at this point in the email exchange, the UC agent provided PRIVE with the street and city in |

---

[4] Where the UC agent is referenced in these email exchanges with PRIVE, the UC was communicating with PRIVE using one of the other individual's email accounts and pretending to be the other individual.

Defendant's Initials _____     23

> Brevard County where the other individual lived], can you hit me up in the morning so i'll know your cumming like before."

PRIVE:      "Sounds good :) I'm looking forward to seeing how far we can stretch her out and how much cum we can put in her ;)

UC:         "mmmmm hot, hit me up in the morning and i'll let you know the wife is gone she should be home soon."

PRIVE:      "okay :)"

UC:         "talk to you then."

On November 5, 2013, at approximately 9:16 a.m., the UC sent PRIVE an email stating: "hey she just left, if you haven't changed her mind." At 9:26 a.m., the UC corrected the prior email, sending one that stated: "your." At approximately 9:55 a.m., an HSI agent conducting surveillance at PRIVE's residence in Brevard County observed PRIVE exit his residence and walk to a nearby McDonalds while carrying a small netbook computer and a cell phone. PRIVE sat at a table outside the McDonalds, opened up the computer, and started typing. While HSI agents conducted surveillance of PRIVE typing on his computer at the McDonalds, the UC agent had the following email exchange with him:

PRIVE:      "Yeah I'm still interested in coming over. What's the address?  And are you sure she wont be coming back for lunch or anything?"

UC:         "no she brought her lunch great what time you going to be here."

PRIVE:      "I can be there in about 45 minutes if you give the address again. And do I need to bring some lube, or

Defendant's Initials _____        24

do you have some?"

UC:          "for the baby girl yeah i'm about out. [at this point in
             the email exchange, the UC agent provided PRIVE
             with the other individual's exact address in Brevard
             County]

PRIVE:       "okay. I'll be there at about 11:20."

UC:          "ok bro i'll put her in the tub."

After these emails, an HSI agent observed PRIVE close his computer and
return to his home with his computer and cell phone at 10:30 a.m. At
approximately 10:41 a.m., PRIVE exited his residence, got on his motorcycle,
and drove away. HSI agents in vehicles and the BCSO Air Unit followed PRIVE
as he drove to the street in Brevard County where the other individual's
residence was located. At approximately 11:30 a.m., BCSO Agents stopped
PRIVE on his motorcycle and later recovered from the saddle bag of the
motorcycle a packet of lubricant.

After PRIVE was stopped, the UC agent approached PRIVE and identified
himself as a law enforcement officer. The UC agent advised PRIVE of his
Miranda rights and PRIVE agreed to waive his rights and speak to law
enforcement. PRIVE also signed a Miranda rights waiver form. After PRIVE
agreed to speak, he was interviewed by agents. At the outset of the interview,
PRIVE admitted that he was the user of the email account that was in
communication with the other individual's email account regarding the sexual
abuse of the minor victim as set forth above. PRIVE eventually admitted to the
following in his interview with agents:

Defendant's Initials                 25

- PRIVE met the other individual online after the other individual responded to an online Craigslist advertisement PRIVE posted regarding bondage and sadomasochistic ("BDSM") sexual interests.

- PRIVE and the other individual exchanged emails regarding BDSM.

- PRIVE went to the other individual's home one time to continue their conversations about BDSM.

- The other individual's son and daughter (the minor victim) were at the residence when PRIVE came over.

- PRIVE and the other individual entered the other individual's bedroom with the minor victim while the other individual's son remained in the living room.

- Once inside the bedroom, the other individual lifted the child's dress, rubbed the child between her legs, and "spread her open."

- Both PRIVE and the other individual removed their penises.

- PRIVE rubbed his penis against the minor victim's vagina.

- PRIVE also placed his penis into the child's mouth and touched the child's vagina with his hand.

- PRIVE ejaculated on the minor victim's stomach and the other individual licked the semen off the victim.

- At some point, the other individual rubbed his penis in the child's vagina.

- After this, the other individual dressed the child in a white dress.

- Regarding his intentions in travelling to the other individual's residence in Brevard County on November 5, 2013, PRIVE admitted that he planned to participate in the sexual abuse of the minor victim a second time.

- He used his netbook computer to communicate with the other individual and that the computer was at his residence (later identified to be an Acer Aspire laptop computer, serial number LUS050B13384523F592535).

Defendant's Initials                26

After PRIVE made these and other statements to law enforcement, he
was arrested and agents executed a search warrant at his residence where they
seized several electronic devices, including a Kindle device labeled "Jon's
Kindle." A forensic examination of the Kindle device revealed that the following
material was contained on the device:

- Portions of the emails sent back and forth between PRIVE and the
  other individual's email account, including some of the emails on
  November 4, 2013 when the UC was posing as the other individual.

- Evidence that the computer had been used to connect to the wireless
  service at the McDonalds where agents observed PRIVE
  communicating with the UC.

- Recent search terms consistent with an interest in child pornography:
  "pthc 4yo 5yo 6yo 7yo 8yo 9yo" while the user of the computer visited
  the website "fileshut.com."

- Google map searches for the other individual's address in Brevard
  County.

- Five videos of child pornography that had been deleted and were
  located in the unallocated space on the computer.

Pursuant to a search warrant, agents also acquired email content records
from the service provider for the email account PRIVE used in the above-
described communications with the other individual and the UC.   The email
content records from the service provider included above-described emails
between PRIVE and the other individual's email address.

Defendant's Initials                 27

# Crim. Doc. 98

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**vs**

**JONATHAN TYLER PRIVE**

**Case Number: 6:14-cr-33-Orl-28KRS**

**USM Number: 60386-018**

**Daniel Newton Brodersen, CJA**
**533 N. Magnolia Ave**
**Orlando, FL 32801**

## JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Count Two of the Indictment. Accordingly, the Court has adjudicated the defendant guilty of the following offense:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 2422(b) | Attempted Enticement of a Minor | November 5, 2013 | Two |

The defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count One of the Indictment is dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence:

April 22, 2015

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

April 2 7 , 2015

AO 245B (Rev. 4/09) Judgment in a Criminal Case

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 365 Months

The defendant is remanded to the custody of the United States Marshal.


## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshal

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of Life.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The mandatory drug testing requirements of the Violent Crime Control Act are waived. However, the Court orders the defendant to submit to random drug testing not to exceed 104 tests per year.

The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervision that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervision in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;

2. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4. The defendant shall support his or her dependents and meet other family responsibilities;

5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6. The defendant shall notify the probation officer **at least ten (10) days prior** to any change in residence or employment;

7. The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9. The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

10.     The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11.     The defendant shall notify the probation officer within **seventy-two (72) hours** of being arrested or questioned by a law enforcement officer;

12.     The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13.     As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1.      The defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or making an obligation for any major purchases without approval of the probation officer. The defendant shall provide the probation officer access to any requested financial information.

2.      The defendant shall participate in a mental health program specializing in sex offender treatment and submit to polygraph testing for treatment and monitoring purposes. The defendant shall follow the probation officer's instructions regarding the implementation of this court directive. Further, the defendant shall contribute to the costs of such treatment and/or polygraphs not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third party payment and in conformance with the Probation Office's Sliding Scale for Treatment Services.

3.      The defendant shall register with the state sexual offender registration agency(s) in any state where he or she resides, visits, is employed, carries on a vocation, or is a student, as directed by the probation officer. The probation officer will provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes (F.S.943.0435) and/or the Sex Offender Registration and Notification Act (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248), and may direct the defendant to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

4.      The defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate, including: schools, daycare centers, theme parks, playgrounds, etc.

5.      The defendant is prohibited from possessing, subscribing to, or viewing, any video, magazine, or literature depicting children in the nude and/or in sexually explicit positions.

6.      The defendant shall not possess or use a computer with access to any online service at any location (including employment) without written approval from the probation officer. This includes access through any Internet service provider, bulletin board system, or any public or private computer network system. The defendant shall permit routine inspection of his or her computer system, hard drives, and other medial storage materials, to confirm adherence to this condition. This inspection shall be no more intrusive than is necessary to ensure compliance with this condition. The defendant shall inform his or her employer, or other third party who may be impacted by this condition, of this computer-related restriction and the computer inspection provision of the condition.

7.      The defendant shall submit to a search of his or her person, residence, place of business, any storage units under the defendant's control, computer, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition.

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

8.      The defendant shall cooperate in the collection of DNA, as directed by the probation officer.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $100.00 | $0.00 | $0.00 |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

The Special Assessment in the amount of **$100.00** is due in full and immediately.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the Schedule of Payments may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Crim. Doc. 100

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**VS.**                                        **CASE NO: 6:14-cr-33-Orl-28KRS**

**JONATHAN TYLER PRIVE**

_____

## MEMORANDUM ORDER

A grand jury returned an indictment against Defendant Jonathan Tyler Prive charging enticement of a minor (Count One) and attempted enticement of a minor (Count Two). (Indictment, Doc. 1). For reasons not apparent in the record, the Government entered into a plea agreement with Defendant providing that Defendant would plead guilty to Count Two, which charged attempted enticement, and the Government would dismiss Count One. Defendant is now before me for sentencing on Count Two, and both parties have raised issues regarding proper scoring under the United States Sentencing Guidelines ("USSG"). Defendant argues that facts underlying Count One should not be used in the scoring, and the Government argues that the total offense level should be increased under USSG § 4B1.5(b)(1) because Defendant's conduct constitutes a pattern of activity involving prohibited sexual conduct. Both arguments have merit.

### I. Background

The facts of this case are singularly shocking and tragic, suggesting that man's capacity for depravity is without limits. Unfortunately, Defendant and Michael Glascock met online as they pursued their mutual interest in sexually abusing young children. (See Plea Agreement, Doc. 27, at 18 & 26). In email communications, Glascock described to Defendant in detail how he sexually abused his three-year-old daughter. (See id. at 18-

19).    Defendant liked what he read and expressed his desire to also sexually abuse the child.  (See id.).  The men then entered into a plan to fulfill Defendant's wish.  (Id. at 19-21).  On September 10, 2013, that plan was executed; Defendant traveled to Glascock's house, where both men sexually abused the child.  (Id. at 21 & 26).  Glascock watched as Defendant rubbed his penis against the child's vagina, placed his penis in the child's mouth, touched the child's vagina with his hand, and ejaculated on the child's stomach.  (Id. at 26).

After Defendant abused the child, the men exchanged email messages expressing the gratification and pleasure they felt from inflicting the abuse.  (Id. at 21).  Defendant told Glascock that he wished he had more time to abuse the child during his visit and that in the future he would like to engage in yet other forms of abuse.  (Id. at 21-22).  Glascock stated that he would like to help Defendant abuse the child again in the future.  (Id.).  From September 11, 2013, through October 11, 2013, Defendant continued to discuss with Glascock plans to meet again at Glascock's house when Glascock's wife was out.  (Id.).  These disturbing conversations included descriptions of the violence the men intended to inflict on the child.  (Id. at 22).  Eventually, the men agreed to meet on October 11, 2013, but the plan failed because Defendant could not get to Glascock's house at a time Glascock's wife was out.  (Id.).

Before plans for a second encounter were in place, Glascock was arrested, and an undercover agent began participating in the conversation pretending to be Glascock.  (Id.).  On November 4, 2013, the undercover agent, posing as Glascock, suggested that the next morning would be a good time for Defendant to again abuse the child.  (Id. at 23).  Defendant agreed that he would come to Glascock's house the next day, stating he wanted to penetrate the child's vagina and anus.  (See id.).  On the morning of November 5, 2013,

2

the undercover agent advised Defendant that Glascock's wife had left the house, and Defendant replied that he would be at Glascock's house within the hour.  (Id. at 24). Defendant asked the undercover agent whether he needed to bring "lube," and the undercover agent answered that he was "about out." (Id. at 24-25).  While Defendant was on his way to Glascock's house with lubricant, deputies of the Brevard County Sheriff arrested Defendant and advised him of his Miranda rights. (Id. at 25). While in the custody of the Brevard County Sheriff, Defendant made statements confirming his earlier sexual abuse of Glascock's daughter, describing various ways in which he committed the abuse. (Id. at 25-26).

On August 26, 2014, Defendant entered into a plea agreement with the Government.  (See id. at 16).  The Plea Agreement signed by Defendant stated that "Defendant is pleading guilty because [he] is in fact guilty.  [Defendant] certifies that [he] does hereby admit that the facts set forth in the attached 'Factual Basis,' which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt." (Id. at 15-16).  The Factual Basis included the details described above and the statement that "in September of 2013, [Defendant] and [Glascock][1] participated in the sexual abuse of [Glascock's daughter] at [Glascock's] home in Brevard County."  (Id. at 17).

Separately, Glascock entered guilty pleas to one count of Sexual Exploitation of a Minor for the Purpose of Producing Child Pornography, 18 U.S.C. § 2251(a) and (e), and

---

[1] The Factual Basis does not mention Glascock by name, but it refers to Middle District of Florida Case No. 6:14-cr-34-Orl-28DAB, which is the case in which Glascock was charged with eight counts, including sexual exploitation of a child; sexual enticement of a child; and receipt, possession, and distribution of child pornography.

one count of Attempted Sexual Enticement of a Minor, 18 U.S.C. § 2422(b).  Under the United States Sentencing Guidelines, Glascock had a Total Offense Level of 43 and fell in Criminal History Category I. He was sentenced to life in prison.  Glascock's illegal activities were not limited to this case.  Glascock also traded pornographic pictures depicting himself sexually abusing his three-year-old daughter to William Osman.  In exchange for the lurid photographs of Glascock's daughter, Osman sent Glascock pornographic pictures of himself abusing his own one-year-old daughter.  Osman entered guilty pleas to one count of Production of Child Pornography, 18 U.S.C. § 2251(a) and (e), one count of Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2)(B), and one count of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B).  Osman's Total Offense Level was 43, and he fell within Criminal History Category III.  Osman received a sentence of 720 months in prison.

## II.  Proposed Guidelines Calculations

In crafting a reasonable sentence, the trial court must first correctly calculate the range of sentences called for by the Guidelines.  The Probation Office prepared a Presentence Investigation Report, including proposed findings required to calculate a correct advisory Guidelines range.  The Probation Office recommends a Total Offense Level of 37.  This includes a base offense level of 28, and the following upward adjustments under USSG § 2G1.3:

- Use of a computer (+2 levels) under USSG § 2G1.3(b)(3)(B)

- Commission of a sex act or sexual contact (+2 levels) under USSG § 2G1.3(b)(4)(A)

- Involving a minor who had not attained the age of 12 (+8 levels) under USSG § 2G1.3(b)(5)

4

These upward adjustments result in an Adjusted Offense Level of 40.  However, Defendant is entitled to the following downward adjustments under USSG § 3E1.1:

- Acceptance of responsibility (-2 levels) under USSG § 3E1.1(a)

- Assistance to authorities (-1 level) under USSG § 3E1.1(b)[2]

Thus, the Total Offense Level recommended by the Probation Office is 37.  Defendant has no criminal history points, placing him in Criminal History Category I, with a proposed advisory range of 210–262 months.

## III. Defendant's Objections to Proposed Guidelines Calculations

Defendant objects to the proposed sentencing enhancements for relevant conduct. The applicability of enhancements under USSG § 2G1.3 are determined by a defendant's relevant conduct, which includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" as well as all harm resulting from, or the object of, those acts or omissions.  USSG § 1B1.3(a).[3]  It

---

[2] In its latest memorandum (Doc. 93), the Government notes that Defendant sought to withdraw his plea and has had numerous conflicts with his counsel, (see Docs. 48, 66, & 84), and that a magistrate judge has found that "it is evident that Defendant . . . is taking steps to delay being sentenced on this case," (Doc. 86).  Based on this behavior, the Government notes that these downward adjustments under USSG § 3E1.1 may no longer apply to Defendant.  (Doc. 93 at 4).  However, "[i]n an effort to avoid any further delays in this matter, the Government does not plan to seek the removal of the three-level downward adjustment for acceptance of responsibility."  (Id.).  The § 3E1.1 downward adjustments will be applied to calculate Defendant's Total Offense Level.

[3] This is a narrower test than the "same course of conduct or common scheme or plan" that governs "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts."  USSG § 1B1.3(a)(2).  Section 3D1.2(d) does not appear to govern § 1B1.3, and there is no argument from the Government or Probation Office that it does.  The

is intended that this Guidelines provision be interpreted broadly, <u>United States v. Behr</u>, 93 F.3d 764, 765 (11th Cir. 1996) (per curiam), and that relevant conduct include more than the facts necessary to prove the offense of conviction.

Relevant conduct enhancements under USSG § 2G1.3 may be used to increase an offense level because that conduct relates to the manner in which the crime was committed. To that extent, a sentencing court may consider "conduct underlying the acquitted charge," <u>United States v. Watts</u>, 519 U.S. 148, 157 (1997) (per curiam), as well as conduct alleged in counts dropped by the Government pursuant to a plea agreement, <u>United States v. Scroggins</u>, 880 F.2d 1204, 1211 (11th Cir. 1989) (applying prior version of Guidelines). But if the conduct does not bear on the manner in which the defendant committed the crime of conviction, the enhancements may not be used to punish crimes for which defendants were not convicted. <u>See</u> <u>United States v. Faust</u>, 456 F.3d 1342, 1347 (11th Cir. 2006) (quoting <u>Watts</u>, 519 U.S. at 154).

Each of Defendant's objections to the proposed enhancements for relevant conduct is addressed separately.

*A. Defendant's objection to increase* under *USSG § 2G1.3(b)(4)(A)*

Defendant objects to the scoring of two additional points under USSG § 2G1.3(b)(4)(A) for his sexual battery of Glascock's daughter. This Guidelines provision instructs that if "the offense involved the commission of a sex act or sexual contact" the Guidelines score should be increased by two levels. The basis of Defendant's objection is that his sexual contact with Glascock's child in September 2013 was not involved in his

---

Government also does not assert that Defendant's conduct constitutes "jointly undertaken criminal activity" to which § 1B1.3(a)(1)(B) applies.

crime of Attempted Enticement in November 2013. That sexual contact, he argues, should not be scored because it was the basis for Count One, which the Government agreed be dismissed. In response, the Government argues that the sexual acts with the child constitute conduct relevant to the attempted enticement charge because the conduct occurred in preparation of and during the commission of the attempted enticement.

The Government provides no evidence in support of its argument that the sexual abuse was done in preparation of the attempted enticement, and I cannot make such a connection. But the Government's argument that the sexual conduct occurred during the commission of the enticement offense presents a more difficult question. The phrase "during the commission of" connotes simultaneous temporal conduct. See United States v. Dunlap, 279 F.3d 965, 966 (11th Cir. 2002) ("Under any ordinary interpretation of the word 'during,' if [defendant] possessed the sadistic images when he (in May 1998) transmitted the child pornography, then the possession is 'relevant conduct.'"); USSG § 1B1.3 cmt. background ¶ 3 (distinguishing relevant conduct under § 1B1.3(a)(1) & (a)(2) ("On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would not be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)")); see also United States v. Davis, 453 F. App'x 452, 462 (5th Cir. 2011) ("[A]lleged misconduct with [victim] did not occur during . . . offense of conviction, as it was alleged to have happened on and before February 22, 2005, while . . . charged conduct with [another victim] occurred from on or about June 1, 2006 to September 22, 2006."); United States v. Batchu, 724 F.3d 1, 10 (1st Cir. 2013) ("[F]or the district court to

enhance Batchu's sentence based on the video of Victim C, the video must have been made 'during' his relationship with Minor A [which was the basis for his conviction].").

I found no reported case with facts identical to those in this case. But in United States v. Weiner, 518 F. App'x 358 (6th Cir. 2013), the Sixth Circuit determined that the defendant's prior sexual contact with three minor victims was not relevant conduct in calculating his Guideline score for attempted enticement of a minor. The court reasoned that the prior conduct did not occur during the commission of the conviction offense and "was not contemporaneous with the use of the computer as asserted in the Information." Id. at 365. Obviously, the case at bar is different. Here, the victim of the abuse in September was also the intended victim of Defendant's crime of Attempted Enticement in November. Also, Defendant continued his discussions regarding further abuse of the victim until he was arrested. These facts result in greater connectivity between the offenses, but it does not bring the earlier conduct within the definition of "relevant conduct" under § 1B1.3(a) and § 2G1.3(b)(4)(A), because that conduct did not take place during the commission of Count Two.

Accordingly, the two-level enhancement for "commission of a sex act or sexual contact" should not be applied to Defendant's Guideline score because his sexual conduct on September 10, 2013 is not "relevant conduct," and Defendant's objection to the two-level increase in his proposed Guidelines score is sustained.

B. *Defendant's related objection under Rule 403, Federal Rules of Evidence*

Defendant offers another basis to exclude evidence of Defendant's September 2013 abuse of Glascock's three-year-old daughter. He suggests that consideration of this evidence in crafting a sentence for the crime of conviction would violate Rule 403, Federal

Rules of Evidence.  The rule states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  To the extent the motion seeks to avoid the two-level enhancement under § 2G1.3(b)(4)(A) for Defendant's sexual abuse of the child in September, Defendant's objection is denied as moot.

Rule 403, like most of the Federal Rules of Evidence, does not apply in sentencing proceedings.  See Fed. R. Evid. 1101(d)(3).  On this basis alone Defendant's objection is due to be overruled. However, even if Rule 403 did apply at sentencing it would not bar the evidence at issue here.

Certainly, Defendant's prior treatment of the child has bearing on § 3553 sentencing factors described in the statute.  Most obviously, the conduct is relevant to subsection (1) of the statute—assessment of the nature and circumstances of the offense and the history and characteristics of Defendant.  Facts pertaining to Defendant's abuse of the child with the assistance of the child's father are relevant to the seriousness of the intent of Defendant in attempting to carry out the enticement.  Additionally, those facts explain the context of communications between Defendant and Glascock as well as later conversations between Defendant and the undercover agent posing as Glascock.  Defendant's conduct and statements made leading up to and directly following his abuse of the child are also relevant in determining the punishment required to meet the purposes of sentencing in subsection (2) of the statute.

Of course, the above statutory considerations are essential in determining the need for the sentence imposed.  In making that determination, subsection (2) of the statute mandates that the court consider what is necessary to afford adequate deterrence to

9

criminal conduct and to protect the public from further crimes.  Accordingly, I will consider Defendant's sexual abuse of the child in analyzing the § 3553 factors.  I will also consider the abuse of the child in determining the applicability of USSG § 4B1.5(b) because that conduct is probative in determining whether Defendant engaged in a pattern of activity involving prohibited sexual conduct.

      *C. Defendant's objection to increase under USSG § 2G1.3(b)(5)*

      Defendant also objects to an eight-level enhancement under USSG § 2G1.3(b)(5), which applies if the offense involves a minor who has not attained the age of 12.  This provision does not depend on the allegations contained in Count One, as Defendant suggests.  Indeed, it applies to the facts constituting Defendant's crime of conviction.  "Minor," as defined in the commentary, includes "an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct."  USSG § 2G1.3 cmt. n.1.  The actual three-year-old victim discussed by the law enforcement agent fits within the definition of "minor" in § 2G1.3.  Because the intended victim—a real child—was under 12 years old, Defendant's communications with an undercover agent "involved a minor who had not attained the age of 12 years."  Accordingly, the eight-level enhancement can be applied to Defendant's offense of conviction.  United States v. Carver, 348 F. App'x 449, 451-52 (11th Cir. 2009) (per curiam) (holding that the enhancement applies in a similar situation involving a fictitious eleven-year-old victim).

      Defendant's objection to the eight-level enhancement under USSG § 2G1.3(b)(5) is overruled.

### D. Defendant's objection to increase under USSG § 2G1.3(b)(3)(B)

Defendant argues that the two-point increase for use of a computer or computer system constitutes double counting because the crime of conviction—attempted enticement of a child under 18 U.S.C. § 2422(b)—includes an interstate component as an element of the offense. Indeed, the statute requires the use of "mail or any facility or means of interstate or foreign commerce." But it is entirely possible for this requirement to be met without the use of a computer.

This objection is without merit, and it is overruled.

### IV. Government's Objection to Proposed Guidelines Score and its Proposed § 4B1.5(b) Enhancement

Earlier in the sentencing hearing, the Government for the first time raised an objection to the Probation Office's proposed Guidelines calculation, contending that USSG § 4B1.5(b), Repeat and Dangerous Sex Offender Against Minors, applies to Defendant's Guidelines sentence. The Government then filed a memorandum in support of its position. (Doc. 93). Under this provision, an additional five levels are added to the Total Offense Level "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b). Defendant filed his written argument in opposition to enhancement (Doc. 94) on the ground that his conduct did not involve a "pattern of activity" because Defendant only engaged in prohibited sexual conduct with a minor on one occasion.

The first two requirements of § 4B1.5(b) are not at issue. An offense against a minor under chapter 117 of title 18, United States Code is a covered sex crime. Defendant's crime of conviction—attempted enticement of a minor in violation of 18 U.S.C. 2422(b)—is

11

included in chapter 117 and thus is a covered sex crime. Also, neither § 4B1.1 nor § 4B1.5(a) applies. The only question requiring discussion is whether the third requirement of § 4B1.5(b)—that "defendant engaged in a pattern of activity involving prohibited sexual conduct"—is present in this case.

"Prohibited sexual conduct" under this subsection includes "any offense described in 18 U.S.C. [§] 2426(b)(1)(A) or (B)," which includes offenses in chapter 117[4] such as § 2422(b), the statute Defendant was charged with violating in Counts One and Two. See USSG § 4B1.5 cmt. n.4(A); 18 U.S.C. § 2426(b)(1)(A). Prohibited sexual conduct encompasses uncharged conduct. United States v. Castleberry, 594 F. App'x 612, 613 (11th Cir. 2015) (per curiam). Defendant's admitted conduct pertaining to Counts One and Two—including the actual enticement and the subsequent attempted enticement of the child—constitutes prohibited sexual conduct. Additionally, the Internet conversations with Glascock and an undercover agent between September 11, 2013, and November 4, 2013, in which Defendant further sought to abuse Glascock's daughter constitute separate instances of prohibited sexual conduct as attempted enticement under 18 U.S.C. § 2422(b). See United States v. Rothenberg, 610 F.3d 621 (11th Cir. 2010); Castleberry, 594 F. App'x 612.

---

[4] At the sentencing hearing, Defendant argued that offenses under chapter 117 were not covered within the meaning of "prohibited sexual conduct." However, § 2426(b)(1)(A) includes offenses "under this chapter." Section 2426 is located within chapter 117, so I find that conduct within chapter 117 is prohibited conduct under § 4B1.5. Moreover, even if Defendant's argument on this issue had merit, Defendant's conduct would qualify as "prohibited sexual conduct" because it would constitute offenses under Florida state law—namely, sexual battery and child abuse—that would be an offense under chapter 109A if the conduct occurred within the territorial jurisdiction of the United States. See 18 U.S.C. §§ 2426(b)(1) & 2241.

The only question, then, is whether Defendant's conduct constitutes a *pattern of activity*. On this issue, the Guidelines provide:

(B)   Determination of Pattern of Activity.—

(i)   In General.—For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

(ii)   Occasion of Prohibited Sexual Conduct.—An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG § 4B1.5 cmt. n.4(B).

Defendant's conduct clearly fits within this definition. By comparison, just one additional prohibited Internet chat with a minor, when added to the offense of conviction, can constitute a pattern of activity. Rothenberg, 610 F.3d at 625 n.5; Castleberry, 594 F. App'x at 613. Here, Defendant engaged in many instances that constitute a pattern of activity—his September 2013 abuse of the child and his multiple instances of attempted and successful enticement of the child. Accordingly, the Government's objection is sustained. Defendant engaged in a pattern of activity involving prohibited sexual conduct, and the five-level adjustment shall be applied.

**V. Final Guidelines Score**

Based on the findings above, I find that Defendant's Total Offense Level under the Guidelines is 40 and that he falls within Criminal History Category I. This score produces an advisory Guidelines range of 292-365 months in prison.

**VI. Statutory Sentencing Factors**

13

It is the duty of a sentencing court to impose a sentence that is sufficient but not greater than necessary to meet the statutory purposes of sentencing.  In meeting that mandate a court must consider the advisory Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a)(1)-(7).  In determining a reasonable sentence in this case I have considered all factors contained in the statute, including the following:

### A.   18 U.S.C. § 3553(a)(1)—Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh against a lenient sentence. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . . ." United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009).  The victims of these crimes are the most vulnerable members of our society, and civilization is measured to some degree on how well it protects its young from those who would abuse them.  The harm from these types of crimes is long-lasting; children who are sexually abused will often have difficulty maintaining normal relationships in the future.

The statute under which Defendant was convicted protects children under the age of 18, and USSG § 2G1.3(b)(5) assesses additional Guidelines Offense Levels if the victim of the crime is under 12.  In considering the nature of Defendant's crime, it is appropriate to consider the fact that his victim was only three years old; this weighs against a lenient sentence.  Also bearing on the nature and circumstances of this case are the graphic descriptions of abuse the Defendant intended to inflict as well as his resolve in carrying out this type of abuse, as evidenced by his previous abuse of the child victim, his continuous efforts to schedule another opportunity for future abuse, and his preparation to again abuse the child by stopping to get "lube" on his way to Glascock's house.  But for the intervention of law enforcement, Defendant most certainly would have sexually abused the child again.

14

B.   *18 U.S.C. § 3553(a)(1)—The History and Characteristics of Defendant*

Other than the crimes that bring Defendant before the Court, there is nothing remarkable about Defendant's history. His childhood was free from abuse, and though he came from a broken home, he had a good relationship with relatives. (Presentence Investigation Report, Doc. 82, ¶ 52). Defendant generally enjoys good physical health, although he was discharged from the United States Marine Corps due to sleep problems. (Id. ¶¶ 55-56). He withdrew from high school to join the Marines, but he obtained his high school diploma and attended college. (Id. ¶¶ 58-59). It is obvious to me that Defendant is intelligent.

The most specific facts available bearing on characteristics of Defendant are contained in his discussions about his abuse and intended abuse of the child victim in this case. Although his conversations with Glascock and the undercover agent are repugnant, they do reflect on Defendant's character. Indeed, rarely is insight into any defendant's character so readily available. Defendant's many statements include the following:

- Before Defendant's abuse of Glascock's daughter:
  - "In my fantasy I'd sit on the couch with a girl on my lap and slide my fingers into her little panties and finger her clit while we watched cartoons. Then I'd undress her once she was wet and wiggling her hips and sit with my cock between her thighs and rub it up and down her little cunt while she held the tip. Then when the cartoon was done I'd take her to the bedroom to play. I'd have her lick and suck on the tip while she laid on my chest and I played with her tight little butt. I'd use a whole bunch of lube and play with her ass until she was loose enough to slip my pinky inside. Then

I'd finger her while she held my cock and played with it. Want to hear more? Tell me what new stuff you've [sic] with her in your fantasies and I'll go on." (Plea Agreement at 19).

o "After fingering her for long enough to get her nice and loose. I'd add another finger and keep going while she laid on my stomach, panting, and squirming. Then when she couldn't take it anymore, I'd lay her on her back and slide the head of my cock up and down her little cunt, getting it all wet and slippery with pre cum. I'd push the head tight against her little cunt and shoot it inside her, filling her up. . . . you thinking of taking another shot at getting together?" (Id. at 19).

- After the abuse of Glascock's daughter:

o "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things." (Id. at 21).

o "[Y]ou may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions . . . ." (Id.).

- Regarding plans to further abuse Glascock's daughter:

o "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me? (Id. at 22).

o "I'd love to pop her cherry and put fingers in both her holes before filling her little cunt with cum :) . . . . I'd like to come at about 10:30 or 11, that way we have plenty of time to play with your daughter and fill her holes

up with fingers and cum ;) . . . . I'm looking forward to seeing how far we can stretch her out and how much cum we can put in her ;)  (Id. at 23-24).

o  "I can be there in about 45 minutes if you give the address again. And do I need to bring some lube, or do you have some?" (Id. at 24-25).

These statements reveal Defendant's appetite for cruelty; as soon as he had completed various forms of sexual battery on the child, he began planning for another session involving even more despicable conduct.

These statutory factors weigh against a lenient sentence.

C.  *18 U.S.C. § 3553(a)(6)—Need to Avoid Unwarranted Sentencing Disparity*

It is always a goal to avoid unwarranted sentencing disparity.  Some crimes, such as drug offenses and child pornography, are common, and it is therefore easy to assess how a sentence compares with others.  The crime of enticement is not as common as many other crimes, so there are not as many comparators.  And, in this case, there are unusually detailed facts of Defendant's crime and character.  At least two other individuals—Glascock and Osman—committed related offenses and were sentenced to lengthy sentences.  Considering their sentences, as well as others, there is no disparity in the sentence imposed here.

D.  *18 U.S.C. § 3553(a)(7)—Need to Provide Restitution to Victims*

It is not clear that restitution is an issue in this case.  To the extent it is, however, it is not a mitigating factor.

E.  *18 U.S.C. § 3553(a)(2)—The Need for the Sentence Imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Because of the seriousness of the offense, the need to promote respect for the law, and to provide a just sentence, a sentence of at least 365 months' incarceration is required. This sentence is also needed to deter Defendant and others from committing similar crimes. A long prison term also will serve to deter others who would consider engaging in such despicable conduct. It is clear from Defendant's acts and statements that the public— particularly its vulnerable children—requires protection that can only be provided by a lengthy term of imprisonment.[5]

## VII. Reasonable Sentence

After considering the § 3553 sentencing factors, I find that a sentence of 365 months of incarceration is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Defendant's sentence would be the same if I had sustained his objections to the proposed Guidelines score and I had overruled the Government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case.

**DONE** and **ORDERED** in Orlando, Florida on April _2 7_, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jonathan Tyler Prive

---

[5] I have also considered the other statutory factors specified in §§ 3553(a)(3), (4), and (5), including the Guidelines range.

# Crim. Doc. 114

1              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
2                   ORLANDO DIVISION

3
UNITED STATES OF AMERICA,      )
4                              )
          Plaintiff,           )        Case Number
5                              )
               v.              )    6:14-cr-33-Orl-28KRS
6                              )
JONATHAN TYLER PRIVE,          )
7                              )
          Defendant.           )
8    _____)

9

10

11                         Volume II

12      Transcript of the continuation of the sentencing

13           before the Honorable John Antoon II

14                April 22, 2015; 10:30 a.m.

15                    Orlando, Florida

16

17   Appearances:

18   Counsel for Plaintiff:  Andrew C. Searle

19
     Counsel for Defendant:  Daniel N. Brodersen
20

21
        Proceedings recorded by mechanical stenography,
22   transcript produced by computer.

23   _____

24           Diane Peede, RMR, CRR
          Federal Official Court Reporter
         401 West Central Boulevard, Suite 4600
25               Orlando, Florida  32801

1                     P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  This is the case of United

3       States of America versus Jonathan Tyler Prive, case number

4       6:14-cr-33.

5              Will counsel please state their appearances for the

6       record.

7              MR. SEARLE:  Good morning, Your Honor.  For the

8       United States, Andrew Searle.  Sitting with me is Task Force

9       Agent Michael Spadafora from H.S.I.

10             MR. BRODERSEN:  Good morning, Your Honor.  Daniel

11      Brodersen here on behalf of Jonathan Prive, who is seated to

12      my left.

13             THE COURT:  This is a continuation of a sentencing

14      hearing that began last week.  During the first part of that

15      hearing the government raised an objection to the scoring,

16      the proposed scoring of the probation office; and I gave the

17      government an opportunity to put their objection in writing

18      and gave the defendant an opportunity to respond to that.

19             Is there anything you wish to add?

20             MR. SEARLE:  No, Your Honor.  The government relies

21      on the Memorandum that we filed at document 93.  I think it

22      clearly sets forth our position as well as the authority that

23      supports the five-level enhancement that we're seeking.

24             MR. BRODERSEN:  Your Honor, if I may, the notice

25      that I filed was rather brief and it only indicated that it

1  was the defendant's position that the -- this was not a

2  pattern of activity involving prohibited sexual conduct in

3  this particular case because the -- I want to define what I

4  meant by that.  Even though this appears to fly in the face

5  of footnote three in the Castleberry case, if you read the

6  commentary to 4B1. -- 4B1.5(b), specifically application note

7  4(a)1, it indicates that a pattern -- a prohibited sexual

8  conduct means any of the following, and then it goes on to

9  describe offenses in 18, U.S.C., 2426(b)(1)(A) or (b)(1)(B).

10  The remainder does not apply.

11      I went to 2426(b)(1)(A) and (b)(1)(B), and the

12  enticement or attempted enticement or an offense under -- or

13  offense prosecuted under 18, U.S.C., 2422 does not fall

14  within that definition.  Those are chapter 117 for Title 18.

15  They're not crimes that fall under chapter 109(a), chapter

16  110 or Section 1591; and there's not, at least that I'm aware

17  of, a state law which prohibits that type of conduct that

18  could be prosecuted if it occurred within the special

19  maritime territorial jurisdiction of the United States.

20      So even though the court, the panel opinion, the

21  unpublished panel opinion in Castleberry at footnote three

22  indicates that prohibited sexual conduct includes a violation

23  of 2422, it's the defendant's position that the application

24  note is clear and that it does not include a violation of

25  2422, which is why we believe that this case does not involve

1    a pattern of activity involving prohibited sexual conduct and

2    the enhancement should not apply.

3              THE COURT:  You all don't believe in giving the

4    Court notice of your arguments, do you, on either side?

5              I wish you'd included that, Mr. Brodersen, in your

6    papers.

7              MR. BRODERSEN:  I apologize, Your Honor.

8              THE COURT:  Let me go back over what you just said.

9              MR. BRODERSEN:  Judge, you would start, I guess,

10   with application note 4A to the guideline at issue, 4B1.5.

11             THE COURT:  4A.

12             MR. BRODERSEN:  Your Honor, if it helps the Court,

13   I have copies of 2426 and 2422, which shows that it's a

14   chapter 117 crime, that I can provide to the Court.

15             THE COURT:  Give me one second, Mr. Brodersen.

16             Okay.  Let me see what you have.

17             Just so the record is clear as to why there's a

18   delay at this point, the objection that I received was to

19   what constitutes a pattern of activity.  So my focus was on

20   prohibited -- what constituted a pattern.  So let's see.

21             Any of the following.  This chapter.

22             Do you wish to respond, Mr. Searle?

23             MR. SEARLE:  Yes, Your Honor.  I believe that the

24   enhancement clearly applies.  Plain statutory construction of

25   2426(b)(1)(A) indicate -- and that particular statute is

1    found under chapter 117, and it specifically states under

2    this chapter as well as the other chapters, "Any offense

3    under this chapter," specifically referencing chapter 117.

4          So although it doesn't say chapter 117, it

5    specifically states, "This chapter," referring to the chapter

6    of the U.S. Code where that statute is found.

7          So I think based upon that, an offense under

8    chapter 117 would trigger the enhancement.

9          Further, as I indicated in my memo, under

10   subsection (b)(1)(B) of 2426, it indicates under state law

11   for any offense consisting of conduct that would have been an

12   offense under a chapter referred to in paragraph one, if the

13   conduct had occurred and in substance in federal

14   jurisdiction.

15         And as I indicated, some of the prior conduct, some

16   of the prohibited sexual conduct that triggers the

17   enhancement in this case is in fact aggravated sexual abuse

18   of a child, which would constitute a federal offense had it

19   occurred in federal jurisdiction.

20         So I think under both prongs, the prohibited sexual

21   conduct in this case triggers the enhancement.

22         THE COURT:  Since it's your -- I guess it's his

23   objection -- I'll give you the last word on it.

24         MR. BRODERSEN:  Your Honor, I don't have anything

25   to add to what I've previously stated.

1           THE COURT:  What do you say?  It says, "This

2      chapter."  "This chapter," and then it includes the other

3      chapters.  And even if it weren't covered by -- the conduct

4      was not covered by the federal law, which I think it is, it

5      would be covered under state law.

6           MR. BRODERSEN:  I understand what the Court's

7      saying.

8           THE COURT:  Now, earlier I addressed the 403

9      objection.  I think I said that it was moot because I had

10     sustained the objection regarding the -- whether the offense

11     was involved in the commission of the sex act or sexual

12     conduct, the two-level enhancement.

13          Really, the 403 objection is without merit because,

14     really, the evidence code doesn't apply.  And as I try to

15     explain in a written order, which will accompany the judgment

16     in this case, it has to be relevant with regard to

17     consideration of the 3553 factors.

18          Are there any other -- are there any other

19     outstanding objections?

20          MR. SEARLE:  None from the government, Your Honor.

21     Thank you.

22          MR. BRODERSEN:  Not that I'm aware of, Your Honor.

23          THE COURT:  Okay.  I will go in more detail in the

24     written order that I referred to just a moment ago, but the

25     defendant's objection to an increase under U.S.S.G.

1    Section 2G1.3(b)(4)(A) is sustained.  Basically, that conduct

2    did not occur during the commission of the offense of

3    conviction nor in preparation of it.

4           I understand that this is a bit of an unusual case

5    because the defendant's contact with the child, physical

6    contact, was on one specific date, but that the defendant

7    continued to talk with the child's father to try to arrange

8    another meeting until such time as the defendant was

9    arrested.

10          I should qualify that.  At some point Mr. Spadafora

11   had taken over and communicated in pretending to be the

12   defendant, but the defendant's conversation regarding future

13   abuse continued.  But nonetheless, that's how I view the

14   application of that particular guideline provision.

15          I've already spoken to the objection as to 403.

16   The defendant objects to the increase -- the eight-level

17   increase under U.S.S.G., Section 2G1.3(b)(5) regarding an

18   offense involving a minor who's not attained the age of

19   twelve.

20          Unfortunately, this child was only three.  I

21   understand the defense's argument that at some point the act

22   wasn't -- did not reach -- the planned act did not reach

23   fruition and that at some point Mr. Spadafora intervened and

24   there was no possibility at that point of the child being the

25   victim; but the enhancement does apply to fictitious victims

1   just as well.  So it does apply, not because of the original

2   battery that took place in September, but it applies to this

3   offense of enticement, the offense for which the defendant

4   has been convicted.

5           Then the objection with regard to the use of a

6   computer, the objection generally was that the crime required

7   some interstate component, but that interstate component

8   could be much broader than the use of a computer.  It could

9   be use of mail or interstate road transportation or any

10   variety of ways other than a computer.  So I find that that

11   objection is not well taken and it is overruled.

12           For reasons that we have just discussed, I find

13   that the government's objection to the proposed guideline

14   score is well taken and that Section 4B1.5(b) should apply,

15   and that results in a -- so that objection is sustained and

16   that results in a five-level enhancement.

17           Is that correct, Mr. Salce?

18           THE PROBATION OFFICER:  Yes, Your Honor.

19           THE COURT:  Mr. Salce, could you tell me then,

20   given those rulings, what the guideline score would be?

21           THE PROBATION OFFICER:  Yes, Your Honor.  The total

22   offense level would become offense level 40.  The

23   imprisonment range is 292 months to 365 months.  That impacts

24   the fine range as well, which becomes 25,000 to 250,000.

25           THE COURT:  The Court adopts the undisputed factual

1    statements and guideline applications contained in the

2    Presentence Report.

3              I've ruled on all the objections, and based on

4    those rulings and the findings that I have adopted, I

5    determine that the advisory guidelines are a total offense

6    level of 40, criminal history category I, 292 to 365 months

7    imprisonment, five years to life supervised release, no

8    restitution, a 25,000 to $250,000 fine, a $100 special

9    assessment.

10             Is the victim or anybody on behalf of the victim

11   present in the courtroom?

12             MR. SEARLE:  No, Your Honor.  The government will

13   be speaking on behalf of the victim.

14             THE COURT:  Do you know of any reason why the Court

15   should not now proceed with imposition of sentence?

16             MR. SEARLE:  None from the government, Your Honor.

17             MR. BRODERSEN:  No, Your Honor.

18             THE COURT:  Does the defendant wish to present any

19   information in mitigation?

20             MR. BRODERSEN:  No, sir.

21             THE COURT:  Mr. Prive, you have a right to be heard

22   at this time.  You're not required to speak; but if you wish

23   to, you may.  Do you wish to speak?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Okay.  Does the government wish to be

```
 1    heard?

 2              MR. SEARLE:  Yes, Your Honor.  Your Honor, the

 3    government is asking for a guideline sentence of 365 months

 4    in this case as well as a term of supervised release of life.

 5              Starting with the defendant's history and

 6    characteristics, after reviewing the Presentence

 7    Investigation Report, it appears as though the defendant does

 8    have an unremarkable history.  He does have some brief

 9    military service.  However, that ended in a medical

10    discharge.

11              It doesn't appear as though he's under any

12    medications or had any serious drug addictions or anything

13    that would present any kind of a potential mitigation for the

14    seriousness of the offense that he did commit.

15              It appears as though he's raised by a loving mother

16    and grandmother, and there is no history of sexual abuse as a

17    child.  And I think that's noteworthy, because in a lot of

18    these cases where we're dealing with an individual who

19    engaged in the sexual exploitation of a child, that is

20    something that is often pointed to as an explanation for why

21    the individual had an interest in child pornography or was

22    sexually attracted to children.  That does not appear to be

23    the case here.

24              So we're left with no explanation other than the

25    fact that this defendant sought -- derived some sexual
```

1   gratification from the horrific sexual abuse of a three-year-

2   old child, without any further explanation.

3           I would also point out to the Court that -- and I

4   reference this, to some extent, in my memorandum -- it does

5   appear as though the defendant may not be entitled to the

6   three-level downward adjustment for acceptance of

7   responsibility based on the procedural history and the

8   actions that he's engaged in since the date of his change of

9   plea.  And that procedural history is well-known to the

10  Court, so I won't elaborate on it in too much detail.

11          But he's filed motions to withdraw his plea.  He's

12  made accusations against prior counsel, which the Court had

13  an evidentiary hearing on and heard two different sides of

14  that issue and ultimately determined that the defendant's

15  arguments were unconvincing and not consistent with what his

16  lawyer testified to.

17          He's also raised legal issues and challenges that

18  are inapplicable to this particular case, and it became quite

19  apparent throughout the proceedings that he was simply trying

20  to delay this sentencing.

21          It also from his testimony at the evidentiary

22  hearing appeared as though he was quite calculating in

23  crafting arguments that he hoped would allow him to withdraw

24  his guilty plea and, my assumption is, to further delay the

25  proceedings.

1          Nonetheless, we are going to stick by what we

2    agreed to in our Plea Agreement and not withdraw acceptance

3    of responsibility.  We don't want to further delay this any

4    more, but I do think it's troubling from the government's

5    perspective that this individual did not necessarily behave

6    the way someone who's accepted responsibility would behave.

7          In terms of the nature and circumstances of the

8    offense, we are going to rely on the Sentencing Memorandum

9    that we submitted earlier in the case, which I believe is at

10   Document 51, as well as the memo that we submitted more

11   recently in support of the five-level enhancement in terms of

12   the facts of the case.

13         The defendant engaged in the sexual abuse of a

14   child and traveled back to that child's home so that he could

15   commit that abuse again.  He brought with him lubricant,

16   which the government has to assume he intended to use to

17   penetrate the child when he returned to that home.

18         The e-mails that he engaged in with the father of

19   the child are extremely graphic, and ultimately he admitted

20   that he sexually abused the child on a prior occasion.

21   Specifically -- and I apologize for the graphic nature of

22   this, but this is what happened in this case -- the defendant

23   rubbed his penis against the minor victim's vagina, placed

24   his penis in the child's mouth, touched the child's vagina

25   with his hand, and ejaculated on the child's stomach, and he

1    did all of this while the father of the child watched and

2    eventually participated in the sexual abuse of the child.

3            Following that incident, the defendant continued to

4    engage in e-mail correspondence with the father of the child

5    and specifically stated that he wished that he had more time

6    to sexually abuse the child, and told the father that he

7    wanted to sexually abuse the child again in the future and

8    try, quote, "some other things."

9            Ultimately, as the Court is aware, the father of

10   the child was eventually arrested by law enforcement and an

11   undercover agent, Agent Spadafora, eventually assumed the

12   online identity of the father and re-initiated communication

13   with the defendant, and the defendant immediately expressed

14   an interest in meeting and sexually abusing the child a

15   second time and eventually did travel back to the child's

16   home in Brevard County or in the area of the child's home in

17   Brevard County with lubricant.

18           He was eventually arrested and admitted to law

19   enforcement that he committed the prior sexual acts on the

20   child and that it was his intent to do so again.

21           Based on everything that we know about this case,

22   but for law enforcement, the defendant -- and I don't think

23   that this is an exaggeration at all -- the defendant would

24   have certainly sexually abused that child again.  This was

25   something that he was interested in doing and intended to do

1    again, and the only reason it didn't happen is because law

2    enforcement intervened.

3           In terms of deterrence, Your Honor, I think from a

4    specific deterrence standpoint, based on the defendant's

5    conduct in this particular case, I think the high-end

6    guideline sentence that we're asking for is appropriate and

7    would specifically deter him from engaging in this conduct,

8    especially when you consider the fact that this was not a

9    one-time situation.  He was actually trying to do this again

10   and would have done so had it not been for law enforcement.

11          And from a general deterrence standpoint, I think

12   the guideline sentence would send a message to other like-

13   minded individuals that sexually abusing vulnerable victims

14   is perhaps one of the most serious offenses that you can

15   commit in the United States; and if you do so, the

16   consequences will be dire.

17          Unfortunately, despite the efforts of law

18   enforcement, we continue to see these cases far too

19   frequently in this courthouse; and I think that the sentence

20   that the government is asking for is appropriate to help to

21   deter other individuals from continuing to engage in this

22   conduct.

23          Thank you, Your Honor.

24          THE COURT:  Sometimes sentencing proceedings get

25   out of proportion as a result of the arduous task of

1   correctly calculating guideline scores, parsing words and

2   phrases, and adding and subtracting points, and in the

3   process, losing sight of the significance of the crime

4   itself.  And perhaps that has happened in this case.

5           At one point the offense was referred to as

6   "horrific," and that is not an understatement.  The crime of

7   attempted enticement is the crime I refer to, but it is

8   viewed in light of the defendant's other conduct.

9           And my job is twofold:  One, to accurately

10  calculate the guideline sentence based on an arithmetical

11  grid.  The grid itself, of course, is simple; but arriving at

12  the numbers sometimes is complicated.  And it was in this

13  case.

14          But in the end, my job is to impose a reasonable

15  sentence and that is a sentence that is sufficient, but not

16  greater than necessary, to meet the mandated goals of

17  sentencing, mandated by Congress in 18, U.S.C., Section

18  3553(a)(1) through (7).

19          Some of those factors are more important than

20  others, depending on the case.  And, certainly, that is true

21  here.

22          The nature and circumstances of the offense in

23  subsection (a)(1) is most always important, and it is here.

24  The factor weighs against a lenient sentence for the

25  defendant.

1    "Child sex crimes are among the most egregious and

2    despicable of societal criminal offenses."  That's a quote

3    from the Eleventh Circuit.

4        The victims of these kinds of crimes are,

5    unfortunately, the most vulnerable members of our society.

6    And civilization, it seems, has to be measured, to some

7    extent, by its ability to protect its young from those who

8    would abuse them.

9        The harm to the children is long-lasting.  Anybody

10   who's worked in dependency court in the state system knows

11   that.  It's plainly evident.

12       A child who is abused the way the child in this

13   case was abused will have a very difficult time forming any

14   normal or long-lasting relationships with other people, not

15   to mention the humiliation that accompanies being associated

16   with that conduct, which in today's age of instant and

17   complete access to information is more likely than not to

18   happen.

19       Also, in considering the nature of the crime,

20   although the guidelines address abuse of children under

21   twelve, and that's been counted in the guideline score, the

22   fact that this child was a toddler, really referred to as a

23   "baby" by the father, certainly makes the crime more

24   egregious.

25       Also, aggravating the defendant's crime in this

1    case are his graphic descriptions of his intended abuse and

2    the obvious resolve he had in committing it again, as charged

3    in Count Two, evident by his continuous conversation

4    regarding scheduling another session with the child, his

5    previous abuse of the child, and he had made an effort to

6    stop and buy what he referred to as "lube" before setting off

7    to have another encounter with the child.

8         The government makes a good point that but for the

9    intervention of law enforcement, there is little doubt that

10   the child would have again been tortured by this defendant.

11        The second part of subsection (a)(1) deals with the

12   history and characteristics of the defendant.  And, really,

13   but for this case, there's nothing remarkable about the

14   defendant's past.  He did serve his country for a short time

15   in the United States Marines, but -- the United States Marine

16   Corps, but he had some sleep disorder and was eventually

17   discharged from the Marines.

18        He quit high school, as I recall, to join the

19   Marines, but eventually resumed his education and engaged in

20   taking college courses.

21        He's obviously intelligent.  That's plainly clear

22   from the Court's dealings with him during these proceedings.

23        He came from a family that -- a broken home, but a

24   home that seemed stable.  There was no indication that he had

25   been abused in the past.

1          But, really, the most specific facts available

2     bearing on the defendant's characteristics are contained in

3     the discussions about his abuse and intended abuse of the

4     child victim in this case with Mr. Glascock and with Mr.

5     Spadafora taking the role of Mr. Glascock.

6          These conversations are repugnant.  It's difficult

7     to say them, to repeat them.  It's difficult to write them

8     down.  I'm not going to utter them here today; but I will

9     tell you they're in my order, something I reluctantly do.

10          I think most people who are exposed to those kinds

11     of thoughts are repulsed by them, and that's certainly true

12     with me.  But I've included them because I do think that they

13     are the best way of considering the character of this

14     defendant.

15          The statements reveal an appetite for -- an unusual

16     appetite, an extraordinarily unusual appetite for cruelty,

17     just plain meanness, really.  He no sooner had completed

18     horrible abuse of this child when he began planning to do it

19     again.

20          I've considered also under 3553(a)(1) through (7)

21     the need to avoid unwarranted sentence disparity.

22          Fortunately, we don't see too many cases like this.

23     We see a lot of child pornography cases.  We've seen a few

24     enticement cases, but this case is part of a cluster of cases

25     that are loosely related to one another.  Mr. Glascock's,

1   less loosely.  He, of course, was a main actor in this case,

2   offering his own young child up for abuse.

3           So it's sometimes difficult to compare sentences to

4   check for disparity.  I detect none in anything I've done,

5   and I detect none in the guidelines.  And because the cases

6   are loosely related, I think it's worth considering.

7           The sentence received by Mr. Glascock, who had a

8   total offense level of 43 and fell in a criminal history

9   category I, he was sentenced to life in prison.

10          Mr. Ozman, who had no dealings with this defendant

11  but dealt with Mr. Glascock, also offering his infant up for

12  abuse, he received an offense level 43 with a criminal

13  history category III and he was sentenced to 720 months in

14  prison.

15          It's not clear to me now that restitution is an

16  issue.  I'll hear from the government as to that in a moment.

17  But to the extent that it is a factor, an issue, it's not a

18  factor with regard to what an appropriate term of

19  incarceration would be.

20          Of course, all of these factors are to be

21  considered in meeting the purposes of sentencing, and those

22  are to reflect the seriousness of the offense, to promote

23  respect for the law, and to provide just punishment, to avoid

24  adequate deterrence to criminal conduct, to protect the

25  public from crimes of the defendant, to provide the defendant

1    with needed educational, vocational, medical care, other

2    correctional treatment in the most effective manner.

3         I know of no treatment that the defendant needs;

4    but with regard to those other issues, because this is a

5    serious offense and there is a need to promote respect for

6    the law and provide a just sentence, a sentence of at least

7    365 months incarceration is required.

8         The sentence is needed to deter the defendant from

9    and others from committing similar crimes.  A long prison

10   term, hopefully, will serve to do that.

11        It's clear from the defendant's acts and statements

12   that the public, and particularly vulnerable children,

13   require protection from him.

14        Mr. Brodersen, would you accompany your client to

15   the lectern, please.

16        MR. BRODERSEN:  Yes, Your Honor.

17        THE COURT:  The Court has asked the defendant why

18   judgment should not now be pronounced; and after hearing

19   defendant's response, the Court finds no cause to the

20   contrary.

21        The defendant has waived his opportunity to be

22   heard at sentencing.  The government has made a statement on

23   its behalf through the Assistant United States Attorney.

24        I've reviewed the Presentence Report.  I've heard

25   about the defendant's character and his past, and I've

1    considered the advisory guidelines.

2           Pursuant to Title 18, United States Code, Sections

3    3551 and 3553, it's the judgment of the Court that the

4    defendant, Jonathan Prive, is hereby committed to the custody

5    of the Bureau of Prisons to be imprisoned for a term of 365

6    months.

7           Upon release from imprisonment, sir, you shall

8    serve a term of life on supervised release.  While on

9    supervised release, you shall comply with the standard

10   conditions adopted by the Court in the Middle District of

11   Florida.

12          In addition, you shall comply with the following

13   special conditions:  You shall participate in a mental health

14   program specializing in sexual offender treatment, and submit

15   to polygraph testing for treatment and monitoring purposes.

16   You shall follow the Probation Officer's instructions

17   regarding implementation of this directive.

18          Further, you shall contribute to the cost of such

19   treatment and polygraph examinations, not to exceed an amount

20   determined reasonable by the probation officer based on

21   ability to pay or availability of third-party payment and in

22   conformance with the Probation Office's sliding scale for

23   treatment services.

24          You shall register with the state sexual offender

25   registration agency in any state where you reside, visit, are

1    employed, carry on a vocation or are a student, as directed

2    by the probation officer.

3          The probation officer shall provide state officials

4    with all information required under Florida Sexual Predator

5    and Sexual Offender Notification and Registration Statutes in

6    Florida -- that's 943.0435 -- and Sexual Offender

7    Registration Notification Act, Title I of the Adam Walsh

8    Child Protection Safety Act of 2006, Public Law 109-248, and

9    may direct you to report to these agencies personally for

10   required additional processing, such as a photographing,

11   fingerprinting and D.N.A. collection.

12         You will have no contact with any minors, that is,

13   people under the age of 18 without written approval of your

14   probation officer; and you shall refrain from entering into

15   any areas where children frequently congregate, including

16   schools, day-care centers, theme parks, playgrounds,

17   et cetera.

18         You are prohibited from possessing, subscribing to

19   or viewing any images, video magazines, literature or other

20   material depicting children in the nude and children in

21   sexually explicit positions.

22         You shall not possess or use a computer with access

23   to any online service at any location, including employment,

24   without written approval from the probation officer.  This

25   includes access through any Internet service provider,

1   bulletin board system or public or private computer network

2   system.

3        You shall permit routine inspection of your

4   computer system, hard drives and other media storage

5   materials to confirm adherence to this condition.  This

6   inspection shall be no more intrusive than is necessary to

7   ensure compliance with this condition.

8        You shall inform your employer or other third party

9   who may be impacted by this condition of this computer-

10  related restriction and the computer inspection provision of

11  the condition.

12        You shall submit to a search of your person,

13  residence, place of business, any storage units under your

14  control, computer or vehicle conducted by the United States

15  probation officer at a reasonable time and in a reasonable

16  manner based upon reasonable suspicion of contraband or

17  evidence of a violation of condition of release.

18        You shall inform any other residents that the

19  premises may be subject to a search pursuant to this

20  condition.  Failure to submit to a search may be grounds for

21  revocation.

22        You shall be prohibited from incurring new credit

23  charges, opening additional lines of credit or obligating

24  yourself for any major purchases without approval of the

25  probation officer.

1          You shall provide the probation officer access to

2     any requested financial information.

3          Having been convicted of a qualifying felony, you

4     shall cooperate in the collection of D.N.A. as directed by

5     the probation officer.

6          The mandatory drug testing requirements of the

7     Violent Crime Control Act are waived.  However, you are

8     ordered to submit to random drug testing, not to exceed 104

9     tests per year.

10          Based on your financial status, I waive imposition

11     of a fine.

12          Are there forfeiture matters to be considered?

13          MR. SEARLE:  No, Your Honor.

14          THE COURT:  You are ordered to pay the United

15     States a special assessment of $100, which is due

16     immediately.

17          After considering the advisory sentencing

18     guidelines and all the factors identified in Title 18, United

19     States Code, Sections 3553(a)(1) through (7), I find the

20     sentence imposed is sufficient, but not greater than

21     necessary, to comply with the statutory purposes of

22     sentencing.

23          The sentence would be the same if I had sustained

24     the objections of the defendant to the proposed guideline

25     score and if I had overruled the government's objection.  A

1   sentence of less than 365 months would not be reasonable

2   under the facts of this case, in my view.

3           The Court has accepted the Plea Agreement because

4   it's satisfied the agreement adequately reflects the

5   seriousness of actual offense behavior and that accepting the

6   Plea Agreement will not undermine the statutory purposes of

7   sentencing.

8           Under the Plea Agreement, the defendant has entered

9   a plea of guilty to Count Two in return for dismissal of

10  Count One.  In accordance with the Plea Agreement, it's

11  ordered that Count One of the Indictment be dismissed.

12          The Court having pronounced sentence, does counsel

13  for the defendant or counsel for the government have any

14  objections to the sentence or the manner in which the Court

15  pronounced sentence other than those previously stated for

16  the record?

17          MR. SEARLE:  None from the government, Your Honor.

18  Thank you.

19          MR. BRODERSEN:  None other than those previously

20  stated, Your Honor.

21          THE COURT:  Mr. Prive, you are hereby remanded to

22  the custody of the United States Marshal to await designation

23  by the Bureau of Prisons.

24          To the extent permitted by your Plea Agreement, you

25  have the right to appeal from this sentence within 14 days

1    from this date.  Failure to appeal within the 14-day period

2    shall be a waiver of your right to appeal.

3            The government may file an appeal.

4            You are also advised that you are entitled to the

5    assistance of counsel in taking an appeal; and if you're

6    unable to afford a lawyer, one will be provided for you.

7            If you're unable to afford the filing fee, the

8    clerk of court will be directed to accept notice of appeal

9    without such fee.

10           Do you understand everything that's happened, sir?

11           THE DEFENDANT:  Yes.

12           THE COURT:  The Court is in recess until 1:30.

13           MR. BRODERSEN:  Thank you, Your Honor.

14           (Proceedings concluded at 11:10 a.m.)

15                     - - - - - - - -

16               Reporter's Certification

17   I certify that the foregoing is a correct transcript from the

18   record of proceedings in the above-entitled matter.

19                            s/Diane Peede, RMR, CRR
                             Official Court Reporter
20                           United States District Court
     Date:  June 24, 2015    Middle District of Florida

21

22

23

24

25

Crim. Doc. 127

Case 6:14-cr-00033-JA-KRS  Document 127  Filed 08/01/17  Page 1 of 8 PageID 647
USCA11 Case: 18-11693    Document: 19    Date Filed: 11/28/2018    Page: 95 of 241

1/6

IN THE UNITED STATES FILED

DISTRICT COURT FOR THE

MIDDLE DISTRICT OF FLORIDA - 1 PM 2:33

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA                        CASE No.:

V.                                              6:14-cr-00033-JA-KRS-1-

JONATHAN TYLER PRIVE


## MOTION FOR DISQUALIFICATION OF JUDGE


Comes now the Defendant, Jonathan Prive, pro se, with a motion to disqualify Judge John Antoon, II, pursuant to 28 U.S.C. §144, and to prevent him from proceeding further in this case. The Defendant believes that Judge Antoon has a personal bias or prejudice against him and/or in favor of The United States. The Defendant intends to file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, and he fears that his motion will not receive fair treatment if Judge Antoon is allowed to proceed in this case.

• In support of his reasonable belief that such bias or prejudice exists, the Defendant offers the following material facts:

1) Judge John Antoon, II, was the sentencing judge in the District Court case, and is expected to hear the Defendant's 28 U.S.C. §2255 motion.

2) The Defendant intends to submit as grounds for his motion that he did not receive fair and unbiased treatment from Judge Antoon in District court, and that Judge Antoon committed an abuse of

discretion by preventing the defense from addressing the four factors to be considered during a proper Buckles inquiry, at an evidentiary hearing on the Defendant's motion to withdraw plea, on January 22nd, 2015.

3) During the evidentiary hearing on the Defendant's verified motion to withdraw plea of guilty, Judge Antoon disregarded well-established procedure in the Eleventh Circuit, pursuant to U.S. v. Buckles, 843 F.2d 469, and ruled that counsel for the defense was limited to questioning Defendant's former attorney as to whether or not the plea was knowingly and voluntarily entered, thereby preventing defense counsel from raising any questions into the alleged lack of close assistance of counsel, after an objection was made by the United States. This ruling in favor of the United States, over objections by the defense, was contrary to established procedure and prevented the defense from raising the issue of close assistance of counsel or using those questions in order to impeach the witness' testimony. (See transcript of evidentiary hearing, Jan. 22nd, 2015, page 72, lines 3-25, and page 73, lines 1-3)

4) Judge Antoon heard the Defendant's pro se motion to vacate sentence and terminate proceedings due to a jurisdictional defect in the original indictment, pursuant to Fed.R.Crim.P. 12(b)(3)(B), (Doc. 90), at a sentencing hearing on April 15th, 2015. The Defendant properly charged that the statute 18 U.S.C. §2422(b) was unconstitutional, thereby causing a jurisdictional defect, and alleged that inter alia, it was not a valid exercise of Congress's power to regulate any instrumentalities or channels of commerce, but instead sought to regulate a non-economic intrastate activity by using the far more ambiguous jurisdictional element "using... any facility or means of interstate or foreign commerce...", which was beyond Congress's

3/6

Case 6:14-cr-00033-JA-KRS   Document 127   Filed 08/01/17   Page 3 of 8 PageID 649
USCA11 Case: 18-11693   Document: 19   Date Filed: 11/28/2018   Page: 97 of 241

ability to regulate. This raised issues of colorable legal merit and pure law.

Judge Antoon thereafter ruled that the motion was meritless, and therefore denied (Docs 89 and 120, page 9, lines 11-13). He then immediately proceeded with sentencing, where Andrew Searle, on behalf of the United States argued for a sentencing enhancement for use of a computer. He argued that 18 U.S.C. 2422 (b) does not require the use of the computer or Internet, and that "It just so happens to be in this case particular case that that was the actual instrumentality of interstate commerce that the defendant elected to use..." (id. page 13, lines 2-13), which was the same ground put forth in the Defendant's 12(b)(3)(B) motion. Judge Antoon then agreed with the argument (id page 14, lines 4-7) and imposed the sentencing enhancement, and he supported the same argument again during the continuation of sentencing on April 22nd, 2015, saying: "... the objection generally was that the crime required some interstate component, but that interstate component could be much broader than the use of a computer. It could be use of mail or interstate road transportation or any variety of ways other than a computer..." (Docs 95 and 114, page 8, lines 6-10).

In so doing, Judge Antoon ruled that the same ground upon which the Defendant's 12(b)(3)(B) motion was made was meritorious and correct when the United States sought to use it for a sentencing enhancement, but not for the Defendant, demonstrating bias and a propensity to favor the United States.

5) Judge Antoon repeatedly referred to the conduct that formed the basis for count one of the original indictment using phrases like "... considering the defendant's rape of the child..." (Docs 98 and 120, page 14, lines 23-24), "... little doubt that the child would have again been tortured by this defendant." (Docs 95 and 114, page 17, lines 9-10), and he claimed that the defendant showed "... an extraordinarily unusual appetite for cruelty,

just plain meanness, really." (Docs 95 and 114, page 18, lines 15 to 17). All of this was said when there was never any factual basis, or even bare assertion by investigators, to support any claim that the minor in this case had ever been 'raped' by anyone, much less the Defendant. Nor was there any indication that the minor was ever physically or psychologically harmed, much less tortured. The record and reports from investigators are likewise devoid of anything that suggests that the Defendant ever showed any tendancies toward cruelty, much less the "extraordinarily unusual appetite for cruelty" or "just plain meanness" claimed by Judge Antoon. These are personal assertions by Judge Antoon that show an antagonistic bias against the Defendant, as well as a willingness to go beyond the facts of the case and create things out of whole cloth to suit his personal view of the Defendant.

6) Immediately after making the statements detailed above, Judge Antoon sentenced the Defendant to 365 months in prison, to be followed by lifetime probation, without credit for time served, and he said "The sentence would have been the same if I had sustained the objections of the defendant to the proposed guideline score and overruled the government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case, in my opinion view." (Docs 95 and 114, page 24, lines 23-25, and page 25, lines 1-2). This statement reveals that the Judge had already decided on a punishment prior to the sentencing, and at all times intended to impose it, even when doing so would have violated the plea agreement he signed to give the Defendant a guideline sentence.

7) Judge Antoon made a series of false claims about the factual background of this case in his sentencing memorandum (Doc. 100). He claims that the Defendant met the minor's father, Michael Glasscock, online "as they pursued their mutual interest in sexually abusing young

Case 6:14-cr-00033-JA-KRS   Document 127   Filed 08/01/17   Page 5 of 8 PageID 651
USCA11 Case: 18-11693     Document: 19     Date Filed: 11/28/2018     Page: 99 of 241

5/6

children... In email conversations, Glasscock described to the Defendant in detail how he sexually abused his three year old daughter... Defendant liked what he read and expressed his desire to also sexually abuse the child. The men then entered into a plan to fulfill the Defendant's wish... On September 10, 2013, that plan was executed;" (Doc. 100, pages 1-2, internal citations omitted).

This personal narrative not only grossly mischaracterizes the events and the Defendant himself, but it is also unsupported by the record at large, and specifically rebutted by it. At no point did the evidence show that the Defendant met Michael Glasscock while persuing an interest in abusing children, and the plea agreement prepared by the U.S. Attorney's Office specifically says otherwise (Doc 27, pg. 26). There is also no record of the Defendant liking what he read, expressing his desire to also abuse the child, or then entering "into a plan to fulfill the Defendant's wish". This is specifically rebutted by the record (see Doc. 27, page 20). At best, the record shows that Michael Glasscock told the Defendant that he was home alone without his children, and thereafter convinced the Defendant to visit him under that understanding.

Judge Antoon then continues to claim that: "Eventually, the men agreed to meet on October 11, 2013, but the plan failed because the Defendant could not get to Glasscock's house at a time Glasscock's wife was out." This is also false, and rebutted by Doc. 27, page 22. The documented conversation only shows Glasscock attempted to set up a meeting, but was informed it would be impossible.

Finally, Judge Antoon makes an entirely new claim out of whole cloth in regard to the events of November 5th, 2013. He claims that on the day when the defendant was arrested he stopped "to get lube" on his

way to Glasscock's residence. This is an outright fabrication, found on page 14 of Judge Antoon's memorandum (Doc. 100), and it is rebutted by the reports of both agents of the Department of Homeland Security and by those from the Brevard County Sheriff's Office.

Such a narrative as this clearly demonstrates a personal bias, and a willingness to not only demonize the Defendant, but to invent a version of facts and events wholly removed from reality.

In light of these facts, any reasonably prudent person would have a well-founded fear that he would not receive fair treatment from Judge Antoon. The Defendant believes that the Judge's actions, as set forth herein, represent a pattern of prejudice and bias against him, and fears that if the Judge continues in this case he will not be impartial or fairly apply the rules of law to the Defendant's future proceedings.

WHEREFORE, the Defendant respectfully requests that the Court enter an ORDER disqualifying Judge John Antoon, II, from proceeding further in this case, and appointing another judge to hear the Defendant's future motions and conduct future proceedings, pursuant to 28 U.S.C. §144.

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

CERTIFICATE OF GOOD FAITH

AND DECLARATION UNDER

PENALTY OF PERJURY


I, Jonathan Prive, acting pro se, do hereby certify that the foregoing MOTION FOR DISQUALIFICATION OF JUDGE is being made in good faith, and not to cause any undue delay, prejudice, added burden, costly expendatures of resources, or to interfere with the orderly administration of justice.

I, Jonathan Prive, do hereby swear, under penalty of perjury, that the foregoing statement of good faith and the MOTION FOR DISQUALIFICATION OF JUDGE are true and correct to the best of my knowledge and understanding.

Executed on this, the 24th day of July, 2017.

Signed: _____

Jonathan T. Prive


Respectfully submitted,

Jonathan Prive

#337795

Brevard County Jail

860 Camp Road

Cocoa, FL 32927

CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify, under penalty of perjury, that a true and correct copy of the foregoing MOTION FOR DISQUALIFICATION OF JUDGE, and the accompanying CERTIFICATE OF GOOD FAITH AND DECLARATION UNDER PENALTY OF PERJURY, are being placed in the Brevard County Jail Complex's internal mail system, marked "LEGAL MAIL", to be sent out by jail personnel, on this, the 29th day of July, 2017, to the following persons and addresses:

1) United States District Court
   Office of the Clerk
   United States Courthouse
   401 W. Central Blvd., Suite 1200
   Orlando, FL 32801

and

2) The Office of the United
   States Attorney
   400 W. Washington Street
   Suite 3100
   Orlando, FL 32801

Signed: _____  Date: 7-29-2017
        Jonathan T. Prive

Crim. Doc. 130

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

v.                                  Case No: 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE,

            Defendant.

_____/

### ORDER

This cause is before the Court on Defendant's Motion for Official Recognition of Impediment to Filing (Doc. 126) and Motion for Disqualification of Judge (Doc. 127). Upon consideration, it is **ORDERED** as follows:

1.      Defendant's Motion for Official Recognition of Impediment to Filing (Doc. 126) is **STRICKEN** and will not be considered by the Court. Defendant failed to include a proper certificate of service as required by Federal Rule of Criminal Procedure 49. The Clerk of the Court is directed terminate the motion, remove the pleading from the record, and return it to Defendant.

2.      Defendant's Motion for Disqualification of Judge (Doc. 127) is **DENIED**. Defendant requests that the undersigned be "disqualified." (*Id.* at 1). Defendant identifies the following: an evidentiary ruling made by the undersigned during Defendant's motion to withdraw plea; the denial of Defendant's Motion to Terminate Proceedings

and Vacate Sentence; and statements made by the undersigned during Defendant's sentencing and in the Court's Memorandum Order. (*Id.* at 2-5).

Defendant brought this motion under 28 U.S.C. § 144. Section 144 provides that

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Thus, section 144 expressly conditions relief on the filing of a timely and legally sufficient affidavit. If the judge, who is the subject of the motion, determines that the affidavit specifically alleges facts stating grounds for recusal pursuant to section 144, the legal sufficiency of the affidavit is established, and the motion must be referred to another judge for a resolution on the merits.

Defendant has failed to comply with the procedural requirements of section 144. Along with the motion, Petitioner is required to file an affidavit and a certificate of counsel of record stating that it is made in good faith. Here, Petitioner's motion is unaccompanied by an affidavit, and it must be denied. *See Dae Eek Cho v. United States*, No. 16-12060, 2017 WL 1732042, at *6 (11th Cir. May 3, 2017) (noting that it was undisputed that the petitioner did not file an affidavit detailing her allegations of bias

2

against the district court judge, and, accordingly, the petitioner's § 144 claim failed as a

matter of law).

     **DONE** and **ORDERED** in Orlando, Florida on August 24, 2017.

                        JOHN ANTOON II
                   UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 8/23

3

Crim. Doc. 132

IN THE UNITED STATES
DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

2017 SEP -5  PM 2:34

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

V.

JONATHAN TYLER PRIVE ,

CASE NO.:

6:14-cr-00033-JA-KRS-1

## APPEAL FROM ORDER DENYING DEFENDANT'S MOTION FOR DISQUALIFICATION OF JUDGE FOR PLAIN ERROR

Comes now the Defendant, Jonathan Prive, pro se, with an appeal concerning the Court's ORDER denying his properly filed Motion For Disqualification of Judge (Doc. 130), filed August 24, 2017. The ORDER, on page 1, section 2., denied the motion (Doc. 127) made by the Defendant on the grounds that the Defendant failed to comply with the filing requirements of 28 U.S.C. §144 (page 2 of Doc. 130), to wit, that the Defendant failed to file an affidavit and the required certificate of good faith by the counsel of record. The absence of this certificate is claimed to support the denial of the motion, but this is plain error. The Defendant submitted seven (7) pages of documents with his filing of the Motion for Disqualification of Judge. These pages were numbered sequentially. The pages numbered one through six were the Motion for Disqualification of Judge. The seventh page submitted by the Defendant was titled

"CERTIFICATE OF GOOD FAITH AND DECLARATION UNDER PENALTY OF PERJURY," and was individually numbered as "1/1" in the upper right-hand corner, denoting page one of one. This page was included in the same envelope as the six pages of the Defendant's motion, satisfying that portion of 28 U.S.C. §144 which specifies that the affidavit "shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. §144. The Defendant has retained multiple copies of these seven pages, and attaches them to this motion as exhibit A (marked "Ex.-A" in upper left-hand corner of each page).

The Certificate of Good Faith, being properly submitted at the time of filing, and being legally sufficient to satisfy the requirements of 28 U.S.C. §144, did accompany the Defendant's Motion for Disqualification of Judge, and the denial of that motion based on a claim to the contrary is plain error.

Wherefore, having shown that the finding of the court, in its ORDER (Doc. 130), was plainly erroneous, and as it results in a fundamental miscarriage of justice, the Defendant respectfully requests that the Court VACATE its previous order in Doc. 130, section 2., denying the Motion for Disqualification of Judge, and thereafter GRANT the Defendant's original, legally sufficient Motion for Disqualification of Judge (Doc. 127).

Respectfully submitted,

Jonathan T. Prive
pro se litigant

## DECLARATION UNDER
## PENALTY OF PERJURY

I, Jonathan Prive, do hereby swear under penalty of perjury that the facts and statements contained in the foregoing "APPEAL FROM ORDER DENYING DEFENDANT'S MOTION FOR DISQUALIFICATION OF JUDGE FOR PLAIN ERROR" are true and correct to the best of my knowledge and understanding, and that the seven pages of additional documents submitted as "Exhibit A," and marked "Ex.-A" in the upper left-hand corners, are true and correct copies of the original documents submitted by the Defendant at the time of filing the MOTION FOR DISQUALIFICATION OF JUDGE (Doc. 127).

Executed on this, the 31st day of August, 2017.
Signed: [signature]
        Jonathan T. Prive
        pro se litigant

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby swear, under penalty of perjury, that I have on this, the 31st day of August, 2017, placed a true and correct copy of the foregoing APPEAL FROM ORDER DENYING DEFENDANT'S MOTION FOR DISQUALIFICATION OF JUDGE FOR PLAIN ERROR in the Brevard County Jail's internal mailing system, marked "LEGAL MAIL", to be sent to the following parties:

(1) The U.S. Attorney's Office
400 W. Washington Street
Suite 3100
Orlando, FL 32801

and:

(2) United States District Court
Office of the Clerk
United States Courthouse
401 W. Central Blvd., suite 1200
Orlando, FL 32801

Executed on this, the 31st day of August, 2017.
signed: Jonathan T. Prive
Jonathan T. Prive
pro se litigant

# IN THE UNITED STATES
# DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA                    CASE No.:

V.                                          6:14-cr-00033-JA-KRS-1

JONATHAN TYLER PRIVE

## MOTION FOR DISQUALIFICATION OF JUDGE

Comes now the Defendant, Jonathan Prive, pro se, with a motion to disqualify Judge John Antoon, II, pursuant to 28 U.S.C. §144, and to prevent him from proceeding further in this case. The Defendant believes that Judge Antoon has a personal bias or prejudice against him and/or in favor of the United States. The Defendant intends to file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, and he fears that his motion will not receive fair treatment if Judge Antoon is allowed to proceed in this case.

In support of his reasonable belief that such bias or prejudice exists, the Defendant offers the following material facts:

1) Judge John Antoon, II, was the sentencing judge in the District Court case, and is expected to hear the Defendant's 28 U.S.C. §2255 motion.

2) The Defendant intends to submit as grounds for his motion that he did not receive fair and unbiased treatment from Judge Antoon in District court, and that Judge Antoon committed an abuse of

discretion by preventing the defense from addressing the four factors to be considered during a proper *Buckles* inquiry, at an evidentiary hearing on the Defendant's motion to withdraw plea, on January 22nd, 2015.

3) During the evidentiary hearing on the Defendant's verified motion to withdraw plea of guilty, Judge Antoon disregarded well-established procedure in the Eleventh Circuit, pursuant to *U.S. v. Buckles*, 843 F.2d 469, and ruled that counsel for the defense was limited to questioning Defendant's former attorney as to whether or not the plea was knowingly and voluntarily entered, thereby preventing defense counsel from raising any questions into the alleged lack of close assistance of counsel, after an objection was made by the United States. This ruling in favor of the United States, over objections by the defense, was contrary to established procedure and prevented the defense from raising the issue of close assistance of counsel or using those questions in order to impeach the witness' testimony. (See transcript of evidentiary hearing, Jan. 22nd, 2015, page 72, lines 3-25, and page 73, lines 1-3)

4) Judge Antoon heard the Defendant's pro se motion to vacate sentence and terminate proceedings due to a jurisdictional defect in the original indictment, pursuant to Fed.R.Crim.P. 12(b)(3)(B), (Doc. 90) at a sentencing hearing on April 15th, 2015. The Defendant properly charged that the statute 18 U.S.C. §2422(b) was unconstitutional, thereby causing a jurisdictional defect, and alleged that, *inter alia*, it was not a valid exercise of Congress's power to regulate any instrumentalities or channels of commerce, but instead sought to regulate a non-economic intrastate activity by using the far more ambiguous jurisdictional element "using... any facility or means of interstate or foreign commerce...," which was beyond Congress's

ability to regulate. This raised issues of colorable legal merit and pure law.

Judge Antoon thereafter ruled that the motion was meritless, and therefore denied (Docs 89 and 120, page 9, lines 11-13). He then immediately proceeded with sentencing, where Andrew Searle, on behalf of the United States argued for a sentencing enhancement for use of a computer. He argued that 18 U.S.C. 2422(b) does not require the use of the computer or Internet, and that "It just so happens to be in this particular case that that was the actual instrumentality of interstate commerce that the defendant elected to use..." (id., page 13, lines 2-13), which was the same ground put forth in the Defendant's 12(b)(3)(B) motion. Judge Antoon then agreed with the argument (id page 14, lines 4-7) and imposed the sentencing enhancement, and he supported the same argument again during the continuation of sentencing on April 22nd, 2015, saying: "... the objection generally was that the crime required some interstate component, but that interstate component could be much broader than the use of a computer. It could be use of mail or interstate road transportation or any variety of ways other than a computer..." (Docs 95 and 114, page 8, lines 6-10).

In so doing, Judge Antoon ruled that the same ground upon which the Defendant's 12(b)(3)(B) motion was made was meritorious and correct when the United States sought to use it for a sentencing enhancement, but not for the Defendant, demonstrating bias and a propensity to favor the United States.

5) Judge Antoon repeatedly referred to the conduct that formed the basis for count one of the original indictment using phrases like "... considering the defendant's rape of the child..." (Docs 98 and 120, page 14, lines 23-24), "... little doubt that the child would have again been tortured by this defendant." (Docs 95 and 114, page 17, lines 9-10), and he claimed that the defendant showed "... an extraordinarily unusual appetite for cruelty,

just plain meanness, really." (Docs 95 and 114, page 18, lines 15 to 17). All of this was said when there was never any factual basis, or even bare assertion by investigators, to support any claim that the minor in this case had ever been 'raped' by anyone, much less the Defendant. Nor was there any indication that the minor was ever physically or psychologically harmed, much less tortured. The record and reports from investigators are like-wise devoid of anything that suggests that the Defendant ever showed any tendancies toward cruelty, much less the "extraordinarily unusual appetite for cruelty" or "just plain meanness" claimed by Judge Antoon. These are personal assertions by Judge Antoon that show an antagonistic bias against the Defendant, as well as a willingness to go beyond the facts of the case and create things out of whole cloth to suit his personal view of the Defendant.

6) Immediately after making the statements detailed above, Judge Antoon sentenced the Defendant to 365 months in prison, to be followed by lifetime probation, without credit for time served, and he said "The sentence would have been the same if I had sustained the objections of the defendant to the proposed guideline score and overruled the government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case, in my opinion view." (Doc's 95 and 114, page 24, lines 23-25, and page 25, lines 1-2). This statement reveals that the Judge had already decided on a punishment prior to the sentencing, and at all times intended to impose it, even when doing so would have violated the plea agreement he signed to give the Defendant a guideline sentence.

7) Judge Antoon made a series of false claims about the factual background of this case in his sentencing memorandum (Doc. 100). He claims that the Defendant met the minor's father, Michael Glasscock, online "as they pursued their mutual interest in sexually abusing young

children... In email conversations, Glasscock described to the Defendant in detail how he sexually abused his three year old daughter... Defendant liked what he read and expressed his desire to also sexually abuse the child. The men then entered into a plan to fulfill the Defendant's wish. On September 10, 2013, that plan was executed;" (Doc. 100, pages 1-2, internal citations omitted).

This personal narrative not only grossly mischaracterizes the events and the Defendant himself, but it is also unsupported by the record at large, and specifically rebutted by it. At no point did the evidence show that the Defendant met Michael Glasscock while persuing an interest in abusing children, and the plea agreement prepared by the U.S. Attorney's Office specifically says otherwise (Doc 27, pg. 26). There is also no record of the Defendant liking what he read, expressing his desire to also abuse the child, or then entering "into a plan to fulfill the Defendant's wish". This is specifically rebutted by the record (see Doc. 27, page 20). At best, the record shows that Michael Glasscock told the Defendant that he was home alone without his children, and thereafter convinced the Defendant to visit him under that understanding.

Judge Antoon then continues to claim that: "Eventually, the men agreed to meet on October 11, 2013, but the plan failed because the Defendant could not get to Glasscock's house at a time Glasscock's wife was out." This is also false, and rebutted by Doc. 27, page 22. The documented conversation only shows Glasscock attempted to set up a meeting, but was informed it would be impossible.

Finally, Judge Antoon makes an entirely new claim out of whole cloth in regard to the events of November 5th, 2013. He claims that on the day when the defendant was arrested he stopped "to get lube" on his

way to Glasscock's residence. This is an outright fabrication, found on page 14 of Judge Antoon's memorandum (Doc. 100), and it is rebutted by the reports of both agents of the Department of Homeland Security and by those from the Brevard County Sheriff's Office.

Such a narrative as this clearly demonstrates a personal bias and a willingness to not only demonize the Defendant, but to invent a version of facts and events wholly removed from reality.

In light of these facts, any reasonably prudent person would have a well-founded fear that he would not receive fair treatment from Judge Antoon. The Defendant believes that the Judge's actions, as set forth herein, represent a pattern of prejudice and bias against him, and fears that if the Judge continues in this case he will not be impartial or fairly apply the rules of law to the Defendant's future proceedings.

WHEREFORE, the Defendant respectfully requests that the Court enter an ORDER disqualifying Judge John Antoon, II, from proceeding further in this case, and appointing another judge to hear the Defendant's future motions and conduct future proceedings, pursuant to 28 U.S.C. §144.

Respectfully submitted,

Jonathan Prive

#337795

Brevard County Jail

860 Camp Road

Cocoa, FL 32927

## CERTIFICATE OF GOOD FAITH
## AND DECLARATION UNDER
## PENALTY OF PERJURY

I, Jonathan Prive, acting pro se, do hereby certify that the foregoing MOTION FOR DISQUALIFICATION OF JUDGE is being made in good faith, and not to cause any undue delay, prejudice, added burden, costly expendatures of resources, or to interfere with the orderly administration of justice.

I, Jonathan Prive, do hereby swear, under penalty of perjury, that the foregoing statement of good faith and the MOTION FOR DISQUALIFICATION OF JUDGE are true and correct to the best of my knowledge and understanding.

Executed on this, the 24th day of July, 2017.

Signed: Jonathan T. Prive

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

Crim. Doc. 133

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                Case No: 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE,

       Defendant.

_____/

## ORDER

    This cause is before the Court on Defendant's Appeal From Order Denying Defendant's Motion for Disqualification of Judge for Plain Error (Doc. 132).  The Court construes the pleading as a motion for rehearing from the Court's Order of August 24, 2017 (Doc. 130), which denied his Motion for Disqualification (Doc. 127).

    The Court denied the Motion for Disqualification because Defendant failed to comply with the procedural requirements of 28 U.S.C. § 144.  In particular, the Court found that Defendant failed to file an affidavit and a certificate of counsel of record stating that the motion was made in good faith.  Defendant contends that the Motion for Disqualification contained a Certificate of Good Faith, which was "legally sufficient to satisfy the requirements of 28 U.S.C. § 144." (Doc. 132 at 2).  The current motion contains a "Certificate of Good Faith" including Defendant's representation that the "Motion for Disqualification of Judge [is] true and correct to the best of my knowledge." (Ex. A to

Doc. 132). Under the circumstances, the Court finds that statement satisfies procedural requirements of § 144.

Defendant argues that disqualification is warranted based on the following:  an evidentiary ruling made by the undersigned at the hearing on Defendant's motion to withdraw his plea; the denial of Defendant's Motion to Terminate Proceedings and Vacate Sentence ("Motion to Terminate"); and statements made by the Court during Defendant's sentencing and in the Court's Memorandum Order.  (Doc. 127 at 2-5).

28 U.S.C. § 455(a), which substantively overlaps with § 144, provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  It is further set forth that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  Any doubt "must be resolved in favor of recusal." *See Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001).

Here, Defendant argues that this bias against him was revealed by the Court's evidentiary ruling made at the hearing on the motion to withdraw his plea and by the Court's denial of the Motion to Terminate, which was addressed at the sentencing hearing.  However, adverse rulings by a court are judicial in nature.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United*

2

*States*, 510 U.S. 540, 555 (1990). The extrajudicial source doctrine is the most common, but not exclusive, basis for establishing "disqualifying bias or prejudice." *Id*. at 554–56.

Thus, Defendant's allegations of bias are based on rulings of the undersigned unfavorable to him, which were clearly made within the context of judicial proceedings. As such, these allegations are legally insufficient to support a motion for disqualification.

Defendant next discusses statements made by the undersigned at sentencing and in the Court's Memorandum Order discussing sentencing factors contained in 18 U.S.C. § 3553, including "the nature and circumstances of the offense" and "history and character of the defendant." For example, Defendant mentions the following comments made by this Court at sentencing: "considering the defendant's rape of the child"; "little doubt that the child would have again been tortured by this defendant"; and Defendant showed "an extraordinarily unusual appetite for cruelty, just plain meanness, really." (Doc. 127 at 3-4). Defendant also states that certain facts set forth in the Court's sentencing memorandum were inaccurate. For example, he disputes the factual findings that he met Michael Glascock while pursuing an interest in abusing children, that he entered into a plan to abuse the child, and that he stopped "to get lube on his way to Glascock's residence." (*Id*. at 5-6).

Defendant entered into a Plea Agreement in which he acknowledged that he sexually abused the three year-old minor victim and that his actions constituted lewd or lascivious battery under Florida law. (Doc. 27 at 17). Defendant also acknowledged

3

exchanging e-mails with the victim's father and describing "in graphic and disturbing detail their plans to engage in sexual activity with the minor victim in the [sic] their future meetings, including plans to penetrate the minor victim's vagina and anus." (*Id.* at 22). Defendant also acknowledged an e-mail sent to the victim's father in which Defendant stated "I can be there in about 45 minutes if you give the address again.  And do I need to bring some lube, or do you have some?"  (*Id.* at 24-25).  The victim's father responded "i'm about out."  (*Id.* at 25).  Defendant further acknowledged in the Plea Agreement that, when law enforcement officers arrested Defendant, "a packet of lubricant" was recovered from the saddle bag of his motorcycle.  (*Id.*).

Defendant also acknowledged a summary of his interview with law enforcement officers in which he set forth in detail the circumstances of how he met the victim's father and the sexual abuse of the victim.  (*Id.* at 26).  During that interview Defendant admitted that he "rubbed his penis on the minor victim's vagina" and "place his penis in the child's mouth."  (*Id.*)  Defendant also admitted that he planned to participate in the sexual abuse of the minor victim a second time.  (*Id.*).

Under § 455(a), any alleged bias ordinarily must stem from an extrajudicial source and result in an opinion on the merits that is based on something other than what the judge learned from participating in the case.  Here, Defendant does not allege that the Court's comments and factual findings were based on matters learned from extrajudicial sources, rather than learned from participation in the case.

In *Liteky*, 510 U.S. at 555, the Supreme Court held that, in the absence of some extrajudicial source of bias or partiality, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."   In fact, "[a] judge is not recusable for bias merely because he is exceedingly ill disposed to a defendant who has been shown at trial to be a thoroughly reprehensible person." *United States v. Roberts*, 64 F. App'x 473, 476 (6th Cir. 2003).  Moreover, "a judge's comments at sentencing expressing outrage at the defendant's conduct or at the defendant himself, and/or an urge to see the defendant severely punished, are not grounds for disqualification." *Susi v. United States*, No. 3:07-CR-119-FDW-4, 2015 WL 1602074, at *15 (W.D.N.C. Apr. 9, 2015).  In the present case, the undersigned's comments and findings resulted from the evidence presented at sentencing and were made in the context of explaining Defendant's sentence.

In sum, Defendant has failed to sufficiently allege a basis for disqualification.

Accordingly, it is **ORDERED** that Defendant's Appeal From Order Denying Defendant's Motion for Disqualification of Judge for Plain Error (Doc. 132) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 26, 2017.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
OrlP-2 9/26

Crim. Doc. 134

FILED

2017 OCT 20  PM 2: 36

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA                     CASE No.:

v.                                            6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

## MOTION FOR REHEARING

Comes now the Defendant, Jonathan Prive, pro se, with a motion for rehearing pursuant to the Court's Order of September 26, 2017 (Doc. 133). The Defendant seeks to have the Order vacated, and the original Motion for Disqualification (Doc. 127) addressed on the merits and thereafter granted, due to what he believes is plain error in the Courts Order.

In its Order of September 26, 2017 (Doc. 133), Judge Antoon essentially withdraws the finding that was made in the Order of August 24, 2017 (Doc. 130), where he found that the Defendant had not complied with the procedural requirements of 28 U.S.C. §144 by not filing an affidavit and a certificate of good faith. After the Defendant filed what was construed as a motion for rehearing (Doc. 132) in which he asserted that the motion for disqualification did indeed contain a certificate of good faith, along with the affidavit. Judge Antoon now acknowledges that the motion for disqualification did contain the required affidavit and certificate of good faith (Doc. 133, at 1), and that it does satisfy the requirements of 28 U.S.C. §144. Having acknowledged that the requirements were met, the Defendant believes that the plain reading of §144 required Judge

Antoon to either voluntarily recuse himself and appoint another judge to hear the proceedings or make a ruling on the merits of the grounds raised in the Motion to disqualify.

Instead of doing either of these things, Judge Antoon invoked the "extrajudicial source doctrine" and ruled that the Defendant was not legally allowed to use any of the issues In Grounds 3 through 7 of the Motion for Disqualification as a basis for a motion to recuse because those issues arose as a result of judicial proceedings. There are several problems with that finding. First, both Circuit precedent and Supreme Court precedent agree that there has never been any absolute rule requiring an extrajudicial source. According to *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988), and *Glassroth v. Moore*, 229 F.Supp.2d 1283, et al., "[l]egal grounds exist for recusal when "an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." Actual prejudice need not be shown, as Congress expressly intended... §455 to promote public confidence in the impartiality of the courts by eliminating even the appearance of impropriety." *Glassroth*, 229 F.Supp.2d at 1285.

Even the Supreme Court has specifically said that the extrajudicial source doctrine "was often quoted as justifying the refusal to consider trial *rulings* as the basis for §144 recusal... But trial *rulings* have a judicial expression rather than a judicial *source*. They may be based on extrajudicial Knowledge or motives... And finally, even in cases in which the "source" of the bias or prejudice was clearly the proceedings themselves... the supposed doctrine would not necessarily be applied." *Liteky v. United States*, 114 S.Ct. 1147, at 1152.

These precedents alone demonstrate that the refusal to

consider the Defendant's grounds for recusal based solely on the invocation of the extrajudicial source doctrine, without further analysis, was error warranting rehearing. Beyond this, however, is the more troubling fact that several grounds have been entirely ignored by Judge Antoon's Order, and the Defendant's grounds which were mentioned have been either misinterpreted or essentially rewritten by the Judge to rob them of their context and effect.

First, the Defendant began his Motion for Disqualification (Doc. 127) by stating that he intended to file a motion under 28 U.S.C. §2255 and that he was afraid it would not receive fair treatment by Judge Antoon (Doc. 127, at 1). As grounds for that belief, the Defendant stated that Judge Antoon was expected to hear the motion, and that the motion would allege that he did not receive fair and unbiased treatment from Judge Antoon in District Court, and that Judge Antoon committed an abuse of discretion (Doc. 127, grounds 1 and 2).

These grounds were entirely ignored in the Court's order, and require consideration, especially when the contemplated §2255 motion has now been filed (Doc. 1, "Motion to Vacate, Case No. 6:17-cv-1498-Orl-28KRS), and when the Judge would be required to rule on his own past conduct if allowed to continue in this case. Because the grounds put forth for recusal contemplated a motion that was not, at that time, being considered by the Court, and was instead concerned with a future proceeding where the Judge would be asked to find himself guilty of an abuse of discretion and prejudicial treatment resulting in an unfair conviction, it was both extrajudicial in nature and gives rise to the appearance of impropriety. Anyone asked to hear such a case undoubtedly has a personal interest in the outcome, and the Supreme Court tells us that "Recusal is required when, objectively

speaking, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."" Rippo v. Baker, 137 S.Ct. 905, at 907, quoting Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456 (1975). At the very least, the Court's Order should be vacated and then reconsidered to take into account grounds 1 and 2, which were not addressed by the Court, and which the Defendant believes merit recusal.

The next issue, that of the Defendant's other grounds being misinterpreted and rewritten, is more serious and requires more explanation. As such, the Defendant will address each in turn.

Judge Antoon first rules that "Defendant's allegations of bias are based on rulings of the undersigned unfavorable to him, which were clearly made within the context of judicial proceedings. As such, these allegations are legally insufficient to support a motion for disqualification." (Doc. 133, at 3). This was not the basis set forth by the Defendant's grounds. The basis for Ground 3 of the Defendant's motion for disqualification was not that the ruling was unfavorable, but that Judge Antoon made an extraordinary departure from standard procedure which is so well established that it is used to determine nearly all motions to withdraw pleas of guilty in this circuit. (Doc. 127, pg 2)

Likewise, the Defendant's basis for Ground 4 was not that the ruling was unfavorable to him. There, the basis was that the Defendant and the United States presented identical arguments, to wit, that 18 U.S.C. §2422(b) was not in fact a statute which regulates the internet, or any specific instrumentality of interstate commerce, but is much more broad, encompassing a great many other things. The Defendant's ground there (Doc. 127, pg. 2-3) was that Judge Antoon ruled that argument was meritless when the Defendant tried to use it, but scant minutes later found that it was meritorious enough to both discuss,

and thereafter agree with, when it was used by the United States. It was not the unfavorable ruling, but the blatant disparity of the two rulings and the obvious antagonism or favoritism shown by two different rulings on the same issue of law. It is true that judicial rulings alone will almost never constitute a valid basis for bias or partiality motions, see Litefy, 510 U.S. at 555, 114 S.ct. at 1157, but the Defendant never alleged that the rulings alone were the basis for recusal, and since the Defendant is asserting that these disparate rulings and departures from everyday principles of law demonstrate the high degree of antagonism or favoritism contemplated by the Litefy Court as valid basis for a bias challenge, (ibid.), these grounds should have been considered in their intended contexts, and under that exception to the extrajudicial source doctrine.

Next, Judge Antoon fails to address Ground 6 of the Motion to Disqualify. (Doc. 127, pg. 4). During sentencing, the Judge told the Defendant "The sentence would have been the same if I had sustained the objections of the defendant to the guideline score and overruled the government's objection." In the motion to Disqualify, the Defendant asserted that this statement revealed the Judge's prejudicial treatment in that the Judge had signed a binding plea agreement agreeing to give the Defendant a guideline score, but he had every intention of violating that agreement and disregarding whatever happened at the hearing in order to satisfy his personal desire to give the Defendant a harsh sentence. The fact that he did not need to do so in no way mitigates the fact that he admitted he was willing to do so, and such a statement clearly should be considered under the 'pervasive bias' analysis if nothing else. The Order should be reconsidered in order to consider Ground 6, and a determination made as to whether or not it gives the appearance of impropriety, since it

admitted a preconceived bias that would prevent a fair hearing.

Lastly, Judge Antoon erred by attempting to essentially rewrite the allegations of Ground 7 of the Defendant's motion for Disqualification in order to rob it of its context. The Defendant did not, as Judge Antoon puts it, state "that certain facts set forth in the sentencing memorandum were inaccurate." The Defendant clearly alleges that Judge Antoon intentionally fabricated a very specific narrative of events that is directly contradicted by the evidence presented, and the facts stipulated to by the United States and clearly laid out in the plea agreement. The Defendant showed that the Judge intentionally arranged false accusations about the Defendant's actions in a very specific and chronological sequence that differ significantly from the facts of the case. The Defendant also showed that the Judge invented an entirely new event which he claimed the Defendant did just prior to his arrest on Nov. 5th, 2013, which is conclusively shown to be entirely without basis in the evidence. (Doc. 122, pgs 4-6)

Judge Antoon attempts to rebut this allegation, taking facts from the case at random, without regard to their context or chronological appearance, and tries to hold them up as proof that his comments and his narrative was based on facts learned during the case (Doc. 133, pages 3-4), at least by implication. He never actually speaks to the Defendant's real allegation, never claims he learned the fabricated facts during the proceedings, and never disputes the fact that he created a fictional account of events, which was directly rebutted by the record.

Contrary to the Judge's Order, on page 4, where he claims: "Here, the Defendant does not allege that the Court's comments and factual findings were based on matters learned from extra-judicial sources, rather than learned from participation in the

case," the Defendant *did* allege that the comments and factual findings weren't learned during the proceedings. The Defendant alleged that they were never *learned* at all. He asserts that the Judge *invented them*. Fabricated events, which are rebutted by the evidence and only resemble facts from the case, are not based in reality, and are therefore extrajudicial in nature since they come from the individual's imagination. The fact that they may in some ways resemble real occurrences or evidence does not make them any more real, and in this case seem calculated to do nothing more than demonize the Defendant. The allegations put forth in Ground 7 of the Defendant's motion were erroneously ruled to be insufficient to support a motion for disqualification because they didn't stem from an extrajudicial source, and these allegations must be considered under both extrajudicial source and the pervasive bias analysis, in their original context, before ruling they are insufficient.

Also of importance is the Defendant's closing statement, on page 6 of the Motion for Disqualification. There, the Defendant states a belief that the totality of the grounds set forth in the motion represent a *pattern* of biased behavior, and that he feared Judge Antoon would not apply the rules of law fairly to future proceedings in this case. "[W]hen a district judge considers recusal, he must consider his potential conflict with regard to the overall case, not just his potential conflict for each separate issue or each stage of the litigation" *Murray v. Scott*, 253 F.3d 1308, at 1310-1311 (11th Cir. 2001). This "pattern" of antagonistic behavior was not addressed in the Order, either. The assertion is that, even if individually these occurrences were not enough to establish the appearance of bias and impropriety, together they form a cohesive whole

that suggests a pervasive bias which a neutral observer, fully informed of all the facts, would find caused them to harbor doubts about the judge's impartiality. This "pattern" must also be considered as part of the motion before a final ruling can be made on the merits.

In closing, the Defendant seeks to have the Courts Order vacated and the motion (Doc. 127) reexamined using the proper standards for review set forth by the Supreme Court; with due consideration of Grounds 1 and 2; with due consideration of Ground 6; giving full effect to the context of the Defendant's allegations in Ground 7; and with consideration of the "pattern of prejudice" argument on page 6 of the motion. The Defendant believes that the Court erred in not considering the unaddressed grounds in its ruling, and believes that ignoring the true allegations set forth by the defendant has robbed his grounds for recusal of their intended effect.

WHEREFORE, having demonstrated that the Court's Order (Doc. 133) was decided without addressing multiple grounds for recusal, and because the Court erred in its requirement of an extrajudicial source in every case, and for the other reasons set forth regarding individual misinterpretations of the grounds for recusal, the Defendant respectfully requests that the Court vacate the denial of his motion as set forth in its Order, rehear the original motion for disqualification, and then GRANT the Defendant's motion.

## TIMELINESS

In an effort to avoid any potential problems with this filing due to the delay between the issuance of the Court's Order (Doc. 133) of September 26, 2017, the Defendant hereby swears, under penalty of perjury, that he could not have filed the instant MOTION FOR REHEARING at an earlier time, due to the lack of any writing materials. The Defendant is an indigent inmate incarcerated at the Brevard County Jail, and the conditions of his confinement are such that he was prevented from responding. The Defendant has done his best to respond as soon as possible, and asks the Court to accept this motion, even though delayed, in the interests of justice.

Sworn to on this, the 14th day of October, 2017
Signed:
Jonathan T. Prive

## SWORN STATEMENT

I, Jonathan Prive, do hereby swear under penalty of perjury that the facts and claims set forth in the foregoing MOTION FOR REHEARING and the TIMLINESS statement are true and correct to the best of my knowledge and understanding.

Executed on this, the 14th day of October, 2017.

Signed: _____

Jonathan T. Prive

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

## CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify that I have, on this, the 17th day of October, 2017, placed a true and correct copy of the foregoing MOTION FOR REHEARING in the Brevard County Jail's internal mailing system, marked "LEGAL MAIL", to be sent via U.S. mail to the following parties:

1) United States District Court
   Office of the Clerk
   United States Courthouse
   401 W. Central Blvd., Suite 1200
   Orlando, FL 32801

and:

2) United States Attorney's Office
   400 W. Washington Street
   Suite 3100
   Orlando, FL 32801

Signed: _____
Date: 10/17/2017

Crim. Doc. 136

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                          **CASE NO: 6:14-cr-33-Orl-28KRS**

**JONATHAN TYLER PRIVE**

---

## ORDER

Defendant's Motion for Rehearing (Doc. 134) is before the Court for consideration.

Having reviewed the Motion and the file, the Motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on December ____, 2017.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jonathan Tyler Prive

# Civ. Docket

This case was appealed to
11th Circuit: <u>18-10386</u>, <u>18-11693</u>

## US District Court Civil Docket

U.S. District - Florida Middle
(Orlando)

### 6:17cv1498

### Prive v. United States of America

This case was retrieved from the court on Monday, November 19, 2018

Date Filed: 08/16/2017
Assigned To: Judge John Antoon II
Referred To: Magistrate Judge Karla R. Spaulding
Nature of suit: Vacate Sentence (510)
Cause: Motion to Vacate Sentence
Lead Docket: None
Other Docket: 11th Circuit, 18-11693
criminal case, 6:14-cr-33-ORL-28KRS
Jurisdiction: U.S. Government Defendant

Class Code: CLOSED
Closed: 01/04/2018
Statute: <u>28:2255</u>
Jury Demand: None
Demand Amount: $0
NOS Description: Vacate Sentence

| Litigants | Attorneys |
|---|---|
| Jonathan Tyler Prive<br>Petitioner | <u>Jonathan Tyler Prive</u><br>PRO SE<br>337795<br>Brevard County Jail<br>860 Camp Road<br>Cocoa , FL  32927<br>USA |
| United States of America<br>Respondent | <u>Andrew C. Searle</u><br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>[Term: 11/16/2017]<br><u>A. Brian Phillips, PA</u><br>912 Highland Ave<br>Orlando , FL  32803<br>USA<br>407/872-0777<br>Email:Andrew.Searle@phillips-Law-Firm.Com<br><br><u>Ilianys Rivera Miranda</u><br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br><u>US Attorney's Office - FLM*</u><br>Suite 3100<br>400 W Washington St<br>Orlando , FL  32801<br>USA<br>407/648-7591<br>Fax: 407/648-7643<br>Email:Ilianys.Rivera@usdoj.Gov |

| Date | # | Proceeding Text | Source |
|---|---|---|---|
| 08/16/2017 | 1 | **STRICKEN per 5 ** MOTION to Vacate, Set Aside or Correct Sentence (2255) Criminal Case No. 6:14-cr-33-ORL-28KRS filed by Jonathan Tyler Prive.(JP) (SPM). Modified on | |

| | | |
|---|---|---|
| | | 9/28/2017 (SPM). (Entered: 08/17/2017) |
| 08/18/2017 | 2 | PETITIONER'S BRIEF in support of re 1 MOTION to Vacate, Set Aside or Correct Sentence (2255) Criminal Case No. 6:14-cr-33-ORL-28KRS filed by Jonathan Tyler Prive. (SPM) (Entered: 08/18/2017) |
| 08/18/2017 | 3 | MOTION for Hearing re 1 MOTION to Vacate, Set Aside or Correct Sentence (2255) Criminal Case No. 6:14-cr-33-ORL-28KRS by Jonathan Tyler Prive. (SPM) (Entered: 08/18/2017) |
| 08/18/2017 | 4 | MOTION for Leave to Proceed in forma pauperis by Jonathan Tyler Prive. (SPM) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 08/18/2017) |
| 09/27/2017 | 5 | ORDER denying 3 Motion for Hearing; granting 4 Motion for Leave to Proceed in forma pauperis; striking and returning 1 Motion to vacate/set aside/correct sentence (2255). Signed by Judge John Antoon II on 9/27/2017. (AJM) (Entered: 09/27/2017) |
| 10/11/2017 | 6 | MOTION for Extension of Time to File Amended Motion to Vacate by Jonathan Tyler Prive. (Attachments: # 1 Exhibit 1)(SPM) (Entered: 10/11/2017) |
| 10/12/2017 | 7 | ORDER granting 6 Motion for Extension of Time. Signed by Judge John Antoon II on 10/12/2017. (EK) (Entered: 10/12/2017) |
| 10/30/2017 | 8 | MOTION to Vacate Order and Permit Filing re 5 Order on Motion for Hearing Order on motion for leave to proceed in forma pauperis Order on motion to vacate/set aside/correct sentence (2255) by Jonathan Tyler Prive. (SPM) (Entered: 10/31/2017) |
| 11/02/2017 | 9 | ORDER denying 8 Motion to Vacate. Signed by Judge John Antoon II on 11/2/2017. (Copy mailed) (AKJ) (Entered: 11/02/2017) |
| 11/13/2017 | 10 | MOTION for Reconsideration (Rehearing) re 9 Order on Motion to Vacate by Jonathan Tyler Prive. (JET) (Entered: 11/13/2017) |
| 11/16/2017 | 11 | Notice of substitution of AUSA. Ilianys Rivera Miranda substituting for Andrew C. Searle. (Miranda, Ilianys) (Entered: 11/16/2017) |
| 11/28/2017 | 12 | NOTICE of inquiry: Request for current docket sheet by Jonathan Tyler Prive (SPM) (Entered: 11/28/2017) |
| 11/28/2017 | 13 | NOTICE of inquiry by Jonathan Tyler Prive (JET) (Entered: 11/28/2017) |
| 12/13/2017 | 14 | ORDER denying 10 Motion for Reconsideration; Petitioner has until December 27, 2017 to file an Amended Motion to Vacate; failure to do so shall result in the dismissal of this case without further notice. Signed by Judge John Antoon II on 12/13/2017. (BRS) (Entered: 12/13/2017) |
| 01/03/2018 | 15 | ORDER dismissing this case without prejudice; directing the Clerk to close this case and to enter judgment dismissing this case without prejudice; a copy of this Order and the judgment shall also be filed in criminal case number 6:14-cr-33-Orl-28KRS; the Clerk is also directed to terminate the section 2255 motion (Criminal Case Doc. 129) filed in criminal case number 6:14-cr-33-Orl-28KRS. Signed by Judge John Antoon II on 1/3/2018. (BRS) (Entered: 01/03/2018) |
| 01/04/2018 | 16 | JUDGMENT in favor of United States of America against Jonathan Tyler Prive (Signed by Deputy Clerk) (SPM) (Entered: 01/04/2018) |
| 02/01/2018 | 17 | NOTICE OF APPEAL as to 15 Order by Jonathan Tyler Prive, originally filed in USCA and per USCA order, to be construed as a Notice of Appeal. Filing fee not paid. (ALL) (Entered: 04/20/2018) |
| 04/24/2018 | 18 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 17 Notice of appeal. (ALL) (Entered: 04/24/2018) |
| 05/10/2018 | 19 | MOTION for Leave to Appeal in forma pauperis by Jonathan Tyler Prive. (ALL) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 05/10/2018) |
| 05/14/2018 | 20 | ORDER denying 19 Petitioner's Motion for Leave to Appeal in forma pauperis. Signed by Judge John Antoon II on 5/14/2018. (BRS) (Entered: 05/14/2018) |
| 06/07/2018 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Florida certifies that the record is complete for the purposes of this appeal re: 17 Notice of appeal. All documents are imaged and available for the USCA to retrieve electronically. USCA number: 18-11693. (ALL) (Entered: 06/07/2018) |

## Judgments

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|---|---|---|---|---|---|---|---|
| 01/04/2018 | United States of America | Jonathan Tyler Prive | $ 0.00 | 0.00% | $ 0.00 | No Payment | 01/04/2018 |

---

Order documents from our nationwide document retrieval service.
- OR - Call 1.866.540.8818.

Civ. Doc. 2

FILED

2017 AUG 15 PM 2: 32

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

IN THE UNITED STATES
DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA


CASE NO.: 6:14-cr-00033-JA-KRS-1


UNITED STATES OF AMERICA

V.

JONATHAN TYLER PRIVE


MOVANT'S BRIEF IN SUPPORT OF MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE
PURSUANT TO 28 U.S.C. §2255

Jonathan T. Prive
#337795
Brevard County Jail Complex
860 Camp Road
Cocoa, FL 32927

FILED

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA 2017 AUG 15  PM 2: 32

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE No. 6:14-cr-00033-JA-KRS-1

JONATHAN TYLER PRIVE

## BRIEF IN SUPPORT OF MOTION

The Defendant, Jonathan Prive, pro se, hereby submits a brief in support of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and while reserving all arguments not asserted herein, states the following in support thereof:

### I. Introduction

On August 26, 2014, the Defendant entered into a plea agreement with the United States (Doc. 27) in which he agreed to plead guilty to Count Two of the indictment pending against him in the above captioned case in exchange for, *inter alia*, the dismissal of Count One, no additional charges being filed related to the conduct which gave rise to the indictment, and a recommendation for a three-level reduction in the offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In entering into the agreement, the Defendant was led to believe by counsel that, as the plea agreement contained no comprehensive waiver of the right to appeal the conviction, he was reserving that right to appeal to a higher court. On August 27, 2014, the Defendant appeared before United States Magistrate Judge Karla R. Spaulding, and after a change of plea colloquy the Defendant pled guilty to Count Two of the indictment in connection with the plea agreement. Doc. 28.

On or about September 18, 2014, the Defendant read a newspaper article in The Orlando Sentinel, detailing a series of SWAT-style raids on barbershops in

Orlando, Florida, and other locations in central Florida. The article stated
that the 11th Circuit had previously held that law enforcement officers were
not granted immunity from the law while performing their official duties, and
the Defendant thought this significant because his appointed counsel had induced
him to plead guilty based in significant part on the premise that he could not
raise any defense based on illegal acts by law enforcement officers in the
case, due to the claim by counsel that they were granted immunity from all
state laws by virtue of being part of a joint state and federal task force.

After learning he had been induced to plead guilty under false pretenses, the
Defendant proceeded to petition the court to appoint new counsel. On November
3, 2014, Daniel Brodersen was appointed to replace Jose Rodrigues, and the
Defendant began working on a motion to withdraw plea. On December 9, 2014, the
Defendant, through counsel, filed a verified motion to withdraw plea of guilty
(Doc. 48).

Over objections by the United States, Magistrate Judge Karla Spaulding
issued a Report and Recommendation (Doc. 55) recommending that the
Defendant's motion be granted, and that he be allowed to withdraw his plea and
continue to trial. The United States objected to the Report and Recommend-
ation, and District Court Judge John Antoon, II, held an evidentiary hearing
on the matter on January 22, 2015. The District Court Judge thereafter
denied the motion on February 5, 2015 (Doc. 67), and the case proceeded to
sentencing.

On April 15, 2015, a sentencing hearing was held before Judge John Antoon,
II, in District Court. During that hearing, due to a conflict with his appointed
counsel, the Defendant was allowed to file a pro se motion to terminate
proceedings and vacate sentence, pursuant to Fed. R. Crim. P. 12(b)(3)(B), in open
court. The Defendant alleged that there was a jurisdictional defect in the
original indictment because 18 U.S.C 82422(b) is unconstitutional, thus failing to
charge a valid offense. Doc. 90. The sentencing judge heard the motion, and

after consideration ruled it was without merit, denying it without elaborating. Sentencing was continued until April 22, 2015, and the Defendant was eventually sentenced to 365 months imprisonment, without time served, followed by lifetime probation with special conditions.

Daniel Brodersen was allowed to remain as counsel for the Defendant on appeal based on the understanding that he would raise several issues on the Defendant's behalf in the direct appeal. Mr. Brodersen filed notice of appeal (Doc. 101) and the case was assigned case no. 15-12032 on May 12, 2015. Mr. Brodersen then cut off all communication with the Defendant and filed an Anders Brief with motion to withdraw as counsel on August 10, 2015. The Defendant filed a 52 page response with incorporated motion to withdraw counsel and appoint new counsel, which was filed by the Clerk on January 4, 2016. On May 24, 2016, the motion to withdraw pursuant to *Anders* was granted, and the conviction and sentence were per curiam affirmed. The Defendant then proceeded *pro se* and filed a timely petition for rehearing *en banc* on June 24, 2016. The petition was denied on July 28, 2016, and the conviction and sentence again affirmed per curiam by the Court's mandate, on August 10, 2016.

The Defendant now seeks to vacate, set aside, or correct the sentence imposed by the United States District Court with a motion pursuant to 28 U.S.C. §2255, and submits this brief therewith.


II. Memorandum of Law

A prisoner in custody pursuant to a sentence imposed by a federal court may move the court which originally imposed the sentence to vacate, set aside, or correct the sentence on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the conviction and sentence are otherwise subject to collateral attack. 28 U.S.C. §2255(a).

The Defendant has filed a motion under §2255 contemporaneous with this brief, in which he raises nineteen (19) grounds which meet the requirements of §2255(a). The Defendant believes that some of these grounds for relief require further clarification, or argues those grounds herein, pursuant to local court instructions for filing a motion under 28 U.S.C. §2255.

A. Ground One

As Ground One for the §2255 motion, the Defendant asserts that 18 U.S.C. §2422(b), under which he was convicted and sentenced, is facially invalid under the First Amendment of the Constitution because it is substantially overbroad.

18 U.S.C. §2422(b) reads:

"Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life."

The statute does not provide any indication of whether it applies to only intrastate conduct or if it intends to target only interstate activity. It can therefore be read to authorize any instance of persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity, regardless of whether it is purely local or interstate in nature. See United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032 (1997) (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so). According to the statute's plain language, the only jurisdictional element that need be satisfied is that a person use "the mail or any facility or means of interstate or foreign commerce," or that the persuasion take place "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. §2422(b).

It has often been argued that §2422(b) is a valid exercise of Congress's

power to regulate the internet, or the instrumentalities of interstate commerce, but this idea utterly disregards the obvious fact that §2422(b) never mention either the internet or instrumentalities of interstate commerce anywhere in the statute. The 11th Circuit has often tried to uphold the statute's constitutionality under the Commerce Clause by reciting the maxim that "the internet is an instrumentality of interstate commerce" and "Congress has the power to regulate the internet." See, e.g., *United States v. Hornaday*, 329 F.3d 1306. Indeed, the 11th Circuit tends to examine §2422(b) as *only* a regulation of the internet or instrumentalities of commerce. Any time there is a Commerce Clause challenge to the statute's constitutionality, this is the reasoning relied on to uphold it. See *United States v. Schumaker*, 479 Fed. Appx. 878 (2012).

The problem with that reasoning is that this is *not* what §2422(b) actually says. In fact, during the sentencing hearing which took place on April 15th, 2015, Andrew Searle, arguing on behalf of the U.S. Attorney, sought a sentencing enhancement for use of a computer by specifically claiming §2422(b) does not require the use of a computer or the internet at all. (see transcript of proceedings, Docs. 89 and 120, page 13, lines 2-13). Mr. Searle said: "It just so happens to be in this particular case that that was the actual instrumentality of interstate commerce that the defendant elected to use..." *Ibid*. Judge Antoon then ruled that the government was correct (*id*., at page 14, lines 4-7), and later reiterated this finding during the continuation of sentencing on April 22, 2015, saying: "... the objection generally was that the crime required some interstate component, but that interstate component could be much broader than the use of a computer. It could be use of mail or interstate road transportation or any variety of ways other than a computer..." Transcript of proceedings, Docs. 95 and 114, page 8, lines 6-10.

This ruling by Judge Antoon reflects the reality of §2422(b). The jurisdictional element that controls the statute in a Commerce Clause context is the overly broad phrase "using... any facility or means of interstate or foreign commerce." Undoubtedly the internet, a computer, or a number of other instrumentalities of

interstate commerce could fit into the class of things which constitute either a "facility" or a "means" of interstate commerce, but the jurisdictional element is infinitely broader than that. The plain text covers the use of any facility, or any means of interstate or foreign commerce, and it is these plain terms that must be judged as to their constitutionality.

Congress's use of the word "any" suggests that they intended the statute's reach to be broad. See *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032 ("Read naturally, the word 'any' has an expansive meaning."). The internet or instrumentalities of interstate commerce can satisfy the definition of a "means" of interstate commerce, but so do all *other* forms of communication. The human voice is arguably the greatest "means of interstate or foreign commerce" in the world, easily satisfying the jurisdictional element of §2422(b). Black's Law Dictionary defines a 'means' as: "1. Available resources, esp. for the payment of debt; income," and "2. Something that helps attain an end." Black's Law Dictionary, 10th edition, 2014. It is beyond question that the human voice, or any form of communication for that matter, are "any... means of interstate or foreign commerce. The jurisdictional element only modifies the specific activity which Congress sought to criminalize, however. §2422(b) seeks to prohibit the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity, and because there is virtually no way to do so without some form of speech or communication, §2422(b) is applicable to nearly every single act of persuasion, inducement, enticement, or coercion of a minor, short of outright physical assault and rape.

Because §2422(b) is a statute which regulates expression based on content, it is "'presumptively invalid'... and the Government bears the burden to rebut that presumption." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817, 120 S.Ct. 1878 (2000). Its ability to cover *all* forms of communication stretches the net of §2422(b)'s coverage far beyond just the use of the internet or computers, and its reach becomes even more pervasive when the second half of the statute is brought into play.

The second major part of §2422(b) is the part which reads, in relevant part:
"Whoever... persuades, induces, entices, or coerces" anyone under 18 "to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense..." 18 U.S.C. §2422(b) (emphasis added). It is this half of the statute that proves truly fatal to §2422(b) by rendering it overbroad, and when combined with the all-inclusive 'facility or means' makes it truly limitless.

In the First Amendment context, a law may be invalidated as overbroad if "a 'substantial number' of its applications are unconstitutional, judged in relation to its plainly legitimate sweep." United States v. Stevens, 559 U.S. 460, 473, 130 S.Ct. 1577 (2010). This is "a second type of facial challenge" recognized by the Stevens court, and is different from a typical facial challenge, which would otherwise require the Defendant to establish that "no set of circumstances exists under which [the statute] would be valid," United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987), or that the statute lacks any "plainly legitimate sweep." Washington v. Glucksberg, 521 U.S. 702, 740, n.7, 117 S.Ct. 2258 (1997) (internal quotation marks omitted). It is this "second type of facial challenge" which the Defendant brings against §2422(b), for overbreadth.

§2422(b) becomes applicable to nearly every sex offense against or involving a minor by using the jurisdictional hook "any facility or means," but with the second half of the statute we again see Congress's use of the word "any" in the text of "... any sexual activity for which any person can be charged with a criminal offense..." 18 U.S.C. §2422(b) (emphasis added). This has been used by federal courts to establish that even misdemeanor offenses are enough to satisfy the requirement that any person can be charged with a criminal offense. See, e.g., United States v. Shill, 740 F.3d 1347, 1352 (2014) ("Because Congress failed to limit §2422(b) in this way, the logical inference is that Congress intended the statute to apply to both felony and misdemeanor conduct."); Cf., United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032 (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so).

The Defendant's main argument concerning this second half centers around the portion of that phrase which says "...for which any person can be charged with a criminal offense..." As we've established, the Supreme Court holds "any" to be expansive. Gonzales, ibid. Congress presumably wrote this into §2422(b) because the statute was intended to reach offenses that crossed state lines, necessitating a highly flexible standard of conduct in order to target activity which might be unlawful in one jurisdiction, but not another. This also allows the government to reach third parties who might otherwise not be able to be charged, such as a person who induces two others to engage in prohibited sexual conduct while not an active participant themselves.

When we give the term "any person" its natural meaning, however, we have a statute which allows for federal prosecutions of anyone who uses any form of communication (a 'means') to pursuade, induce, entice, or coerce a minor into any sexual activity for which any person can be charged with an offense, regardless of who they are, if they're minors themselves, if they're even involved in the case, or even if they are in the same jurisdiction. If a 17 year-old girl and an 18 year-old boy arrange to engage in sexual intercourse — a sexual activity which is entirely lawful for them in Florida — a person in Oregon can still be charged with sexual abuse in the third degree for that same act, making it a Class A misdemeanor under Oregon Revised Statute §163.415, or contributing to the sexual delinquency of a minor under Oregon Revised Statute §163.435. "A person in Oregon" thus qualifies as "any person", who could "be charged with a criminal offense," for the lawful sexual intercourse with a person under 18 in the State of Florida, and their sexual activity thus subjects them to federal prosecution. The boy (who is 18) has used some form of communication (a 'means' of interstate commerce) to persuade, induce, or entice a 17 year-old girl (who has not yet 'attained the age of 18 years') to engage in sexual intercourse (a sexual activity) for which 'any person' — (someone in Oregon) — can be charged with a criminal offense.

"Any" sexual activity, for which "any" person can be charged with an offense, is not limited in any way by the text of the statute. It was written to allow the law from one jurisdiction to be used as the basis for federal prosecution of someone who may reside in another, and it applies to everyone, regardless of whether or not they are within the same state as the actual physical offense. That a person in Oregon could be charged with a criminal offense for the sexual activity of sexual intercourse with a 17 year-old girl clearly satisfies the plain terms "any sexual activity for which any person can be charged with a crime..." 18 U.S.C. §2422(b) (emphasis added).

Unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." Estate of Cowart, v. Nickos Drilling Co., 505 U.S. 469, 475, 112 S.Ct. 2589 (1992). We must give effect to the plain terms of §2422(b), and without any basis in the text for doing so, we cannot read any limitation into the statute, or its word "any". See Gonzales, supra, 520 U.S. at 5, 117 S.Ct. 1032.

The Defendant argues that since there is no basis for limiting the reach of the term "any sexual activity for which any person can be charged with a criminal offense", it is not readily susceptible to any more limited construction, and that as long as someone, somewhere, can be charged with a criminal offense for the contemplated sexual activity, then there exists 'any person' as required by §2422(b). The Defendant submits that in light of these facts, the true effect of §2422(b) can be stated thus: "Whoever, using the mail or any type of communication, to include the human voice, knowingly persuades, induces, entices, or coerces anyone under 18 to engage in prostitution or any sexual activity which is a violation of the law for somebody, somewhere, or attempts to do so, shall be fined under this title and imprisoned for not less than 10 years or for life."

As long as a criminal statute which prohibits the sexual activity exists, somebody can be charged with a criminal offense. If two minors, or a minor and someone who is over 18, arrange to engage in sexual activity, even if it is lawful to do so in their jurisdiction, Oregon Revised Statutes §163.415 and §163.435 still makes that

a criminal offense, and one or both of them run afoul of 18 U.S.C. §2422(b).

Even if the government tried to raise an objection that the statute requires a person to know the sexual activity is unlawful before they could be prosecuted, this would not save §2422(b). It is common knowledge that several states have criminal offenses for engaging in sexual activities with anyone under the age of 18. Everyone knows that the states have differing ages at which a person may lawfully consent to sex, and as long as they know that any person, even one in another state, could be charged for their conduct, they will always be liable to prosecution.

§2422(b) is not easily susceptible to a more limited construction. Congress repeatedly used the word "any" without any qualification and the Supreme Court has held "any" to be expansive. The term "any person" is only associated with the similarly expansive "any sexual activity", and this supports the broader reading as well. As a consequence of its plain terms, any time anyone persuades, induces, entices, or coerces a minor into sexual activity, even when minors themselves, they know that someone, somewhere in the United States could be charged with a criminal offense for any sexual contact with a minor, and they can be found guilty of violating §2422(b) every time. This is true whether or not the conduct is locally permissible, and so long as a statute like Oregon's misdemeanor exists, §2422(b) makes all sexual activity or intercourse with a person under 18 a federal felony. This plainly makes 'a substantial number of its applications' unconstitutional, "judged in relation to its plainly legitimate sweep," *United States v. Stevens*, 559 U.S. 460, 473, 130 S.Ct. 1577, and therefore facially overbroad, violating the First Amendment.

Any attempt to read the term "any sexual activity for which any person can be charged with a criminal offense" more narrowly requires not just reinterpretation, but rewriting. There is simply no adequate reading of §2422(b) which would result in it only applying to a smaller, discreet group of offenses. Of course, "every reasonable construction must be resorted to, in order to save the statute

from unconstitutionality." *United States v. Williams*, 553 U.S. 285, 294, 128 S.Ct. 1847. However, "the maxim that statutes should be construed to avoid constitutional questions offers no assistance here. This "'cardinal principle' of statutory construction... is appropriate only when [an alternative interpretation] is 'fairly possible' from the language of the statute."" *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203 (1979) (quoting *Swain v. Pressley*, 430 U.S. 372, 378, n.11, 97 S.Ct. 1224 (1977)).

"[A]nalysis must begin with the language of the statute itself; when the statute is clear, 'judicial inquiry into [its] meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589 (1992). And "where, as here, the statute's language is clear, the sole function of the court is to enforce it according to its terms." *West Virginia University Hospitals, Inc., v. Casey*, 499 U.S. 33, 99, 111 S.Ct. 1138 (1991). We cannot pretend that the meaning of the word "any" is unclear, nor can we read into it a limitation for which there is no basis in the text of the statute. We are forced to decide if, as it stands, the statute is overbroad. That prosecutors use §2422(b) to target only specific types of individuals, and not every single minor-involved sex case, is of no importance here. Regardless of any exercise of prosecutorial discretion, "the First Amendment protects against Government; it does not leave us at the mercy of *nobless oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480, 130 S.Ct. 1577 (2010). Cf. *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 473, 121 S.Ct. 903 (2001).

"We will not rewrite a ... law to conform it to constitutional requirements, for to do so would constitute a serious invasion of the legislative domain, and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *Stevens*, 559 U.S. at 481, 130 S.Ct. 1577. §2422(b)'s clear terms make otherwise entirely lawful conduct with consenting partners under the age of 18 in dozens of a violation of federal law. Anyone hoping to abide by its terms has only one option:

refrain from any kind of speech or communication with anyone under 18 which could possibly be considered an attempt to persuade, induce, entice, or coerce that minor into engaging in any sexual activity whatsoever. This criminalizes a vast area of otherwise protected speech between minors, and between minors who are legally able to consent to sex before 18 and their partners, and makes the majority of its potential applications unconstitutional, judged in relation to its plainly legitimate sweep.

Finally, the Defendant argues that, even in those cases where a prosecutor tries to utilize "the mail", "any facility... of interstate or foreign commerce," or the element of being "within the special maritime and territorial jurisdiction of the United States," §2422(b)'s secondary element of "engaging in... any sexual activity for which any person can be charged with a criminal offense," would still be unconstitutional under the First Amendment overbreadth analysis, and therefore the statute remains a violation of the First Amendment.


## B. Ground Two

Ground Two of the Defendant's §2255 motion is that the phrase "... any sexual activity for which any person can be charged with a criminal offense..." in 18 U.S.C. §2422(b) is unconstitutionally vague. For the same reasons put forth in section A., Ground One of this brief, the Defendant believes that there is no proper limitation to the statute's reach in the text, and therefore no way to discern whether local laws are superior or subordinate to a conflicting law, no way to tell what jurisdiction a person is subject to, or what happens when two competing laws apply simultaneously. Not only does this leave a person of ordinary intelligence to guess at its meaning, but it also allows for arbitrary enforcement, since it allows prosecutors and law enforcement officers to pick and choose from different laws and different jurisdictions in deciding how to enforce this law and how to prosecute offenders.

18 U.S.C. §2422(b) has been analyzed by this court in a vagueness context before. In *United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003), the court ruled

Panfil's vagueness challenge was meritless because the words "any sexual activity for which any person can be charged with a criminal offense" have plain and ordinary meanings. The Defendant, however, points out that just because the words themselves have plain and ordinary meaning, that does *not* mean that their *effect* is clearly defined. Based on this distinction, the Defendant argues that it is the *effect* that this phrase has which renders it vague and unclear, not the meaning of the individual words themselves. The clarity of the *individual words* has been settled by this court, and precedent forecloses that particular argument, but the actual *effect* of that phrase has not yet been subject to scrutiny by the 11th Circuit. Therefore, the Defendant's argument appears to be one of first impression for this court, and it is this specific argument he wishes to have considered, not that already foreclosed by *Panfil*.

## C. Ground Four

In Ground Four of his motion, the Defendant claims that 18 U.S.C. §2422(b) was void *ab initio*, and that the District Court lacked the subject matter jurisdiction to impose a conviction and sentence. This is based in large part on the argument that §2422(b) is not truly a regulation of the internet, or any other channel or instrumentality of interstate commerce, and it is thus beyond Congress's power to enact, following the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995), regarding the Commerce Clause authority. Because this argument is a central theme in the Defendant's motion, and as it is echoed in several of the Defendant's other grounds for relief, the issue is discussed in more detail here, and he prays that the Court will keep this argument in mind while considering the rest of those grounds.

For years the 11th Circuit has repeatedly held that §2422(b) is a constitutional exercise of Congress's power to regulate pursuant to the Commerce Clause. U.S. Const, Art. I, §8, cl. 3. The Court justifies this by using the often-quoted holding made

popular by *United States v. Hornaday*, 392 F.3d 1306, and its progeny, that "the internet is an instrumentality of interstate commerce," *id.*, at 1311, "Congress has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce, and to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact." *Ibid.* The *Hornaday* court also said that "Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children through intermediaries." *Ibid.*

*Hornaday* is now a mainstay of those defending §2422(b) from Commerce Clause challenges, and the courts parrot these lines faithfully in their rulings. Unfortunately, they do this in error, thanks to two critical misconceptions: First, Hornaday never challenged Congress's power to regulate the internet. Hornaday's challenge was based on a claim that Congress lacked the authority to criminalize the use of a facility of interstate commerce to seek out child victims *unless there is direct communication with the minor*. See Hornaday, *id.*, at 1311 (referring to Appellant's Br. at 40, "Finally, the Commerce Clause also requires that the statutory language be read to criminalize *only* direct communications between the defendant and the minor *via* the facility of interstate commerce (here, the internet).") (emphasis in original). The 11th Circuit ruled that "There is no basis for that position." *Ibid.* The use of the internet was incidental to his argument as to use of an intermediary to sustain a conviction. There was no specific ruling on Congress's authority to regulate a 'facility' of interstate commerce, in general.

Second, and more importantly a closer look at these well-known statements by the *Hornaday* court reveal that they have nothing whatsoever to do with §2422(b). These comments by the court are simply statements of fact, and do not address anything in the text of §2422(b), which by its plain terms mentions neither the internet or the instrumentalities and channels of interstate commerce. Nor are they findings of fact and conclusions of law. To say that these statements result in a finding by the court that §2422(b) is actually a regulation of the

internet is pure sophistry. §2422(b) does not, by its plain terms even specifically address interstate activities, or infer that it contemplates any type of interstate movement at all. Instead, the statute uses an entirely different jurisdictional element; that of "any facility or means of interstate or foreign commerce." 18 U.S.C. 2422(b).

Over the past decade, the 11th Circuit has maintained the fiction that §2422(b) is an internet regulation, repeatedly failing to examine the actual wording of the text. It is these specific terms which control §2422(b) and determine if it is a constitutional exercise of the Commerce Clause, not the plainly erroneous application of the words "instrumentality" or "internet." There is no basis in the text of the statute for using either of these two standards of law when examining §2422(b).

§2422(b) uses three distinctly different 'jurisdictional hooks: The mail, any facility or means of interstate or foreign commerce, and any commission of the substantive offense within the special maritime and territorial jurisdiction of the United States. Only the mail constitutes a channel of interstate commerce. 'Any facility or means of interstate or foreign commerce' is much more vast than just 'the internet', and a thing can be a 'facility or means' without also being an instrumentality of interstate commerce. The last of the three judicial hooks has no connection to commerce whatsoever.

The Defendant was prosecuted for using a 'facility or means' of interstate commerce, and that is neither an instrumentality or a channel of interstate commerce. While it is true that several different instrumentalities of interstate commerce, such as the internet and phones, fall under the umbrella of these much broader categories, the fact remains that it is those very specific categories of things which serve as the jurisdictional elements for §2422(b), and the fact that a single article encompassed by that larger category just happens to be an instrumentality does not mean that Congress has the authority to regulate the larger category itself.

The question now becomes, in the wake of *United States v. Lopez*, whether Congress may legitimately use the Commerce Clause power to regulate under the categories of things which are only "facilities" or "means" of interstate commerce, even when not being used for a commercial purpose, and when they need not be a channel or instrumentality of interstate commerce at all to function. The Defendant argues that this is beyond Congress's power under the Commerce Clause, and that the 'any facility or means of interstate commerce' element was null and void from the moment it was created. By virtue of the law being unconstitutional, the United States District Court lacked jurisdiction to impose both conviction and sentence.

In reviewing a constitutional challenge to a statute based on the Commerce Clause, we are guided by the Supreme Court's holdings in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995) and *United States v. Morrison*, 529 U.S. 589, 120 S.Ct. 1740 (2000). Pursuant to *Lopez*, the Supreme Court ruled that Congress may regulate three broad categories under the Commerce Clause power: (i) Congress may regulate the channels of interstate commerce; (ii) Congress may regulate the instrumentalities of interstate commerce; and (iii) Congress may reach those activities which substantially effect interstate commerce. *Lopez*, id., at 558-559, 115 S.Ct. 1624. See also *Morrison*, id., at 608-609, 120 S.Ct. 1740 (reiterating these categories).

§2422(b) does not regulate the channels or the instrumentalities of interstate commerce. Indeed, the statute functions entirely without them, and neither is even mentioned by the plain text. The actual text of the statute turns upon the use of "any facility or means of interstate... commerce," and we "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146 (1992). Therefore we must assume that Congress specifically intended to criminalize the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity using only the categories of "facilities" and "means" as

the jurisdictional element. As the statute obviously does not regulate under the Lopez (i) and (ii) powers, if it is to survive at all it must be under category (iii), those activities which substantially affect interstate commerce.

The Court in *Morrison* established what is now considered the controlling four-factor test for determining whether a regulated activity "substantially affects" interstate commerce. The four determinative considerations are: 1) whether the statute in question regulates commerce, "or any sort of economic enterprise"; 2) whether or not the statute contains any "express jurisdictional element which might limit its reach to a discreet set" of cases; 3) whether the statute or its legislative history contains "express congressional findings" that the regulated activity affects interstate commerce; and 4) whether the link between the regulated activity and a substantial effect on interstate commerce is "attenuated". *Morrison*, 529 U.S. 598, 610-612, 120 S.Ct. 1740.

The activity in question is the persuasion, inducement, enticement, or coercion of a minor into engaging in any sexual activity for which any person can be charged with a criminal offense. It has been argued in other courts outside the 11th Circuit that §2422(b) is not a regulation of this, but of the use of the facility or means of interstate commerce. That argument is easily defeated, however, by the simple fact that the statute still continues to function without the use of the 'mail or any facility or means' of interstate commerce at all. The title of 18 U.S.C. §2422 is "Coercion and Enticement", not 'unlawful use of the mail or facilities or means of interstate commerce. And lastly, the substantive offense can be described as "used any form of communication to persuade, induce, entice, or coerce..." due to the human voice being a more than satisfactory "means" of interstate commerce. It is absurd to imagine that the statute regulates the human voice instead of the activity of persuading, inducing, enticing, or coercing.

Having thus determined the activity at issue, we turn again to the *Morrison* test. In doing so we find that: 1) the persuasion, inducement, enticement, or coercion of a minor into unlawful sexual activity is not in any way 'commerce' or any sort of

economic enterprise; 2) because of the vast number of things which can satisfy §2422(b)'s jurisdictional elements "any facility or means of interstate... commerce," and the fact that every single form of communication can be a "means", the jurisdictional element in §2422(b) does not "limit its reach to a discreet set" of cases; 3) the statute's legislative history does not contain "express congressional findings" that the persuasion, inducement, enticement, or coercion of minors into engaging in unlawful sexual activity affects interstate commerce, and any such findings would have no choice but to rest on the "cost of crime" analysis already rejected by the Supreme Court; and 4) the link between the regulated activity and a substantial effect on commerce is exceedingly attenuated, due to the literal impossibility of an 'attempt' to persuade, induce, entice, or coerce a minor having any effect at all on interstate commerce. Even a 'completed' offense has no effect on interstate commerce, and to imagine one would require the use of the now-rejected "cost of crime analysis" rejected by the Supreme Court in Lopez.

Having utterly failed the four-factor Morrison test, §2422(b) has failed to substantially affect interstate commerce, and thus cannot be found constitutional under the Commerce Clause pursuant to Lopez. Furthermore, being unconstitutional from its enactment in the Telecommunications Act of 1996, §2422(b) cannot trigger the Court's jurisdiction pursuant to 18 U.S.C. §3231, and the District Court lacked the authority to impose the conviction and sentence on the Defendant.

D. Ground Eight

In Ground Eight of the Defendant's §2255 motion he asserts that the jurisdictional element of §2422(b), "any facility or means of interstate or foreign commerce" is unconstitutionally vague. For the reasons already set forth in sections A. and C., the Defendant argues that the term "any facility or means" of interstate commerce could be nearly anything, including the human voice. A person of ordinary intelligence, however, knows that the Government can't legally regulate everything, and will therefore have to guess at what the statute covers the use of, and will differ as to its application.

## III. Conclusion

Pursuant to the binding precedent on this Court and the arguments and facts set forth in this brief, and the motion pursuant to 28 U.S.C. §2255, the Defendant has proved that he has ample grounds to succeed on the merits of his motion and obtain relief by having his conviction and sentence vacated and being released from federal custody. He has presented facts and arguments which cannot be countered or defeated by objections from the United States of America and necessitate relief. Accordingly, the Defendant, Jonathan Prive, respectfully requests this Court grant his motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255.

Respectfully submitted,

Jonathan Prive

#337795

Brevard County Jail Complex

860 Camp Road

Cocoa, FL 32927

# CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify under penalty of perjury, that I have, on this day, placed a true and correct copy of the foregoing BRIEF IN SUPPORT OF MOTION in the Brevard County Jail's internal mailing system, clearly marked "LEGAL MAIL" on the envelope, to be sent to the following parties:

(1) United States District Court
    Office of the Clerk
    United States Courthouse
    401 W. Central Blvd., suite 1200
    Orlando, FL 32801

(2) The U.S. Attorney's Office
    400 W. Washington St., suite 3100
    Orlando, FL 32801

Signed: _____ On this, the 10th day of August, 2017
        Jonathan T. Prive

20

Case 6:17-cv-01499-JA-KRS   Document 21   Filed 08/16/17   Page 22 of 22 PageID 229
USCA11 Case: 18-11693   Document: 19   Date Filed: 11/28/2018   Page: 166 of 241

# SWORN STATEMENT

I, Jonathan Prive, do hereby swear, under penalty of perjury, that the facts and statements contained in the foregoing BRIEF IN SUPPORT OF MOTION are true and correct to the best of my knowledge and understanding.

Executed on this, the 10th day of August, 2017.

Signed: _____

Jonathan T. Prive.

Civ. Doc. 5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

          Petitioner,

v.                                    Case No:  6:17-cv-1498-Orl-28KRS
                                            (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

          Respondent.
_____/

## ORDER

    This cause is before the Court on the Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate," Doc. 1) filed by Petitioner pursuant to 28 U.S.C. § 2255. Petitioner also filed a Motion for Hearing (Doc. 3) and Motion for Leave to Proceed *In Forma Pauperis* (Doc. 4). The Motion to Vacate greatly exceeds twenty-five pages in length and violates Local Rule 3.01(a).[1]

    Accordingly, it is **ORDERED** as follows:

    1.    The Motion to Vacate (Doc. 1) is **STRICKEN,** and it shall be removed from the record and returned to Petitioner by the Clerk of the Court.  The Clerk of the Court shall terminate the motion.  Within fourteen (14) days from the date of this Order, Petitioner shall file an Amended Motion to Vacate on the appropriate Motion to Vacate,

_____

      [1]Petitioner executed the Petition on January 6, 2010.

Set Aside, or Correct Sentence form, which shall not exceed twenty-five (25) pages in length.

As to each claim, Petitioner must set forth on the form itself a brief and concise description of the claim with supporting facts.  If Petitioner seeks to present argument, cite law, or submit a brief in support of the claim, he must do so by filing a *separate* memorandum of law, which shall not exceed twenty-five pages (25) in length. Petitioner may file the *separate* memorandum of law within the same time-frame.  In addition, any attachments and exhibits should be placed at the end of the Petition.  The failure to *fully* comply with this Order will result in the dismissal of this action without further notice.

The Amended Motion to Vacate shall supersede the Motion to Vacate, and this case will then proceed with regard to the claims raised in the Amended Motion to Vacate only.  *See* Local Rule 4.01 (an amended pleading must incorporate all amendments).  Any claims not included therein will be deemed waived or abandoned by Petitioner.  The failure to fully comply shall result in the dismissal of this case without further notice.

2.    The Clerk of the Court is directed to provide the appropriate Motion to Vacate, Set Aside, or Correct Sentence form to Petitioner.

3.    Petitioner's Motion for Hearing (Doc. 3) is **DENIED**.  In the event that the Court determines that an evidentiary hearing is necessary, the parties will be notified.

3.    Petitioner's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 4) is

2

**GRANTED**.

      **DONE** and **ORDERED** in Orlando, Florida on September 27, 2017.

<div style="text-align:right">

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

</div>

Copies furnished to:

Unrepresented Party
OrlP-2 9/27

<div style="text-align:center">3</div>

Civ. Doc. 6

FILED

UNITED STATES DISTRICT COURT 2017 OCT 11 PM 2:56
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA                    CASE No.: 6:17-cv-1498-Orl-28KRS

v.                                                         (6:14-cr-33-Orl-28KRS)

JONATHAN TYLER PRIVE

## MOTION FOR EXTENSION OF
## TIME LIMIT FOR FILING

Comes now the Defendant, Jonathan Prive, pro se, with a motion to extend the time limit for the filing of an Amended Motion to Vacate, which was set forth in the Court's Order of September 27, 2017 (Doc. 5). The Order directs the Defendant to file an Amended Motion to Vacate "within fourteen (14) days from the date of this Order." (Doc. 5, at 1.). The Defendant received the Order on October 5, 2017, leaving only seven days in which to amend the previously filed 95-page motion and somehow condense it to less than 25 pages, in order to comply with the Court's order, along with any new briefs.

The Defendant's current conditions of confinement at the Brevard County Jail Complex make compliance with the Court's order impossible. The Defendant is an indigent inmate who cannot purchase additional writing materials in order to meet the needs of the new filing, and the Brevard County Jail will not provide him with any materials until October 11, 2017, at which point he will receive only ten (10) sheets of paper and two (2) envelopes, according to Jail policy.

The timing of the distribution of materials to indigent inmates, and the lack of an amount necessary for the proper filing of the Amended Motion to Vacate, require the Defendant to wait until at least two additional distribution dates (one on October 25, 2017, and a second on ~~October~~ November 8, 2017) have passed before he will have sufficient supplies with which to file the Amended Motion to Vacate. The only reason the Defendant is able to file this motion for an extension is that he was forced to trade his meal to other inmates in exchange for the materials necessary. This is a violation of Jail rules and is not a feasible way to obtain more materials.

Because of the time constraints set forth in the Court's Order (Doc. 5), the Defendant will not be able to comply with the Order, which "will result in the dismissal of this action without further notice" (Doc. 5, at 1., page 2), unless the Court grants him an extension.

WHEREFORE, the Defendant, being unable to comply with the Court's Order through circumstances beyond his control, hereby respectfully requests that the Court issue an ORDER granting an extension of the time limit for filing an Amended Motion to Vacate until no earlier than November 10, 2017, or, alternatively, to waive the 25-page restriction imposed by Local Rule 3.01(a), allowing the currently filed Motion to Vacate (Doc. 1) to stand, and reversing its Order of September 27, 2017 (Doc. 5).

## SWORN DECLARATION

I, Jonathan Prive, do hereby swear under penalty of perjury that the facts and statements contained in the foregoing MOTION FOR EXTENSION OF TIME FOR FILING are true and correct to the best of my knowledge and understanding.

Executed on this, the 6th day of October, 2017.

Signed: _____

Jonathan T. Prive

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

## CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify, under penalty of perjury, that a true and correct copy of the foregoing MOTION FOR EXTENSION OF TIME LIMIT FOR FILING is being placed in the Brevard County Jail's internal mailing system, marked "LEGAL MAIL", to be sent by U.S. Mail, on this, the 7th day of October, 2017, to the following addresses:

1) The United States District Court
   Office of the Clerk
   United States Courthouse
   401 W. Central Blvd., Suite 1200
   Orlando, FL 32801

and

2) The Office of the United
   States Attorney
   400 W. Washington Street
   Orlando, FL 32801

Signed: _____
       Jonathan T. Prive
Date: 10/07/2017

October 7, 2017

From: Jonathan Prive
      #337795
      Brevard County Jail
      860 Camp Road
      Cocoa, FL 32927

Re: Emergency nature of motion

   To the Clerk,

   My name is Jonathan Prive, and I am pro se on case no.
6:17-cv-1498-Orl-28KRS (6:14-cr-33-Orl-28KRS) and I am
including this letter because I dont know if I'm allowed to
file the MOTION FOR EXTENSION OF TIME LIMIT FOR FILING as
an 'emergency' motion. The motion (which is included in this
envelope) has to be heard and decided before the Court's
deadline, set in its Order of September 27, 2017 (Doc.5), of
no later than October 11, 2017. If I dont have this
motion heard by then, and decided, it will result in my
action being dismissed entirely without my having any
chance to obey the Court's Order. I've been told that
filing an "emergency motion" when it is unwarranted can get
me charged with some sort of offense or sanctions though,
so I havent labled it as that. If I'm allowed to have this
filed as an 'emergency' motion, please do whatever is needed to have
it done that way so my 28 U.S.C. §2255 motion (Doc. 1) isn't
stricken on October 11, 2017. If not allowed, please simply
file the motion for an extension as it stands now. Thank you
very much.

Jonathan T. Prive

Civ. Doc. 7

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

                    Petitioner,

v.                                                    Case No: 6:17-cv-1498-Orl-28KRS
                                                                  (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

                    Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner's Motion for Extension of Time (Doc.

6). Upon consideration, the motion is **GRANTED**. Petitioner shall have until November

10, 2017, to file an Amended Motion to Vacate, Set Aside, or Correct Sentence in

compliance with the Court's Order of September 27, 2017 (Doc. 5). The failure to do so

shall result in the dismissal of this case without further notice.

DONE and ORDERED in Orlando, Florida on October 12, 2017.

                                                    JOHN ANTOON II
                                                    UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
OrlP-2 10/12

Civ. Doc. 8

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

JONATHAN TYLER PRIVE,            Case No.: 6:17-cv-1498-Orl-28KRS

            Petitioner                     (6:14-cr-33-Orl-28KRS)

v.

UNITED STATES OF AMERICA

            Respondent.

MOTION TO VACATE ORDER

AND PERMIT FILING

Comes now the Petitioner, Jonathan Prive, pro se, with a motion to vacate the Court's Order of September 27, 2017, in as much as it relates specifically to the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate," Doc.1) filed by Petitioner pursuant to 28 U.S.C. §2255. The Petitioner hereby requests that the Order striking the Motion to Vacate and ordering it removed from the record for a violation of Local Rule 3.01(a), and thereafter instructing the Petitioner to file an Amended Motion to Vacate using only the form provided by the Clerk of Court, be vacated, as the Court's Order is in significant conflict with Fed.R.Civ.P. Rule 83 and Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2.

On September 27, 2017, the Court entered an Order (Doc. 5) which

stated that "The Motion to Vacate greatly exceeds twenty-five pages in length and violates Local Rule 3.01(a)." (This statement at Doc. 5, pg. 1, included a footnote which states "Petitioner executed the Petition on January 6, 2010." The Petitioner fails to understand this, as this case arose from an incident in 2013, and this date is unrelated to any other filing.)

The Court then ordered the Motion to Vacate (Doc. 1) STRICKEN and removed from the record and returned to the Petitioner by the Clerk of the Court. It also ordered that "The Clerk of the Court shall terminate the motion." (Doc. 5, at 1.). This order effectively denied the motion and wiped any record of it from the present case without giving the Petitioner any notice or opportunity to contest the action. The Clerk then followed the Court's Order and returned 85 pages of the Motion to Vacate to the Petitioner and struck it from the record. The returned Motion to Vacate was accompanied by a copy of the Order and the printed Motion to Vacate, Set Aside, or Correct Sentence form prescribed by the Court.

The Court's Order then directed: "Within fourteen (14) days from the date of this Order, Petitioner shall file an Amended Motion to Vacate, Set Aside, or Correct Sentence form, which shall not exceed twenty-five (25) pages in length. As to each claim, Petitioner must set forth on the form itself a brief and concise description of the claim with supporting facts... The failure to *fully* comply with this Order will result in the dismissal of this action without further notice." (Doc. 5, pg. 1-2, at 1. Bold and italic font in original.) The Order thus restricts the Petitioner to only the four ground for relief and what few supporting facts will fit in the allowed spaces on the 13 page printed form sent to the Petitioner by the Clerk.

Pro se pleadings by prisoners are held "to less stringent standards than formal pleadings drafted by lawyers..." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594. Federal Rules of Civil Procedure, Rule 83, subsection (a)(2) states that: "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed.R.Civ.P. 83(a)(2). In this case the Court's Order has already taken away the Petitioner's right to contest having the Motion to Vacate stricken from the record and to present all grounds for relief available to him. The Petitioner has no less than nineteen (19) separate grounds for relief pursuant to 28 U.S.C. §2255, and any violation of the 25-page restriction on filing under Local Rule 3.01(a), is 'nonwillful', as contemplated by Fed.R.Civ.P. 83(a)(2), by necessity.

According to Title 28, Part VI, Chapter 153, Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2 (hereafter "Rule 2"), subsection (b) requires that the motion *must* (1) specify all grounds for relief available to the moving party; and (2) state facts supporting each ground. (Rule 2(b)). The Petitioner is therefore *required* to include all nineteen grounds for relief and their supporting facts in his Motion to Vacate. The Petitioner cannot possibly file all these "on the form itself," as required by the Order (Doc. 5, pg. 2, at 1.), and therefore he cannot "*fully*" comply with the Order, which "will result in the dismissal of this action without further notice." The Court's striking of the Motion to Vacate was therefore a violation of Rule 2(b), and Fed.R.Civ.P. Rule 83(a)(2), and the requirements for filing an Amended Motion to Vacate are in direct conflict with the Rules Governing 2255 Proceedings.

Rule 2, subsection (c), also states that the motion must "substantially follow either the form appended to the Rules Governing Section 2255 Proceedings for the United States District Courts or a form prescribed by a local district court rule..." Rule 2(c). The Clerk of the Court provided the Petitioner with the model form found in Rules Governing Section 2255 Proceedings for the United States District Courts, Appendix of Forms (labled on the form as "AO 243 (Rev. 01/15)"), which has been adopted by the Middle District of Florida as the standard form for compliance with Rule 2(c). The instructions on page 1 of AO 243 (Rev. 01/15), at #5, specifically say: "Answer all the questions... You may submit additional pages if necessary." And in bold letters, number 9 says: "CAUTION: You must include in this motion all the grounds for relief from the conviction or sentence that you are challenging. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date."

Corresponding to numbers 5 and 9, on page 1 of the form, is the instruction on page 5, at 12, which says: "For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds..."

These instructions on the model form must be followed in accordance with Rule 2(c). The instructions, and requirements of Rule 2(b) do not contain any restrictions on filing length, but require the Petitioner to state "all grounds for relief," regardless of whether there are four grounds or one hundred. All grounds must be raised, no matter how many extra

pages are required.

A local rule cannot be applied in a way which is inconsistent with the Federal Rules of Civil Procedure, and the Federal Rules of Civil Procedure trump inconsistent local rules. The local rules of federal district courts must be enacted and interpreted in harmony with the general rules of practice and procedure prescribed by Congress, Pindale v. Nunn, 248 F.Supp.2d 361, and other Eleventh Circuit cases have recognized that local rules "cannot conflict with the federal rules," and "the enforcement of local rules must be tempered with consideration of the circumstances," Jones v. Pandey, 390 F.Supp.2d 1371 (M.D. Ga. 2005).

Accordingly, a motion under 28 U.S.C. §2255 cannot be refused or stricken from the record on the basis of excess length or form, regardless of the 25-page limit imposed by Local Rule 3.01(a), when doing so denies a pro se petitioner the ability to present all the available grounds for relief, and their supporting facts, as required by Rule 2(b). Nor can the Court order the Petitioner to limit his motion to only 25 pages, or require that he only set forth his claims and supporting facts "on the form itself," as it did in its Order (Doc. 5), when the form provided in accordance with Rule 2(c) instructs him to "submit additional pages if necessary," and "attach additional pages if you have more than four grounds."

The Court's Order of September 27, 2017, was therefore unlawful, as the Petitioner is required to file his Motion to Vacate in accordance with Rule 2(b) and 2(c), and Fed.R.Civ.P. Rule 83(a)(2) prevents any court from enforcing a local rule's requirement of form in a way that would cause the Petitioner to lose his right to file a motion under §2255 due to his compliance with the Rules Governing Section 2255 Proceedings.

WHEREFORE, as the Court lacked the lawful authority to enter its Order (Doc. 5) striking the Petitioner's Motion to Vacate (Doc. 1) due to a violation of Local Rule 3.01(a), and as its requirements for filing an Amended Motion to Vacate directly contradict the Rules Governing Section 2255 Proceedings for the United States District Courts, as well as Fed. R. Civ. P. Rule 83(a)(2), the Petitioner respectfully requests that the Court VACATE its Order of September 27, 2017, as it relates to the Petitioner's Motion to Vacate (Doc. 1), and thereafter enter an ORDER to reinstate the stricken Motion to Vacate and permit it to remain as a valid filing, and any other equitable relief as may be appropriate to ensure that the 85 pages which were returned to the Petitioner by the Clerk are properly filed and included on the record again, and subsequently ruled upon, based on the merits of the motion.

Respectfully Submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

## STATEMENT UNDER PENALTY
## OF PERJURY

I, Jonathan Prive, acting pro se, do hereby swear under
penalty of perjury that the facts and statements contained in
the foregoing MOTION TO VACATE ORDER AND PERMIT FILING
are true and correct to the best of my knowledge and understanding.
Executed on this, the 25th day of October, 2017.
Signed: _____
          Jonathan T. Prive

Respectfully submitted,

Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

## CERTIFICATE OF SERVICE

I, Jonathan Prive, acting pro se, do hereby certify that a true and correct copy of the foregoing MOTION TO VACATE ORDER AND PERMIT FILING, and its accompanying STATEMENT UNDER PENALTY OF PERJURY, have, on this day, been placed in the Brevard County Jail's internal mailing system, marked "LEGAL MAIL", to be sent by U.S. Mail to the following parties:

1) United States District Court
   Office of the Clerk
   United States Courthouse
   401 W. Central Blvd., Suite 1200
   Orlando, FL 32801

and:

2) The United States Attorney's Office
   400 W. Washington Street
   Suite 3100
   Orlando, FL 32801

Executed on this, the 27th day of October, 2017

Signed: _____
         Jonathan T. Prive

Civ. Doc. 9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

          Petitioner,

v.

                                              Case No:  6:17-cv-1498-Orl-28KRS
                                                    (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

          Respondent.

_____/

## ORDER

    This cause is before the Court on Petitioner's Motion to Vacate Order and Permit Filing (Doc. 8).  Upon consideration, the motion is **DENIED**.

    **DONE** and **ORDERED** in Orlando, Florida on November 2___, 2017.

                                               JOHN ANTOON II
                        UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
OrlP-2 11/1

Civ. Doc. 10

FILED

UNITED STATES DISTRICT COURT

2017 NOV 13 PM 3:03     MIDDLE DISTRICT OF FLORIDA

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE            CASE No.: 6:17-cv-1498-Orl-28KRS

V.                                       (6:14-cr-00033-Orl-28KRS)

UNITED STATES OF AMERICA,


PETITION FOR REHEARING


Now comes the Petitioner, Jonathan Prive, pro se, with a petition
for rehearing pursuant to the Court's Order of November 2, 2017
(Doc. 9), denying the Petitioner's Motion to Vacate Order and Permit
Filing (Doc. 8). Petitioner's Motion to Vacate Order stated that
the court's Order of September 28-27, 2017 (Doc. 5) was in
direct conflict with the Federal Rules of Civil Procedure and the
Rules Governing Section 2255 Proceedings for the United States
District Courts, and was therefore unlawful.

The Order (Doc. 5) struck the Petitioner's Motion to Vacate, Set
Aside, or Correct Sentence under 28 U.S.C. §2255 because it exceeded
25 pages in length, violating Local Rule 3.01(a). The Order then
instructs the Petitioner to file an Amended Motion to Vacate, requiring
that it be written on the form prepared and provided by the Clerk,
and not exceed 25 pages in length. (Doc. 5, at 1)

The requirement that the Petitioner's grounds for relief be "on the
form itself" limits the Petitioner to only four (4) grounds, as the
form only contains four spaces for grounds. This restriction is in
direct opposition to Rules Governing Section 2255 proceedings, Rule 2(b).

Rule 2(b) requires petitioners to present "all grounds for relief available to the moving party." The Petitioner has nineteen grounds for relief available to him, and in the Motion to Vacate Order (Doc. 8), Petitioner properly highlighted the conflict between the Court's Order and Rule 2(b). The Court's Order, and its Order Denying Motion to Vacate (Doc. 9) therefore constitute an abuse of discretion, as well as clear error. See Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336 (11th Cir 2002) (finding that a district court abuses its discretion when, in reaching a decision, "it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous.")

Petitioner's Motion to Vacate Order also alleged that the Court's Order (Doc. 5) violated Fed. R. Civ. P. Rule 83(a)(2), which prohibits any court from enforcing a local rule of form "in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). This rule supersedes any local rule, such as the 25-page limit of Local Rule 3.01(a), which was the basis of the Court's Order (Doc. 5). The Court's continuing attempt to enforce Local Rule 3.01(a) results in the Petitioner being denied the right to file a complete motion under 28 U.S.C. §2255. The Court's prepared form, which the Petitioner must use, is 13 pages long, and allows for only 4 grounds for relief. Therefore, the Petitioner must attach additional pages as allowed by the form's instructions, even though it violates the Court's Order to do so (Doc. 5, at 1).

Rules Governing Section 2255 Proceedings, Rule 2(b) specifically requires the Petitioner to state every available ground for relief, and this requires the attachment of additional pages in excess of the 25

page limit imposed by Local Rule 3.01(a). The violation of
3.01(a) is therefore 'nonwillful' on the part of the Petitioner,
since he must follow the Rules Governing Section 2255 Proceedings,
and the Court's Order (Doc. 5), and its Order denying the Motion
to Vacate Order (Doc. 9) constitute an abuse of discretion and
plain error.

WHEREFORE, as the Petitioner has presented specific citations
of controlling federal law, and as the Court's Orders are in
clear conflict with those laws, the Petitioner respectfully requests
that the Court enter an ORDER to VACATE its previous orders
(Docs. 5 and 9), and thereafter GRANT the Petitioner the relief
sought by his Motion to Vacate Order and Permit Filing (Doc. 8).

Respectfully submitted,
Jonathan Prive
#337795
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

## SWORN STATEMENT

I, Jonathan Prive, do hereby swear under penalty of perjury that the facts and statements contained in the foregoing PETITION FOR REHEARING are true and correct to the best of my knowledge and understanding.

Executed on this, the 7th day of November, 2017.

Signed: _____

Jonathan T. Prive

## CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify that a true and correct copy of the foregoing PETITION FOR REHEARING, and the SWORN STATEMENT, have been placed in the Brevard County Jail's internal mailing system, marked "LEGAL MAIL", to be sent by U.S. Mail to the following parties:

1) United States District Court
   Office of the Clerk
   United States Courthouse
   401 W. Central Blvd., Suite 1200
   Orlando, FL 32801

and:

2) The United States Attorney's Office
   400 W. Washington Street
   Suite 3100
   Orlando, FL 32801

On this, the 8th day of November, 2017.
Signed: Jonathan T. Prive
         Jonathan T. Prive
Date: 11/8/2017

Civ. Doc. 14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

                Petitioner,

v.                                                Case No:  6:17-cv-1498-Orl-28KRS
                                                      (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

                Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner's Motion for Reconsideration (Doc. 10). Upon consideration, it is **ORDERED** as follows:

1.      Petitioner's Motion for Reconsideration (Doc. 10) is **DENIED**.  The Court previously denied this request.

2.      The Court entered an Order on September 27, 2017 (Doc. 5) directing Petitioner to file an Amended Motion to Vacate within fourteen days from the date of this Order.  On October 12, 2017, the Court granted Petitioner an extension of time until November 10, 2017, to comply. (Doc. 7).  As of the date of this Order, Petitioner has failed to do so.  Petitioner shall have until December 27, 2017, to file an Amended Motion to

Vacate.  The failure to do so shall result in the dismissal of this case without further notice.

**DONE** and **ORDERED** in Orlando, Florida on December ⎽1⎽3⎽, 2017.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
OrlP-2 12/13

2

Civ. Doc. 15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

          Petitioner,

v.                                  Case No:  6:17-cv-1498-Orl-28KRS
                                            (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

          Respondent.
_____/

## ORDER

This cause is before the Court upon *sua sponte* review of the file.  On September 27, 2017, the Court entered an Order (Doc. 5) requiring Petitioner to file an Amended Motion to Vacate within fourteen days from the date of the Order.  On October 12, 2017, the Court granted Petitioner an extension of time until November 10, 2017, to comply.  (Doc. 7).  Petitioner failed to do so, and, on December 13, 2017, the Court allowed Petitioner until December 27, 2017, to file an Amended Motion Vacate.  (Doc. 14).

The Court notified Petitioner in each of the above-mentioned Orders that the failure to file an Amended Motion to Vacate would result in the dismissal of this case without further notice.  As of the date of this Order, Petitioner has failed to comply, and this case will be dismissed without prejudice.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.      This case is **DISMISSED without prejudice.**

2.     The Clerk of the Court is **DIRECTED** to close this case and to enter judgment dismissing this case without prejudice.

3.     A copy of this Order and the judgment shall also be filed in criminal case number 6:14-cr-33-Orl-28KRS.  The Clerk of the Court is directed to terminate the section 2255 motion (Criminal Case Doc. 129) filed in criminal case number 6:14-cr-33-Orl-28KRS.

**DONE** and **ORDERED** in Orlando, Florida on January 3, 2018.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
OrlP-2 1/3

2

Civ. Doc. 16

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JONATHAN TYLER PRIVE,**

              **Petitioner,**

**v.**                               **Case No:  6:17-cv-1498-Orl-28KRS**

                               **Criminal Case No. 6:14-cr-33-ORL-28KRS**

**UNITED STATES OF AMERICA,**

              **Respondent.**

_____

## JUDGMENT

      **IT IS ORDERED AND ADJUDGED** that pursuant to the Court's Order entered January 3, 2018, the Petitioner's motion to vacate, set aside or correct sentence, is hereby denied.  This case is **DISMISSED** without prejudice.

Date: January 4, 2018

                            ELIZABETH M. WARREN, CLERK


                            s/S. Manuel                     
                            By:    S. Manuel, Deputy Clerk


Copies furnished to:

Counsel of Record
Unrepresented Parties

<p style="text-align:center"><strong>CIVIL APPEALS JURISDICTION CHECKLIST</strong></p>

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable.  A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  <u>Pitney Bowes, Inc. V. Mestre</u>, 701 F.2d 1365, 1368 (11th Cir. 1983).  A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), <u>Williams v. Bishop</u>, 732 F.2d 885, 885-86 (11th Cir. 1984).  A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**:  Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed."  Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:**  The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals.  The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: <u>Cohen V. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); <u>Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F. 2d 371, 376 (11th Cir. 1989); <u>Gillespie v. United States Steel Corp.</u>, 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing:** The timely filing of a notice of appeal is mandatory and jurisdictional.  <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001).  In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from.  However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within  60 days after such entry.  **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.**  Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal.  Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause.  Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing.  Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format.  <u>See also</u> Fed.R.App.P. 3(c).  A <u>pro se</u> notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Civ. Doc. 17

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA       CASE No.:

v.                             6:14-cr-00033-JA-KRS-1

JONATHAN TYLER PRIVE  ,        (6:17-cv-01498-JA-KRS)

## In re PRIVE

   Comes now the Petitioner, Jonathan Prive, pro se, with a petition for a writ of mandamus pursuant to Fed. R. App. P. Rule 21.
   Your Petitioner seeks relief from this Court in the form of a writ of mandamus directed to the United States District Court, Middle District of Florida, Orlando Division, or to Judge John Antoon, II, as may be appropriate, vacating the Order by Judge Antoon denying Petitioner's motion to have him recused under 28 U.S.C. §144, thereafter directing Judge Antoon be disqualified from proceeding further in this case and replaced in accordance with §144. Your Petitioner also seeks to have Judge Antoon's Orders striking Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 and dismissing Petitioner's civil case, in violation of Fed. R. Civ. R Rule 83, and the Rules Governing Section 2255 Proceedings for the United States District Courts, vacated pursuant to this same petition, and the writ issued directing the District Court to allow your Petitioner to file an Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 in accordance with those Rules.

Your Petitioner believes these issues are properly the subject of a single petition because Petitioner sought to have Judge Antoon recused prior to the filing of the §2255 motion due to, *inter alia*, Petitioner's intent to accuse Antoon of bias and misconduct as grounds for relief, and a fear that this would result in unfair treatment of the motion. Petitioner believes that the striking of his §2255 motion and dismissal of his civil case stem from the same bias and conflict of interest which formed the basis for recusal, and that he has no other available and adequate remedy for these issues except for the issuance of a writ of mandamus.

Judge Antoon has refused to recuse himself, despite the filing of a timely and adequate motion to disqualify under 28 U.S.C. §144, and despite the affirmative responsibility to do so under 28 U.S.C. §455. He has also stricken the Petitioner's §2255 motion for a violation of a local Rule of form, in violation of Fed. R. App. P. 83 (a)(2), and Rules Governing Section 2255 Proceedings, Rule 2, and dismissed the Petitioner's civil case because Petitioner could not lawfully file an Amended Motion to Vacate under §2255 in accordance with the restrictions imposed by his Order.

After multiple petitions for rehearing, and motions for relief based on plain error and abuse of discretion, your Petitioner has exhausted his locally available remedies and now seeks intervention and relief from the Court of Appeals.

The Motion for Disqualification:

On August 1, 2017, Petitioner filed a pro se Motion for Disqualification of Judge (Doc. 127) pursuant to 28 U.S.C. §144, seeking to have Judge John Antoon, II, removed from the

case. As grounds for the motion, Petitioner listed seven (7) facts which he believed showed bias or prejudice existed:

1. Antoon was expected to hear the Petitioner's §2255 motion.

2. Petitioner intended to submit as grounds for the motion that he did not receive fair and unbiased treatment from Antoon in District Court, and Antoon abused his discretion.

3. Antoon made a drastic departure from well-established procedure and prevented the Petitioner from having all four of the factors in a Buckles inquiry addressed in court.

4. Antoon ruled Petitioner's legal argument on a motion pursuant to Fed.R.Crim.P. 12(b)(3)(B) was meritless, but then ruled that same exact argument was valid when the government used it only minutes later.

5. Antoon made baseless comments referring to the Petitioner 'torturing' and 'raping' a child when nothing of the sort was ever reported, and claimed that Petitioner showed "an extraordinarily unusual appetite for cruelty, just plain meanness really" when nothing of the sort was ever suggested in the record.

6. Antoon admitted during sentencing that he had prejudged the issue, and that even though he had signed a plea agreement to give Petitioner a guideline sentence, "The sentence would have been the same if I had sustained the objections of the defendant to the proposed guideline score and overruled the government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case, in my view." Thus, Antoon expressed willingness to disregard facts and arguments, as well as binding plea agreements, preventing fair hearings to satisfy his own desire for punishment.

7. Antoon fabricated a chronological narrative of Petitioner's

supposed actions which was not only unsupported by evidence, but which was repeatedly and conclusively shown to be rebutted by the record. This ficticious series of events was loosely based on facts from the case, but was entirely inaccurate, and even included an entirely new event (alleging Petitioner stopped to make a purchase just prior to his arrest) which never occurred, and which was invented from whole cloth. This fabricated narrative was presented in the Court's Sentencing Memorandum (Doc. 100) and served no other purpose but to demonize the Petitioner and justify a lengthy sentence. Such fabrication is plainly prejudicial.

Your Petitioner concluded the Motion to Disqualify by stating his belief that the grounds set forth constituted a pattern of bias and prejudicial acts which would lead to a reasonable fear that he would not receive fair treatment from Antoon in future proceedings, such as the anticipated $2255 motion (Doc. 129, filed fifteen days later, on August 16, 2017.).

On August 24, 2017, after the $2255 motion had been filed and the conflict of interest was known to exist, Antoon denied the Motion to Disqualify in an Order (Doc. 130) which claimed Petitioner did not include an affidavit and certificate of good faith, and the motion was therefore procedurally inadequate under the requirements of $144.

On September 5, 2017, Petitioner filed a *pro se* Appeal From Order Denying Defendant's Motion for Disqualification of Judge for Plain Error, (Doc. 132), which the Court construed as a petition for rehearing. The Petitioner showed, via an attached copy of the original filing (Doc. 132, exhibit A), that the motion had

indeed contained a legally sufficient statement of good faith, and the Court had committed plain error.

On September 26, 2017, Antoon issued an Order (Doc. 133) in which he admitted the motion had in fact contained the statement of good faith, satisfying the requirements of 28 U.S.C. §144. However, when ruling on the motion, Antoon failed to address grounds one and two for recusal (i.e., that he was expected to hear the §2255 motion, which would require him to rule on his own misconduct, creating a conflict of interest). He also proceeded to grossly reinterpret the accusations of prejudicial actions and biased or disparate rulings between the Petitioner and the government, contained in grounds three and four, intentionally reducing these accusations to mere 'dissatisfaction with the rulings.' He also failed to address ground six, which alleged prejudice and bias through his own admission that he had prejudged the case prior to the sentencing.

Although the Motion to Disqualify was brought under 28 U.S.C. §144, and thus the factual allegations must be taken as truth for the purposes of the motion (unlike under §455, which may be contended or argued with), Antoon not only argued against the Petitioner's allegation that he intentionally fabricated a false narrative of events, but Antoon blatantly rewrote the assertion all together.

Antoon's Order says: "Defendant also states that certain facts set forth in the Court's sentencing memorandum were inaccurate." (Doc. 133, pg 3). This is entirely different than the claim that there was intentional fabrication, ignores the

event he created out of whole cloth, and is not what the Petitioner claimed. Antoon then presents a selection of disjointed facts from the case, devoid of any chronological order, and which may have been accurate individually, but were only used as a loose basis for claims which were wholly unsupported by the record, and which were altered and then used to create his fictitious narrative of events in the sentencing memorandum.

As a final insult, Antoon states: "Here, Defendant does not allege that the Court's comments and factual findings were based on matters learned from extrajudicial sources, rather than learned from participation in the case." (Doc. 133, pg 4). This is plainly inaccurate, as the Petitioner repeatedly quoted portions of the record which rebutted Antoon's version of the facts, in the original Motion to Disqualify, and as the Petitioner clearly claimed Antoon fabricated new events from whole cloth and invented a narrative of events rebutted by the record. Not only was Antoon's statement the exact opposite of Petitioner's claim, but anything which is rebutted by the record, or which simply never occurred, is obviously not "learned from participation in the case," and has its plainly extrajudicial source in that it is the product of Antoon's imagination.

Undaunted by the facts, Antoon proceeded to deny the motion under §144 a second time, using the rewritten version of the Petitioner's claims in order to hold that Petitioner had failed to sufficiently allege a basis for disqualification (Doc. 133, pg 5) because there was no extrajudicial source. A finding which is plainly erroneous, considering Petitioner's real claims.

On October 20, 2017, Petitioner filed a pro se Motion for Rehearing (Doc. 134) in which he asserted that Antoon had committed plain error by misapplying the extrajudicial source doctrine and failing to examine all the Petitioner's grounds for disqualification under the pervasive bias standard. Petitioner also asserted that Antoon intentionally mischaracterized the accusation of fabricating a narrative of events and inventing new events from whole cloth. Petitioner then requested that the Court reexamine the original motion with due examination of grounds one, two, and six, which had been ignored, and requesting that full effect be given to the context of the allegations in grounds three, four, and especially seven (Doc. 134, pg 3).

On December 4, 2017, Antoon entered an Order (Doc. 136) denying the Motion for Rehearing, refusing to reexamine the motion, even in light of all the errors above. The Petitioner has thus exhausted his available remedies in District Court.

When a party files a motion for disqualification under 28 U.S.C. §144, all of the factual allegations in a properly pleaded affidavit of bias or prejudice must be taken as true for the purpose of the motion. As such, your Petitioner has the right to have the motion ruled on without argument or rebuttal, like Antoon did in his Order (Doc. 133), and Petitioner has the right to have every ground in that motion considered, free from reinterpretation or rewriting by the judge.

The Petitioner properly filed a timely and sufficient affidavit under §144 that Judge Antoon has a personal bias or

Case 6:17-cv-01498-JA-KRS   Document 17   Filed 04/20/18   Page 8 of 17 PageID 179

USCA11 Case: 18-11693   Document: 19   Date Filed: 11/28/2018   Page: 213 of 241
Case: 18-10386   Date Filed: 04/17/2018   Page: 8 of 88

prejudice against him, or in favor of the United States. Petitioner therefore has a right to the relief offered by §144, and Antoon has a duty to recuse himself accordingly.

Antoon also has a continuing duty to recuse himself under 28 U.S.C. §455, both subsection (a) and (b). An objective individual, fully informed of the facts of the case, might easily question the impartiality of a judge under §455(a) when that judge has been documented making drastic departures from prior case doctrine (ground 3 of Motion to Disqualify, Doc. 127), ruling against the Defendant but in favor of the government on the exact same legal argument (ground 4, id.), admitting to having prejudged the case before a hearing took place (ground 6, id.), and fabricating facts to suit his own views (ground 7, id.).

Beyond the original Motion to Disqualify, an objective observer could also find reason to question the judge's impartiality when that same judge attempts to prevent the success of the motion by making plainly erroneous rulings on its sufficiency (Doc. 130, claiming no statement of good faith) and ignoring multiple grounds in that motion, or when that judge continues to falsify or fabricate facts and occurrances as Antoon has done by blatantly rewriting the Petitioner's statements in his Order (Doc. 133, pgs 3-4). Any time a judge demonstrates an ongoing propensity for ignoring facts and falsifying statements, as Antoon has, it undermines the judicial process and gives rise to the appearance of bias or prejudice sufficient to require that he recuse himself under §455(a).

Even if Antoon's conduct until now was not enough, he has a duty to recuse himself under §455(a) and §455(b)(1), (b)(4), and (b)(5)(iii) because of the conflict of interest

that appeared when Petitioner put forth as grounds for his §2255 motion that Antoon was guilty of bias and prejudice during the District Court Proceedings, and that Petitioner did not believe he would treat the motion fairly.

By keeping himself on the case, Antoon knew he would be the judge who was responsible for ruling on the §2255 motion the Petitioner was going to file. He also knew Petitioner intended to accuse him of abuse of discretion and misconduct, because Petitioner stated this in ground 2 of the Motion for Disqualification he filed. Antoon was thus going to be required to rule on his own misconduct, and anyone in such a situation knows that their impartiality on the issue can reasonably be questioned, requiring they recuse themselves under §455(a). Antoon also has personal knowledge of evidentiary facts concerning the proceeding, requiring his recusal under §455(b)(1), because he is accused of imposing cruel and unusual punishment, in violation of the 8th Amendment, and violating the Petitioner's plea agreement in Ground Five, and biased treatment in grounds Six, Seven, and Eleven of Petitioner's motion under 28 U.S.C. §2255.

Because Antoon is accused of intentionally fabricating a false narrative of events, and disparate rulings because of personal bias or prejudice, in Ground Six of the Motion to Vacate under §2255 he has a personal interest in the outcome of the proceeding. If it is ruled that Antoon has been guilty of misconduct, fabricating facts and occurrences, and imposing cruel and unusual sentences in violation of the plea agreement, Antoon's professional reputation will be damaged, and his conduct might prevent him from advancing his career. A judge who is known to prejudge issues, violate binding agreements,

Case 6:17-cv-01498-JA-KRS Document 17 Filed 04/20/18 Page 10 of 17 PageID 181

USCA11 Case: 18-11693 Document: 18 Date Filed: 11/28/2018 Page: 215 of 241
Case: 18-11693 Document: 10 Date Filed: 04/19/2018 Page: 10 of 88

and fabricate false reports of events which never happened, is highly unlikely to be appointed to any higher office, and may potentially be removed from their current position. Antoon thus has an interest which could be substantially affected by the outcome of the proceedings, and has a clear obligation to recuse himself under §455(a), (b)(4), and (b)(5)(iii).

The Motion Under §2255:

On August 16, 2017, fifteen days after the Motion to Disqualify had been filed, and while that motion was still pending its first ruling, Petitioner filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. 129). The motion consisted of a Motion to Proceed in forma pauperis, a financial affidavit, a statement of interested persons, request for hearing, and some seventy-two (72) pages of answers to the thirteen (13) page pre-printed §2255 form which was included therewith. The 72 handwritten pages contained grounds and supporting facts.

The Motion to Vacate was filed in compliance with Title 28, Part VI, Chapter 153, Rules Governing Section 2255 Proceedings for the United States District Courts, and contained nineteen (19) separate grounds for relief, along with supporting facts, in accordance with Rule 2(b). A civil case number: 6:17-cv-01498-JA-KRS was assigned to the action, and the motion became Doc. 1 in that case. It was followed by a twenty (20) page brief (Doc. 2) on August 18, 2017.

On September 27, 2017, the day after Judge Antoon ordered the Motion to Disqualify denied (Doc. 133) for a second time, Antoon entered an Order in the civil action (Doc. 5) striking

Case: 18-11693   Document: 18   Date Filed: 04/17/2018   Page: 11 of 83

Petitioner's Motion to Vacate under §2255 and directing the Clerk of Courts to remove it from the record and return it to the Petitioner.

As grounds for his actions, Antoon stated: "The Motion to Vacate greatly exceeds twenty-five pages in length and violates Local Rule 3.01(a)." (Doc. 5, page 1). (Local Rule 3.01(a) is a local rule of form which limits the length of motions to no more than 25 pages). The Order goes on to direct the Clerk to "terminate this motion" (Doc. 5, pg 1) and instructs the Petitioner to file an Amended Motion to Vacate within fourteen days. The Order says the Amended Motion to Vacate must be "on the appropriate Motion to Vacate, Set Aside, or Correct Sentence form" (ibid).

"As to each claim, Petitioner must set forth on the form itself a brief and concise description of the claim with supporting facts... The failure to **fully** comply with this Order will result in the dismissal of this action without further notice." (Doc. 5, pg 2) (italic and bold font in original). "...this case will then proceed with regard to the claims raised in the Amended Motion to Vacate only... Any claims not included therein will be deemed waived or abandoned by Petitioner. The failure to fully comply shall result in the dismissal of this case without further notice." (Doc. 5, pg 2)

"2. The Clerk of the Court is directed to provide the appropriate Motion to Vacate, Set Aside, or Correct Sentence form to the Petitioner." (ibid.)

The form used by the Middle District and sent to Petitioner has only four (4) small areas in which to state grounds for relief. (see Exhibit A, attached to this motion). Antoon's instructions require Petitioner to use only the printed form, and anything not included

on that form would be "deemed waived or abandoned." Antoon's
Order thereby forces Petitioner to 'abandon' fifteen of his
available nineteen 'available grounds for relief,' and the repeated
emphasis of the Order on "*fully*" complying with the Order
makes it clear that if the Petitioner tried to file anything
except the form itself, the case would be dismissed.

 

   After requesting an extension of the fourteen day time limit
in the order, and being granted an extension to file until
November 10, 2017 (see Docs. 6 and 7), Petitioner filed a Motion
to Vacate Order and Permit Filing (Doc. 8), seeking to vacate
Antoon's Order (Doc. 5) because it was in significant conflict with
Fed. R. Civ. P. Rule 83 (a)(2) and the Rules Governing Section
2255 Proceedings for the United States District Courts (hereinafter
'Rule 2') Rule 2(b).

   The motion quotes Fed. R. Civ. P. 83(a)(2), which states: "A Local
Rule imposing a requirement of form must not be enforced in a
way that causes a party to lose any right because of a nonwillful
failure to comply." The motion then contends that Antoon's
Order forcing Petitioner to use only the form provided to him by
the Clerk denies him the right to present all available grounds
for relief, as does limiting him to 25 pages or less, under Local
Rule 3.01(a) (which is a "rule of form"). Petitioner asserts that
any violation of Local Rule 3.01(a) is "nonwillful" because the
Petitioner is required by Rule 2(b) to "specify all grounds for
relief available to the moving party" and to "state facts
supporting each ground." (Rules Governing 2255 Proceedings, Rule 2(b))

   Petitioner explained that it was impossible to comply with the
Order (Doc. 5) because it would deny him the right to present all

available grounds for relief, and stated that the Court lacked the lawful authority to strike the Motion to Vacate (Doc.1) and impose the restrictions in its Order, because of Fed.R.Civ.P. 83(a)(2), the instructions on the printed form itself (which must comply with Rule 2, according to Rule 2(c)), and because of the mandate in Rule 2(b).

On November 2, 2017, Antoon issued a terse denial (Doc.9) of the Petitioner's Motion to Vacate (Doc.8), without discussion or findings of fact and law.

On November 13, 2017, Petitioner filed a Motion for Rehearing (Doc.10), stating that the Court's denial of the Motion to Vacate was both an abuse of discretion and plain error, again citing specific federal law.

On December 13, 2017, Antoon denied the motion for rehearing, stating "The Court previously denied this request," though Petitioner had not asked for any rehearing on the Motion to Vacate before. Antoon again issued no findings on the merits of the motion, but noted that the Petitioner had not filed an Amended Motion to Vacate, in accordance with his order (Doc. 5), and sua sponte issued another extension until December 27, 2017, in which to do so. Antoon again said that failure to do so would "result in the dismissal of this case without further notice." (Doc. 14, pg1).

Petitioner could not comply with the Court's unlawful restrictions (Doc.5) without severely hampering his §2255 motion and thus

surrendering the constitutional right to adequately defend himself, violating Rule 2(b) in the process, and did not file an Amended Motion to Vacate in accordance with Antoon's Order. Instead, Petitioner began attempting to gather the writing materials necessary for filing this petition, and has dilligently worked to complete it as soon as possible.

On January 3, 2018, Antoon issued an Order (Doc. 15) dismissing the civil case without prejudice (Doc. 15, pg1, at 1) and ordering the Clerk of the Court to close the case (Doc. 15, pg 2, at **2**).

After ordering the case closed, Antoon took the additional step of issuing a judgment on January 4, 2018, which denied the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. This seems to be nothing more than an attempt to procedurally bar any future §2255 motions by ruling it 'denied', and is an invalid ruling by Antoon because he had already ordered the only §2255 motion filed stricken and removed from the record. With the case dismissed and closed already, and the original motion already stricken by his previous Order (Doc. 5), this denial of the §2255 motion should be moot, and itself stricken, to prevent any procedural problems with subsequent motions.

Your Petitioner has a clear right to file a motion for relief under 28 U.S.C. §2255 in accordance with the Rules Governing Section 2255 Proceedings, and to be able to present all available grounds for relief without interference by Judge Antoon. The District Courts and their judges have a clear duty to enforce the Rules, and to uphold the constitutional guarantee of adequate

representation embodied in the Sixth Amendment. They also have the duty to enforce federal laws, such as Fed. R. Civ. P. 83(a)(2). Despite repeated demands that Judge Antoon do his duty and uphold the law by obeying the Rules of Civil Procedure and the Rules Governing 2255 Proceedings, your Petitioner has been unable to obtain relief in the District Court and now seeks the help of the Court of Appeals. In the interest of justice, your Petitioner prays that the Court will issue its writ to include relief on this issue as well, providing him with the opportunity to file an Amended Motion to Vacate under §2255 free from coercion and undue restrictions.

Your Petitioner has spent a great deal of time and effort fighting to secure what should be granted to every man: the simple chance to have the entirety of his defense decided on the merits by an uninterested, impartial judge. Until now, your Petitioner's claims have been blocked, ignored, marginalized, mischaracter-ized, and outright re-written, preventing any hope of a fair hearing or due process, and begs only to be given a fair chance of obtaining justice


WHEREFORE, having established that the District Court has failed to perform its duty under 28 U.S.C. §144 and §455, and has not upheld its duty to enforce the Federal Rules of Civil Procedure or the Rules Governing Section 2255 Proceedings for the United States District Courts, and as your Petitioner has a clear right to the performance of those duties, your Petitioner respectfully prays that the Court issue its writ directing the performance of those duties, and granting such equitable relief as it deems appropriate to ensure the interests of justice are served.

# <u>SWORN STATEMENT</u>

I, Jonathan Prive, do hereby swear under penalty of
perjury that the facts and statements contained in the
foregoing petition for a writ of mandamus, titled "In re
PRIVE," are true and correct to the best of my knowledge
and understanding.

Executed on this, the 21st day of January, 2018.

Signed: _____

Jonathan T. Prive

Respectfully submitted,

Jonathan Prive

#337795

Brevard County Jail

860 Camp Road

Cocoa, FL 32927

# CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify that a true and correct copy of the foregoing petition for a writ of mandamus, titled "In re Prive", has on this day been placed in the Brevard County Jail's internal mailing system, along with the accompanying records, to be sent to the following persons:

- United States Court of Appeals
  Eleventh Circuit
  Office of the Clerk
  56 Forsyth Street, N.W.
  Atlanta, GA 30303

- The Office of the United
  States Attorney
  400 W. Washington Street
  Suite 3100
  Orlando, FL 32801

- The Honorable Judge John Antoon, II
  c/o The United States Courthouse
  401 W. Central Blvd.
  Orlando, FL 32801

Executed on this, the 29th day of January, 2018.
Signed: _Jon T. P_
        Jonathan T. Prive

Civ. Doc. 19

FILED

UNITED STATES DISTRICT COURT 2018 MAY 10 PM 1:43
MIDDLE DISTRICT OF FLORIDA US DISTRICT COURT
ORLANDO DIVISION                MIDDLE DISTRICT OF FLORIDA
                                ORLANDO, FLORIDA

JONATHAN TYLER PRIVE          CASE No.: 6:17-cv-01498-JA-KRS
v.                                    (6:14-cr-00033-JA-KRS)
UNITED STATES OF AMERICA ,

## REQUEST FOR LEAVE TO APPEAL
## IN FORMA PAUPERIS

COMES NOW the Defendant, Jonathan Prive, pro se, with a request for leave to appeal, in forma pauperis, from the order by Judge John Antoon, II, dismissing the Defendant's motion to vacate sentence under 28 USC. §2255 and closing the case without granting the Defendant leave to amend or refile, and the order denying the Defendant's motion to recuse under 28 U.S.C. § 144.

The United States Court of Appeals for the Eleventh Circuit entered an order on April 17, 2018, directing the Clerk to transmit the Defendant's petition for a writ of mandamus to the District Court (Case No. 18-10386-F, In re JONATHAN TYLER PRIVE), and have it docketed as a timely Notice of Appeal from the January 3, 2018, order dismissing the §2255 case in Civil Docket No. 6:17-cv-01498-JA-KRS, and from the August 24, 2017 order denying the Defendant's "Motion to Disqualify Judge" in Criminal Docket No. 6:14-cr-00033-JA-KRS-1. (see Order of April 17, 2018, pgs. 3-4).

The Defendant's petition for a writ of mandamus, which has become the Notice of Appeal in the above cases, included a motion for leave to proceed in forma pauperis, as well as an indigency affidavit in which he declares no monthly income, $62.70 in monthly expenses made up of food and medical expenses, no assets, and

which included an inmate balance expense report showing that he owed $2,464.20 to his correctional institution, as of Feburary 8, 2018. This motion for leave to proceed in forma pauperis should have been included with the original petition for a writ of mandamus, which has now been docketed as a Notice of Appeal in District Court, since the Court of Appeals has elected to construe the petition as the Notice of Appeal.

The Court's Order of April 17, 2018, found that the Defendant satisfies the poverty requirement of 28 U.S.C. §1915(a), and the Defendant was not informed of any requirement that he file another request for leave to proceed informa pauperis, nor did he have an opportunity to do so, prior to the Clerk's execution of the Court's Order. The case has since been assigned Appeal Number 18-11693-EE, and the Defendant has been notified that the Court of Appeals is awaiting the Appellant's Brief.

The Defendant suggests that the motion to proceed in forma pauperis in the filing of the petition for a writ of mandamus satisfies the requirement that a Defendant, upon filing a notice of appeal, request leave to appeal in forma pauperis, in this particular case, in light of the order by the Court of Appeals.

On April 29, 2018, the Defendant received a notice of transmittal of the initial appeal package (Doc. 142 in Criminal Docket and Doc. 18 in Civil Docket, respectively), and a copy of Doc. 142, page 1, states that the filing fee was not paid, and that the appellant must pay the fee or submit a motion for leave to proceed in forma pauperis. This is similarly noted in Docket No. 18 in 6:17-cv-01498-JA-KRS.

The Defendant believes this requirement to have been satisfied, but, in an effort to resolve the issue and prevent further delays, and as he did not have an opportunity to do so prior to the Clerk's filing of the Notice of Appeal, the Defendant now makes the following declaration:

The Defendant does hereby swear that he has been continually incarcerated since November 5, 2013, and has no income from any employment, stocks, trusts, annuities, or any other sources. The Defendant does not have any bank accounts, savings, bonds, or any available lines of credit. He does not have any real property, material goods, or any kind of stocks, bonds, or other estate which might be sold in order to pay filing

fees or court costs. He is not the beneficiary of any trust or inheritance. The Defendant currently owes over $2,500 to his correctional institution, and has no way to pay any filing fees or court costs. The Defendant has no reason to believe that his financial situation will change or that he will become able to pay at any time in the forseeable future.

WHEREFOR, due to his poverty, and for the reasons stated herein, the Defendant respectfully requests leave to appeal *in forma pauperis*.

Respectfully submitted,

Jonathan Prive

#337795

Brevard County Jail

860 Camp Road

Cocoa, FL 32927

## SWORN STATEMENT

I, Jonathan Prive, do hereby swear under penalty of perjury that the facts and statements contained in the foregoing REQUEST FOR LEAVE TO APPEAL IN FORMA PAUPERIS are true and correct to the best of my knowledge and understanding.

Executed on this, the 8th day of May, 2018.
Signed: _____
    Jonathan T. Prive

# CERTIFICATE OF SERVICE

I, Jonathan Prive, do hereby certify that a true and correct copy of the foregoing has, on this day, been placed in the Brevard County Jail's internal mailing system, to be sent by U.S. Mail to the following parties:

- Ilianys Rivera Miranda
  U.S. Attorney's Office
  Suite 3100
  400 W. Washington St.
  Orlando, FL 32801

- The Clerk of Court
  George C. Young U.S. Courthouse
  401 W. Central Blvd.
  Suite 1200
  Orlando, FL 32801-0120

- The United States Court of Appeals, Eleventh Circuit
  Office of the Clerk
  56 Forsyth Street, N.W.
  Atlanta, GA 30303

Executed on this, the 8th day of May, 2018.
Signed: _____
          Jonathan T. Prive

Civ. Doc. 20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN TYLER PRIVE,

          Petitioner,

v.                                 Case No:  6:17-cv-1498-Orl-28KRS
                                 (6:14-cr-33-Orl-28KRS)

UNITED STATES OF AMERICA,

          Respondent.
_____/

## ORDER

      This cause is before the Court on Petitioner's Motion for Leave to Proceed *In Forma*

*Pauperis* on Appeal (Doc. 19).  Upon consideration, it is **ORDERED** that Petitioner's

motion is **DENIED**.  Any appeal by Petitioner would not be taken in good faith under

Federal Rule of Appellate Procedure 24(a) because Petitioner has failed to make a

substantial showing of the deprivation of any federal constitutional right.   Thus,

Petitioner is not entitled to appeal as a pauper and shall pay the appellate filing fee as

required by 28 U.S.C. § 1915(a).

      **DONE** and **ORDERED** in Orlando, Florida on May 14, 2018.

                                 _____
                                  JOHN ANTOON II
                            UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Party
OrlP-2 5/11

# App. Docket

This case was appealed from
Florida Middle: <u>6:14-cr-00033-JA-KRS</u>, <u>6:17-cv-01498-JA-KRS</u>

---

## U.S. Circuit Court of Appeals

US Circuit Court of Appeals - 11th Circuit

### 18-11693

### Jonathan Prive v. USA

This case was retrieved from the court on Wednesday, November 21, 2018

---

## Header

|  |  |
|--:|:--|
| Case Number: | 18-11693 |
| Date Filed: | 04/24/2018 |
| Date Full Case Retrieved: | 11/21/2018 |
| NOS Description: | (510) 2510: Prisoner Petition-Vacate Sentence: Appeal |

[<u>Summary</u>] [<u>Associated Cases</u>] [<u>Participants</u>] [<u>Proceedings</u>] [<u>Pending Motion</u>] [<u>Brief</u>] [<u>Rehearings</u>] [<u>History</u>] [<u>Additional Case</u>]

---

## Summary

No Information is Available for this case

<u>Back to Top</u>

## Associated Cases

| Case Number | Relationship | Lead Case | Member Case | Additional Information |
|---|---|---|---|---|
|  | Current Case: Related | 18-10386 | 18-11693 | StartDate: 04/24/2018 |
| 15-12032 | Prior cases: |  |  | Filed: 05/05/2015 Disposed: 05/24/2016 Disposition: Affirmed |

<u>Back to Top</u>

## Participants

| Litigant | Attorney |
|---|---|
| Jonathan Tyler Prive<br>Petitioner - Appellant<br>Prisoner Number: Federal Prisoner: 337795 | Jonathan Tyler Prive<br>[NTC Pro Se]<br>Brevard County Jail - Inmate Legal Mail<br>860 Camp RD<br>Cocoa, FL 32927 |
| United States of America<br>Respondent - Appellee | Roberta Josephina Bodnar<br>[COR LD NTC US Attorney]<br>U.S. Attorney's Office - FLM<br>35 Se 1st Ave Ste 300<br>Ocala, FL 34471<br>352-547-3600<br><br>U.S. Attorney Service - Middle District of Florida<br>[COR NTC US Attorney]<br>U.S. Attorney's Office |

Back to Top

| Proceedings | |
|---|---|

| Date | Details |
|---|---|
| 04/24/2018 | HABEAS APPEAL DOCKETED. Notice of appeal filed by Appellant Jonathan Tyler Prive on 02/01/2018 Appellant brief due 40 days from 04/24/2018. Fee Status: IFP Granted. No hearings to be transcribed.-- [Edited 04/27/2018 by SO] |
| 04/25/2018 | USDC order granting IFP as to Appellant Jonathan Tyler Prive was filed on 09/27/2017. Docket Entry 5. |
| 05/01/2018 | APPEARANCE of Counsel Form filed by Roberta Josephina Bodnar (ECF: Roberta Bodnar) |
| 05/04/2018 | Certificate of Interested Persons and Corporate Disclosure Statement filed by Attorney Roberta Josephina Bodnar for Appellee USA. On the same day the CIP is served, the party filing it must also complete the court's web-based stock ticker symbol certificate at the link here http://www.ca11.uscourts.gov/web-based-cip or on the court's website. See 11th Cir. R. 26.1-2(b). (ECF: Roberta Bodnar) |
| 05/07/2018 | Appellant's Certificate of Interested Persons and Corporate Disclosure Statement filed by Appellant Jonathan Tyler Prive. |
| 05/17/2018 | USDC order denying IFP as to Appellant Jonathan Tyler Prive was filed on 05/14/2018. Docket Entry 20. |
| 05/17/2018 | The briefing schedule issued to Appellant Jonathan Tyler Prive is hereby rescinded for the following reason (s): In forma pauperis was denied in district court on May 14, 2018.. When the above matter(s) is resolved, the clerk will issue a notice advising counsel and the parties of the new schedule for filing briefs in this appeal. |
| 05/17/2018 | RETURNED UNFILED: The motion for extension of time to file the appellant's brief submittd by Jonathan Tyler Prive is returned unfiled because the briefing schedule has been rescinded. |
| 06/04/2018 | <i> MOTION to proceed IFP filed by Appellant Jonathan Tyler Prive. Opposition to Motion is Unknown [8477022-1]</i> |
| 07/19/2018 | Public Communication: Letter from Pro Se Appellant requesting status of appeal and motion for IFP. |
| 08/23/2018 | <font color = Green>ORDER: Motion to proceed in forma pauperis filed by Appellant Jonathan Tyler Prive is GRANTED. [8477022-2] WHP</font> |
| 08/23/2018 | Briefing Notice issued to Appellant Jonathan Tyler Prive. The appellant's brief is due on or before 10/02/2018. |
| 09/11/2018 | Over the phone extension granted by clerk as to Party Jonathan Tyler Prive. Appellants brief due on 10/16/2018 as to Appellant Jonathan Tyler Prive. |
| 09/25/2018 | Public Communication: A letter is being sent to the appellant in response to his September 20th letter. |
| 10/15/2018 | Appellant's brief filed by Jonathan Tyler Prive. Service date: 10/11/2018 [18-11693] Attorney for Appellee: Bodnar - email; Attorney for Appellee: U.S. Attorney Service - Middle District of Florida - email. |
| 11/07/2018 | Over the phone extension granted by clerk as to Attorney Roberta Josephina Bodnar for Appellee USA. Appellee's Brief due on 11/27/2018 as to Appellee United States of America.. |

Back to Top

| Pending Motion |
|---|

No Information is Available for this case

Back to Top

| Brief |
|---|

No Information is Available for this case

Back to Top

| Rehearings |
|---|

No Information is Available for this case

Back to Top

| History |
|---|

No Information is Available for this case

Back to Top

| Additional Case |
|---|

Additional Case Information

U.S. Civil - Prisoner - Motion to Vacate

Appeal from: Middle District of Florida

District: 113A Division: 6 CaseNumber: 6:17-cv-01498-JA-KRS LeadCaseNumber: 6:14-cr-00033-JA-KRS DateFiled: 08/16/2017

Civil Proceeding: John Antoon II, Senior U.S. District Court Judge

Secondary Judge: Karla R. Spaulding , U.S. Magistrate Judge

Date NOA Filed: 02/01/2018

Back to Top

Order documents from our nationwide document retrieval service.
- OR - Call 1.866.540.8818.

Copyright © 2018 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

App. Order

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith                                                                    For rules and forms visit
Clerk of Court                                                                    www.ca11.uscourts.gov

April 17, 2018

Jonathan Tyler Prive
Brevard County Jail - Inmate Legal Mail
860 CAMP RD
COCOA, FL 32927

Appeal Number:  18-10386-F
Case Style:  In re: Jonathan Prive
District Court Docket No:  6:17-cv-01498-JA-KRS

Enclosed is the court's order denying your motion for leave to proceed with this matter in forma
pauperis. Unless you forward the docketing fee to this office, as required by 28 U.S.C. §
subsection 1913 and Fed.R.App.P. 21, within fourteen (14) days from this date, this petition will
be dismissed pursuant to 11th Cir. R. 42-1(b).

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Dionne S. Young, F
Phone #: (404) 335-6224

PRO-6 Ltr Order Denying IFP Mandamus

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 18-10386-F

———————————

In re:

JONATHAN TYLER PRIVE,

Petitioner.

———————————

On Petitions for Writ of Mandamus from the
United States District Court for the
Middle District of Florida

———————————

ORDER:

Jonathan Prive, a federal prisoner proceeding *pro se,* petitions this Court for writ of mandamus, arising out of his motion to vacate sentence, 28 U.S.C. § 2255, which the U.S. District Court for the Middle District of Florida dismissed without prejudice, and his "Motion to Disqualify Judge," which was docketed in Prive's criminal docket, and which the district court denied. Prive also moves for leave to proceed IFP.

Prive seeks to file this mandamus petition IFP pursuant to 28 U.S.C. § 1915(a). Section 1915(a) provides that a United States court may authorize the commencement of any proceeding, without prepayment of fees, by a person who submits an affidavit that includes a statement of assets that he possesses, and indicates that he is unable to pay such fees. This Court, however, may dismiss an action at any time if it determines that the allegation of poverty is untrue or the action or appeal is frivolous. 28 U.S.C. § 1915(e)(2). In this case, Prive has submitted an indigency affidavit in which he declares no monthly income, $62.70 in monthly expenses made up of food and medical expenses, and no assets. Prive also attaches an inmate balance expense

report, showing that, as of February 8, 2018, he owed $2,464.20 to his correctional institution. Although Prive satisfies § 1915(a)'s poverty requirement, his IFP motion nevertheless is due to be denied, as his mandamus petition is frivolous.

Mandamus is available "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (quotation omitted). Mandamus may not be used as a substitute for appeal or to control decisions of the district court in discretionary matters. *Id.*

In a civil case, a plaintiff may appeal a district court's judgment by filing a notice of appeal within 60 days of the judgment's entry. Fed. R. App. P. 4(a)(l)(B). The courts of appeals have jurisdiction over appeals from all final orders of the district court. 28 U.S.C. § 1291. A dismissal without prejudice that closes a case without granting the plaintiff leave to amend or refile is a final order. *Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212, 1213 n.2 (11th Cir. 2005). An appeal from a final judgment brings up for review all preceding non-final orders. *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989). The denial of a motion for recusal is not immediately appealable under the collateral order doctrine because questions of disqualification are "fully reviewable on appeal from final judgment." *Steering Comm. v. Mead Corp. (In re Corrugated Container Antitrust Litig.)*, 614 F.2d 958, 960-61 (5th Cir. 1980). However, in exceptional circumstances "amounting to a judicial usurpation of power" mandamus relief may be available. *Id.* at 961-62 (quotation marks omitted). This Court has declined to exercise its discretion where full review of the disqualification issue was available on appeal. *See id.* A *pro se* petition for writ of mandamus can be construed as a notice of appeal. *See Yates v. Mobile Cty. Personnel Bd.*, 658 F.2d 298, 299 (5th Cir. Unit B Oct. 1981) (a *pro se* petition for

2

a writ of mandamus can be construed as a notice of appeal); *see also Finch* v. *City of Vernon,* 845 F.2d 256, 259-60 (11th Cir. 1988) *(pro se* appellate brief filed in this Court was construed as a notice of appeal).

Here, because Prive is essentially seeking review of the district court's orders in his §2255 proceeding, he has the adequate alternative remedy of appealing the district courts orders. *See Jackson,* 130 F.3d at 1004; *Samco Glob. Arms, Inc.* v. *Arita,* 395 F.3d at 1213 n.2; *Steering Comm.,* 614 F.2d at 960-61. Although Prive's motion for disqualification was entered on his criminal docket, he specifically noted when he filed that motion that he intended to file a §2255 motion and that he was concerned that he would not receive fair treatment if Judge Antoon presided over the case. Thus, the motion for disqualification pertains to Prive's civil §2255 proceeding. Accordingly, because the district court dismissed Prive's §2255 motion without prejudice, Prive has the adequate alternative remedy of appealing that order, which would bring up all non-final orders, including the denial of the motion for disqualification. *See Samco Glob. Arms, Inc.* v. *Arita,* 395 F.3d at 1213 n.2; *Steering Comm.,* 614 F.2d at 960-61. Accordingly, Prive's IFP motion is hereby **DENIED,** as his mandamus petition is frivolous.

Nevertheless, because Prive seeks appellate review of the district court's January 3, 2018, order dismissing his §2255 motion without prejudice and its non-final orders in that proceeding, and he filed his mandamus petition within 60 days of the order dismissing his §2255 proceeding, Prive's mandamus petition will be construed as a Notice of Appeal. *See Yates,* 658 F.2d at 299; Fed. R. App. P. 4(a)(1)(B); *Samco Glob. Arms, Inc.,* 395 F.3d at 1213 n.2; *Kirkland,* 884 F.2d at 1370. Therefore, the **CLERK IS DIRECTED** to transmit this petition to the district court for docketing as a Notice of Appeal from the January 3, 2017 order dismissing Prive's §2255 case

3

in Civil Docket No. 6:17-cv-01498-JA-KRS, and from the August 24, 1017 order denying

Prive's "Motion to Disqualify Judge" in Criminal Docket No. 6:14-cr-00033-JA-KRS-l.

/s/ William H. Pryor Jr.
UNITED STATES CIRCUIT JUDGE

# Certificate of Service

I certify that a copy of this appendix and the notice of electronic filing

was sent by United States mail on November 28, 2018, to:

JONATHAN PRIVE
Brevard County Jail
860 Camp Road
Cocoa, FL 32927

*movant-appellant, pro se*

s/ *Roberta Josephina Bodnar*
ROBERTA JOSEPHINA BODNAR
Assistant United States Attorney

b_U.S. suppl appx index.docx